# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS TURNER, an individual, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL MEDICAL PLAN; LIBERTY MUTUAL RETIREMENT BENEFIT PLAN RETIREMENT BOARD; LIBERTY MUTUAL GROUP INC., a Massachusetts company; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company; and, DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO.:  1:20-cv-11530 <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> **(1)** **Determination of Terms of Plan and Clarification of Rights to Future Benefits Under 29 U.S.C. § 1132(a)(1)(B);** <br><br> **(2)** **To Obtain Equitable Relief Under 29 U.S.C. § 1132(a)(3);** <br><br> **(3)** **Violation of 29 C.F.R. 2560.503-1 (h)(2)(i); and** <br><br> **(4)** **Violation of 29 C.F.R. 2520.102-3(l) and 29 C.F.R. 2520.102-2(a)** |

Plaintiff Thomas Turner, on behalf of himself and all others similarly situated, hereby complains and alleges against all Defendants (sometimes collectively referred to as "Liberty Mutual") on information and belief as follows:

## I.

## INTRODUCTION

1.      Liberty Mutual claims to hold these supposed core "values:" to "be open," "act responsibly," "put people first," and to "keep it simple."  Apparently, those principles do not apply to its own hard-working employees, like former employee and Plaintiff, Thomas Turner.

2.      At issue here are Liberty Mutual's broken promises regarding important retirement benefits, including valuable medical/health benefits, for employees and retirees like Mr. Turner –

promises those employees were relying on and that the employees needed to help secure their retirements and their family's well-being after years of service to Liberty Mutual.

3.      In short, Liberty Mutual promised a group of important employees, including Mr. Turner, a valuable set of retirement medical benefits in exchange for their years of service, including post-retirement medical/health benefits per the Liberty Mutual Health Plan.   The Plan itself, the Summary Plan Descriptions ("SPD") that regularly go to employees further describing The Plan, and additional statements by Liberty personnel, all promised these valuable post-retirement medical benefits commensurate with their "years of service," or consistent with their hire date.  I.e., the more tenure an employee had, the greater their benefits under The Plan.

4.      Importantly, Liberty Mutual and The Plan promised Mr. Turner and his colleagues that prior years of service with companies Liberty Mutual had acquired, like Safeco Insurance in the case of Mr. Turner, would *all be counted* toward the "years of service" component when calculating Liberty Mutual retirement benefits.  The hire date used for calculating retirement benefits, in other words, would be the original hire date at the acquired company.

5.      Mr. Turner and hundreds of his colleagues were part of Safeco when Liberty acquired Safeco in about 2008.  And by the time Mr. Turner retired in 2019, he had worked 38+years for Safeco/Liberty Mutual.  Thus, Liberty Mutual had originally promised, in short, to credit Mr. Turner with his 38+years of total service for purposes of calculating his retirement medical benefits.  Liberty Mutual made the same promise to everyone who came over from Safeco in the acquisition.

6.      However, once it was time for Mr. Turner and others to retire or apply for their promised benefits, Liberty Mutual reneged.  Liberty now takes the position that the prior years of service with Safeco should never have been counted and that they will not be counted.  Upon information and belief, this switch by Liberty Mutual robs about 700 of its current and former employees of millions in retirement medical benefits.  Mr. Turner voiced his objections, appealed that decision directly to Liberty Mutual, and exhausted all his administrative remedies to no avail. Liberty Mutual even refused to fairly respond to Mr. Turner's inquiries and requests for Plan

information even though it, as a fiduciary, had an obligation to comply. So much for being "open" and "putting people first." Mr. Turner is now forced to bring this action against Liberty Mutual under the Employment Retirement Income Security Act ("ERISA") on behalf of himself and all other similarly situated persons to get back the benefits they earned and that Liberty Mutual is wrongfully withholding.

## II.

## PARTIES

7.     Plaintiff THOMAS TURNER is an individual and a former employee of Defendant LIBERTY MUTUAL INSURANCE COMPANY. Mr. Turner is a participant in defendant LIBERTY MUTUAL RETIREMENT BENEFIT PLAN and LIBERTY MUTUAL MEDICAL PLAN as defined under 29 U.S.C. § 1002(7), (sometimes referred to as the "Liberty Mutual Retiree Health Plan"). Mr. Turner is a resident of Georgia.

8.     Defendant LIBERTY MUTUAL RETIREMENT BENEFIT PLAN (hereinafter "Plan") is an employee retirement plan as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* and the benefits sought and referred to in this action under the Plan are subject to ERISA, 29 U.S.C. § 1003(a) and are not exempt under 29 U.S.C. § 1003(b).

9.     Defendant LIBERTY MUTUAL MEDICAL PLAN (hereinafter "Plan") is an employee retirement plan as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* that, upon information and belief, is part of the LIBERTY MUTAL RETIREMENT BENEFIT PLAN. The benefits sought and referred to in this action under the Plan are subject to ERISA, 29 U.S.C. § 1003(a) and are not exempt under 29 U.S.C. § 1003(b). The LIBERTY MUTUAL RETIREMENT BENEFIT PLAN and the LIBERTY MUTUAL MEDICAL PLAN are and have been referred to collectively in this Complaint as "The Plan."

10.     Defendant LIBERTY MUTUAL GROUP, INC. (hereinafter "LMGI") is a Massachusetts company in the business of selling insurance and is authorized to do business and doing business in this district. LMGI is also the Plan Sponsor.

11.     Plaintiff is informed and believes that the sole authorized and designated Plan

3

Administrator is Defendant LIBERTY MUTUAL RETIREMENT BENEFIT PLAN RETIREMENT BOARD ("LMRBP"), which is comprised of employees, officers and/or directors of LIBERTY MUTUAL INSURANCE COMPANY ("LMIC").  As such, LMRBP was at all times a trustee for The Plan.

12.      Defendant LIBERTY MUTUAL INSURANCE COMPANY (hereinafter "LMIC") is a Massachusetts company in the business of selling insurance and is authorized to do business and doing business in this district.

13.      All Defendants will be collectively referred to as "Liberty Mutual."

14.      Plaintiff is informed and believes and on that basis alleges that at all relevant times, Defendants, and each of them, were the parent companies, subsidiary companies, predecessors- or successors-in-interest, agents and/or employees of the remaining defendants and, in doing the things herein complained of, were acting within the course and scope of such parent/subsidiary relationship, agency and/or employment.

### III.

### CLASS ALLEGATIONS

15.      Plaintiff brings this action on behalf of himself and all members of the class (the "Class") defined as follows: all current and former Liberty Mutual employees who were previously employees of Safeco Insurance and who participated in The Plan.  Plaintiff brings these claims under ERISA.

16.      Defendants' conduct has imposed a common injury on the members of the Class.

17.      Defendants have acted, and refused to act, on grounds generally applicable to the Class, which makes final declaratory and injunctive relief, reformation, restitution, and/or surcharge with respect to each claim as a whole appropriate.

18.      The representative Plaintiff will faithfully represent the Class, and he is a member of the Class.

19.      The Class is composed of hundreds or thousands of persons, the joinder of which would be impractical.

4

20.     The identities of the individual members of the Class are ascertainable through Defendants' records.

21.     There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class.

22.     Plaintiff will fairly and adequately protect the interests of the Class.

23.     Plaintiff has retained counsel experienced in handling class claims and claims involving violations of ERISA.

24.     Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts involving violations of ERISA.

25.     A class action is a superior method for the fair and efficient adjudication of this controversy. Recovery of Class-wide damages is essential to induce Defendants to comply with federal law.  The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because management of these claims are likely to present significantly fewer difficulties than those presented in many class claims, such as claims for securities fraud.

26.     The questions of law or fact common to the claims or of the representative plaintiff and the claims of each member of the Class predominate over any questions of law or fact affecting individual members of the Class.  Class representation is superior to other available methods for the fair and efficient adjudication of this controversy.  Questions of law and/or fact that are common to the claims include but are not limited to:

      (A)     What the Plan documents say or said about the relevant benefits;

      (B)     What the SPDs say or said about the relevant benefits;

      (C)     Whether the terms of the Plan allow for the old Safeco employees to be entitled to credit for all years of employment with Safeco under the Plan if they remained employed by Liberty Mutual;

      (D)     Whether the Plan administrator violated and will continue violating ERISA by denying Plaintiff and all members of the Class their appropriate benefits

under the Plan;

(E)     Whether the Plan administrator violated 29 C.F.R. § 2560.503-1(h)(2)(i) and 29 C.F.R. § 2560.503-1 (m)(8) by refusing to turn over to Plaintiff a complete administrative record on demand.

(F)     Whether the Defendants represented to the Class that they would be entitled to credit for all years of employment with Safeco under the Plan if they remained employed by Liberty Mutual.

(G)     Whether the Class Members are entitled to Equitable Relief Under 29 U.S.C. § 1132(a)(3).

27.     Defendants responded to Plaintiff's claims and rejected same on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

28.     Unless a class is certified, Defendants will retain monies and benefits retained as a result of their conduct taken against the Plaintiff and the Class. Unless class-wide declaratory relief and an injunction for the Class are issued, Defendants will continue to commit the violations alleged, and members of the Class will continue to be harmed.

## IV.

## JURISDICTION AND VENUE

29.     Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331 - federal question jurisdiction. This action arises out of Defendants' violations of the ERISA, 29 U.S.C. §§ 1001 *et seq.*

30.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that the acts and transactions giving rise to this action as alleged in this complaint occurred in this district.  All defendants are domiciled in this district.  This is their home.  At all times relevant, each defendant conducted and/or continues to do business in this district.

## V.

## FIRST COUNT

**(Determination of Terms of Plan and Clarification of Rights to Future Benefits Under 29 U.S.C. § 1132(a)(1)(B))**
**By Plaintiff on behalf of himself and all others similarly situated against all Defendants**

31.     Plaintiff re-allege and incorporates by reference each and every allegation contained in the paragraphs above as if set forth at this paragraph.

32.     Plaintiff and many of his Liberty Mutual colleagues originally worked for Safeco Insurance.  In about 2008, Liberty Mutual purchased or obtained control over the assets of Safeco. During this period, Liberty Mutual desired and sought to employ, or keep employed, existing employees of Safeco at the time of the purchase and during the ownership transition.  One of the principal assets of Safeco was the experience and knowledge of these employees.

33.     During this time and during the transition, Defendants, and each of them, by and through their agents, employees and representatives, advised Plaintiff and others similarly situated that if they remained in their positions and agreed to be employed by Liberty Mutual after the acquisition, such employees would be eligible for the Plan with full credit for the years of service with Safeco, i.e. as if they had actually worked for Liberty Mutual the whole time. Defendants, and each of them, by and through their agents, employees and representatives, also advised Plaintiff and his co-workers that they would be vested in such Plan with full credit in the Plan for all the years of employment with Safeco prior to and up through the acquisition, in addition to their continued time of employment with Liberty Mutual or Safeco afterward.  Defendants repeated these representations on numerous occasions, including in writing, i.e. Defendants repeatedly advised that employees who chose to stay would receive full credit for all their years of service.

34.     The Plan documents in effect from the date of the acquisition reflected that Plaintiff was to be credited for the years of prior service with Safeco.

35.     Also, numerous documents created or sent to employees after the Safeco acquisition confirmed that the employees would receive full credit for the prior Safeco years and/or that their hire date, as indicated in their employee personnel files was, in fact, their hire date with Safeco and *not* the day in 2008 or 2009 they were officially acquired or onboarded by Liberty Mutual.

36.     Defendants never provided anything in writing clearly indicating that the years of service at Safeco would be excluded for the purpose of calculating benefits.

37.     Moreover, Liberty Mutual routinely published and shared SPDs, which contained at least a partial description of the Plan terms and conditions.  The SPDs were made part of The Plan by Defendants.  The intent of the SPDs and the Plan is to provide, among other things, medical support and benefits for long term employees.

38.     Plaintiff is currently unaware of any contrary Plan descriptions in effect at those times or whether these SPDs were intended to or did in fact act as the operative agreement between Plaintiff and Defendants regarding the relevant rights and obligations under the Plan at issue here.

39.     The SPDs expressly referred to former employees of Safeco as being "grandfathered" into Liberty Mutual and its retirement plan/benefits.  The SPDs continued to do so for about 10 years and never suggested that Safeco time would somehow be excluded from the calculation of retirement benefits *until* Mr. Turner first claimed benefits or objected to not receiving his credit for his Safeco years and until after Mr. Turner had many calls with Liberty Mutual and sent correspondence to Liberty Mutual pointing out that the Plan and the SPDs promised credit for the Safeco years.  Only in 2019, after Mr. Turner reminded Liberty Mutual of its prior promises, did Liberty attempt to modify its SPDs to, now, purportedly exclude Safeco time from prior service credit.  In other words, in 2019, and because of Mr. Turner's claim and input, Liberty Mutual realized and essentially admitted that it had been promising prior service credit for Safeco years to its employees.  It then attempted to change its SPDs and/or the Plan after Mr. Turner spoke up.  At no point before changing these SPDs in 2019 did Liberty Mutual ever say in its plan or in the SPDs that Safeco years would be excluded for the purpose of calculating medical benefits.

40.     Liberty Mutual has told Mr. Turner that contrary to the prior oral and written representations and documents he received from Defendants, Defendants would not provide him any credit for the years of employment and service with Safeco.

41.     Plaintiff contends that the terms and conditions of the Plan provide Plaintiff and the

Class with credit for the years they were employed with Liberty Mutual and/or Safeco and past service credit for years Plaintiff was employed with Safeco, up through the date of the end of his employment.

42.     Plaintiff filed a claim with Liberty Mutual.  Liberty Mutual denied that claim and denied all of Plaintiff's appeals.  These claims, appeals, and denials satisfy any requirement that existed to exhaust administrative remedies.

43.     In his claims and appeals, Plaintiff requested the basis of any denial to the claim for proper benefits.  Plaintiff also requested copies of all Plan documents and the administrative record for the claim, including all documents regarding the Plaintiff's contentions that he was to be provided credit for employment time at Safeco for benefits determination under the Plan, among other documents. These requests were made pursuant to 29 C.F.R. § 2560.503-1(h)(2)(i) and 29 C.F.R. § 2560.503-1 (m)(8) *et seq.*

44.     Throughout Defendants' overly lengthy claims evaluation process, Defendants took an adversarial approach to Plaintiff by stonewalling Plaintiff's attempts to obtain portions of the administrative record he was entitled to obtain. Under ERISA, the Plan's board members and representatives and agents are fiduciaries to Plaintiff and other participants of the Plan.

45.     In particular, Liberty Mutual has refused to turn over all relevant documents, including internal documents and correspondence as well as documents referring to Liberty Mutual's review of and 2019 revisions to the SPDs which Plaintiff is informed and believes purport to modify the Plan to block Plaintiff's interpretation of benefits as it relates to Safeco and to match the Defendants' incorrect interpretation - supporting its challenge, after-the-fact, to Plaintiff's assertions and claims to date.

58.     Plaintiff requires and requests a determination of the current and future rights of Plaintiff and the Class to benefits under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).

59.     Plaintiff and the Class are vested beneficiaries of the Plan, were employed with Safeco and subsequently employed with Liberty Mutual and, thus, are entitled to a clarification of their rights to current and future benefits under the Plan and the amounts of those benefits.

60.     Plaintiff and the Class are entitled to credit under the Plan for the time they were employed with Safeco, based on the terms and conditions of the Plan, as well as those documents, writings and representations regarding such Plan supplied to Plaintiff and the Class based on a reasonable and correct interpretation of such documents, writings and representations.

61.      To the extent there exists any ambiguity in Plan documents and materials provided to Plaintiff and the Class about the Plan, or inconsistencies between Plan documents provided to Plaintiff and the Class and principal Plan documents, the Plan is equitably estopped from denying Plaintiff and the Class benefits under the Plan as any ambiguous language of the Plan is properly construed against the drafters of same (i.e., Defendants).

62.     Plaintiff therefore seeks a judicial declaration that his and The Class' years of employment with Safeco be properly credited as Years of Service for purposes of calculating retirement medical benefits and costs, and that Plaintiff's present and future retirement benefits, and those of the Class, be increased (or their medical costs decreased) in an amount which takes into account all of their respective Years of Service with Safeco as well as Years of Service with Liberty Mutual.

63.     Plaintiff and the Class are entitled to the benefits requested in this Complaint and that the Defendants, and each of them, shall be required to acknowledge such benefits and, upon such terms as the Court finds just, effectuate such obligations including but not limited to the funding of such obligations for the benefit of the Plan.

64.     Defendants' denial of Plaintiff's claims is not entitled to deference and this Complaint and the allegations in it shall be reviewed on a *de novo* basis.

65.     As a result of the Defendants' conduct, Plaintiff has been required to retain the services of legal counsel and has incurred attorney's fees and costs. As this action seeks to resolve legitimate issues regarding the Plaintiff's and the Class' rights and the rights of other Plan participants, as well as the obligations and duties owed to the Plan itself, among other goals, Plaintiff anticipates incurring additional attorneys' fees and costs pursuing this action in an amount according to proof at trial. Plaintiff is thus entitled to a reasonable attorneys' fee award pursuant to

29 U.S.C. § 1132(g)(1) and/or all other applicable law.

## IV.

## **SECOND COUNT**
**(To Obtain Equitable Relief Under 29 U.S.C. § 1132(a)(3))**
**By Plaintiff on behalf of himself and all others similarly situated against all Defendants**

66.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs above as if set forth at this paragraph.

67.    Defendants acted as trustees of The Plan, which is treated as a trust under ERISA.

68.    Defendants made clear and unambiguous representations to Plaintiff and the Class that in exchange for their work with Liberty Mutual, their time of employment at Safeco would be credited for the purposes of calculating retirement medical benefits.  Defendants provided information to Plaintiff and the class to that effect.

69.    At the time that Defendants provided information to Plaintiff and the Class regarding credit for time employed with Safeco, Defendants did not intend to give such credit. Defendants never informed Plaintiff of their intent not to credit Plaintiff for the time employed at Safeco – until Plaintiff sought benefits.  Defendants failed to previously provide any SPDs that indicated their intent to interpret the plan in a way so as to deny Plaintiff and The Class credit for their time of employment at Safeco.  Defendants concealed their true intent from Plaintiff by failing to provide their intended interpretation of the plan in the summary information.

70.    Defendants refused to grant credit to Plaintiff and the Class for time worked at Safeco. Defendant denied Plaintiff's claims for benefits based on Defendants' representations regarding benefits under the Plan.

71.    Plaintiff and the Class relied upon Defendants' representations regarding crediting time employed at Safeco for the purposes of The Plan and, as a sign of their reliance, accepted employment with Liberty Mutual and continued to work with Liberty Mutual. Plaintiff's and the Class' reliance on Defendants' representations were foreseeable and an inducement to the Safeco employees to become employed by Liberty Mutual and/or stay employed by Liberty Mutual.

72.     As a result of Defendants' refusal to grant credit for all time served, Plaintiff and the Class suffered an injury or injuries in the form of reduced benefits under the Plan.

73.     One method of avoiding the injustice of the injuries sustained by the Plaintiff and the Class as alleged in this Complaint is to reform the plan in accordance with the representations Defendants made to Plaintiff and the Class and to provide complete credit for years they were employed by Safeco for purposes of benefits under the Plan.   Once reformed, the Plan can be enforced via 29 U.S.C. §1132(a)(1)(B).   Another method of avoiding the injustice of the injuries sustained by the Plaintiff and the Class as alleged is surcharge Defendants as trustees and fiduciaries in the amount equal to the unpaid benefits (or equal to the increased costs incurred or that will be incurred by Plaintiff and The Class).

74.     Plaintiff requests this Court order any and all appropriate equitable remedies for any violation of ERISA or the Plan, including but not limited to reformation, equitable estoppel, restitution, and surcharge.   Plaintiff, furthermore, is entitled to a reasonable attorneys' fee award pursuant to 29 U.S.C. § 1132(g)(1) and/or all other applicable law.

## V.

### <u>THIRD COUNT</u>
### (Violation of 29 C.F.R. 2560.503-1 (h)(2)(i).)
### By Plaintiff Against All Defendants.

75.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs above as if set forth at this paragraph.

76.     The Code of Federal Regulations in 29 C.F.R. 2560.503-1 (h)(2)(i) states the procedures to appeal a claim made to an employee benefit plan will not be deemed to provide a claimant with reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claimant is

> (iii)  . . . . provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section;
> …

Paragraph (m)(8) of 29 C.F.R. 2560.503-1 states as follows

> A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
>
> (i)    Was relied upon in making the benefit determination;
>
> (ii)   Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; [or]
>
> (iii)  Demonstrates compliance with the administrative process and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination
>
> …

77.    Plaintiff submitted claims for benefits under the Plan to Defendants. Defendant denied these claims.

78.    Plaintiff appealed the denial. Substantial portions of the records and documentation related to the Plaintiff's claims were not provided and are still being withheld to date. Pursuant to 29 C.F.R. § 2560.503-1, the Plan's claim denial and review procedures were required to provide Plaintiff, "free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits".   29 C.F.R. § 2560.503-1(h)(2)(iii). Among materials defined as "relevant" by 29 C.F.R. § 2560.503-1(m)(8), are those "relied upon in making the benefit determination," as well as those "submitted, considered, or generated in the course of making the benefit determination, without regard to whether [they were] relied upon in making the benefit determination."

79.    Plaintiff repeatedly requested that Defendants make available all documents and writings reflective of the claim denial.  Documents in the administrative record, particularly documents regarding review of the Plan and SPDs with regard to whether Plaintiff and others similarly situated who had been employed by Safeco and were subsequently employed by Liberty Mutual were entitled to benefits under the Plan for years of employment at Safeco, were not provided in a timely manner despite repeated demands.  The failure to produce "relevant" information and documentation included but was not limited to the production of the following

information or issues:

(A)     Documentation reflecting the actual investigation into Plaintiff's claims, including the notes, memorandums, emails, and other written material generated, considered or generated by the claims administrator principally in control or in charge of the investigation of Plaintiff's claim;

(B)     Letters, notes, memoranda, briefs, summaries or written advice of the Plan's legal counsel as to the proper legal interpretation of the Plan under the facts and record submitted by Plaintiff and the information reviewed by Defendants; and

(C)     Documents explaining or referring to the need to change the SPDs in 2019 as described above.

80.     Throughout the overly lengthy claims evaluation process, Defendants in general took an adversarial approach to Plaintiff by stonewalling Plaintiff's attempts to obtain portions of the administrative record he was entitled to obtain. This is particularly troubling considering that, under ERISA, the Plan's board members and representatives and agents are fiduciaries to Plaintiff and other participants of the Plan.

81.     Plaintiff to date has not obtained the complete administrative record of his claims against the Plan as requested numerous times to date.

82.     Defendants, and each of them, willfully violated their obligations under ERISA and federal regulations promulgated pursuant to ERISA by failing to provide Plaintiff a complete copy of the administrative record in violation of 29 C.F.R. 2560.503-1 (h)(2)(1).

83.     Plaintiff is therefore entitled to recover a penalty of $ 100 per day for each day such information was not provided as set forth in 29 U.S.C. section 1132( c)(1), and is further entitled to an immediate order by this Court compelling Defendants to produce all such portions of the administrative record on Plaintiff's claims which have not been produced as required by law, along with all such other and further appropriate relief.

**VI.**

**FOURTH COUNT**
**(Violation of 29 C.F.R. 2520.102-3(l) and 29 C.F.R. 2520.102-2(a))**
**By Plaintiff on behalf of himself and all others similarly situated against all Defendants**

84.     ERISA requires that benefit reductions, conditions on receipt of additional Accruals, and other disadvantages be clearly disclosed in the SPD.  SPDs must be distributed to participants which disclose the circumstances that may result in reductions, disqualification, denial, loss, or forfeiture of any benefits that a participant might otherwise reasonably expect to receive on the basis of the description of the benefits offered by the plan. 29 C.F.R. 2520.102-3(l). The disclosure must be written in a manner calculated to be understood by the average plan participant. 29 C.F.R. 2520.102-2(a). Reductions, restrictions and other disadvantages must be described no less prominently or understandably than the advantages of the plan. 29 C.F.R. 2520.102-2(b).

85.     In the absence of adequate disclosure, a rule that causes benefits to be lost or forfeited may not be enforced. *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir. 1990); *Burke v. Kodak Ret. Inc. Plan*, 336 F.3d 103, 111 (2d Cir. 2003).

86.     Defendants failed to provide adequate SPDs.  Defendants provided some documents, but these documents failed to meet the requirements of 29 C.F.R. 2520.102-3(I) and 29 C.F.R. 2520.102-2(a).  For example, none of the plan descriptions indicate that Defendants intended that old Safeco employees not get credit for the time they were employed with Safeco for the purpose of calculation of benefits.  An average plan participant would understand that credit for time served with Safeco would mean for all purposes, unless the plan or the summary descriptions clearly spelled out that such time would not be credited for the purpose of benefit calculation.

87.     Defendants' lack of disclosure caused Plaintiff and the Class to suffer injury or injuries in the form of reduced benefits under the Plan.

88.     One method of avoiding the injustice of the injuries sustained by the Plaintiff and the Class as alleged in this Complaint is to reform the Plan in accordance with the representations Defendants' made to Plaintiff and the Class and to provide complete credit for years they were

employed by Safeco for purposes of benefits under the Plan.  Once reformed, the Plan can be enforced via 29 U.S.C. §1132(a)(1)(B).  Another method of avoiding the injustice of the injuries sustained by the Plaintiff and the Class as alleged herein is to surcharge Defendants as trustees and fiduciaries in the amount equal to the unpaid benefits (or equal to the increased costs to Plaintiff and The Class).

## VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.      A declaration of Plaintiff's and the Class' right to benefits under the Plan as requested above;

2.      For a determination of the existence of a violation of 29 C.F.R. 2560.503-1 (h)(2)(i), for a penalty of $ 100 per day per claimant for violations of 29 U.S.C section 1132(c)(1) and for an order compelling Defendants to produce all such portions of the administrative record on Plaintiff's claims which have not been produced as required by law;

3.      For an injunction to issue against Defendants;

4.      For such other and further appropriate equitable relief to redress Defendants' violations of ERISA and other federal and state laws, including but not limited to the reformation and enforcement of the terms of the Plan; restitution; and surcharge  to recover any losses and/or injuries to the Plan;

5.      For costs of suit;

6.      For Plaintiff to be awarded attorneys' fees and all litigation costs and expenses pursuant to 29 U.S.C § 1001 et seq., 29 U.S.C. § 1132(g)(1), the public benefit doctrine, the common fund doctrine, and/or all other applicable law; and

7.      For such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

Dated: August 14, 2020

**CHANG LAW GROUP, LLC**
Jeff C. Chang (MA BBO 666379)
Email: jeff@jchanglaw.com
One Marina Park Drive, Suite 1410
Boston, Massachusetts 02210
Tel: (617) 307-1238


**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (CA SBN 178444)
Alex Tomasevic (CA SBN 245598)
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
  *Pro Hac Vice Applications Forthcoming*


**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (CA SBN 82998)
Email: jackbwinters@earthlink.net
  *Pro Hac Vice Applications Forthcoming*

Attorneys for Plaintiff