1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3    THOMAS TURNER, an individual,      )
     on behalf                         )
4    of himself and others similarly   )  Civil Action
     situated,                         )
5                                      )  No. 20-11530-FDS
                         Plaintiffs    )
6                                      )
     vs.                               )
7                                      )
     LIBERTY MUTUAL RETIREMENT
8    BENEFIT PLAN; LIBERTY MUTUAL
     MEDICAL PLAN; LIBERTY MUTUAL
9    RETIREMENT BENEFIT PLAN
     RETIREMENT BOARD; LIBERTY
10   MUTUAL GROUP INC., a
     Massachusetts
11   Company; LIBERTY MUTUAL
     INSURANCE COMPANY, a
12   Massachusetts
     Company; and, DOES 1-50,
13   Inclusive,
                         Defendants
14

15   BEFORE:  CHIEF JUDGE F. DENNIS SAYLOR, IV

16
                            MOTION HEARING
17
                        CONDUCTED BY ZOOM
18

19           John Joseph Moakley United States Courthouse
                          1 Courthouse Way
20                        Boston, MA 02210

21
                          December 15, 2020
22                          11:00 a.m.

23                 Valerie A. O'Hara, FCRR, RPR
                      Official Court Reporter
24         John Joseph Moakley United States Courthouse
                          1 Courthouse Way
25                        Boston, MA 02210
                    E-mail: vaohara@gmail.com

1  APPEARANCES:

2  For The Plaintiffs:

3       Nicholas & Tomasevic, LLP, by ALEX M. TOMASEVIC, ESQ.,
   225 Broadway, 19th Floor, San Diego, California 92101;

4
        Winters & Associates, JACK B. WINTERS, JR., ESQ.,
5  8489 La Mesa Boulevard, La Mesa, California 91942;

6       Chang Law Group LLC, JEFF C. CHANG, ESQ.,
   One Marina Park Drive, Suite 1410, Boston, Massachusetts
7  02210;

8  For the Defendants:

9       McDermott Will & Emery LLP, by SHAMIS N. BECKLEY, ESQ.,
   200 Clarendon Street, Boston, Massachusetts 02116-5021;

10
        McDermott Will & Emery LLP, by MARGARET H. WARNER,
11 ATTORNEY, 500 North Capitol Street NW, Washington, D.C. 20001;

12

13

14

15

16

17

18

19

10:41AM 20

21

22

23

24

25

<u>PROCEEDINGS</u>

1

2          THE CLERK:  Court is now in session in the matter

3     of Turner vs. Liberty Mutual Retirement Benefit Plan,

4     Civil Action Number 20-11530.

5          Participants are reminded that photographing,

6     recording and rebroadcasting of this hearing is prohibited

7     and may result in sanctions.

8          Would counsel please identify themselves for the

9     record, beginning with plaintiff's counsel.

11:01AM 10          MR. TOMASEVIC:  Good morning, everyone,

11     Alex Tomasevic for plaintiff.

12          MR. WINTERS:  Good morning, your Honor,

13     Jack Winters for plaintiff.

14          MR. CHANG:  Good morning, your Honor, Jeff Chang

15     for plaintiff.

16          THE COURT:  Good morning.  All right, for

17     defendant.

18          MS. BECKLEY:  Good morning, your Honor,

19     Shamis Beckley for defendant.

11:02AM 20          THE COURT:  Good morning.

21          MS. BECKLEY:  We seem to be missing somebody from

22     our side.  Apologies, your Honor.

23          THE CLERK:  There's an Attorney Diggs and an

24     Attorney Tishyevich, but they're mooted, and I don't see

25     Mr. Tishyevich's video on.

1            MR. TISHYEVICH:  I'm sorry, we're missing one of

2     our attorneys.

3            MS. BECKLEY:  Attorney Warner is missing,

4     apologies.

5            THE CLERK:  Is it possible that Attorney Warner is

6     using a device called WDC-09-New York?

7            MS. BECKLEY:  It may be possible.  We're just

8     e-mailing her and calling her right now to see.  Apologies.

9            THE CLERK:  We have someone in the waiting room

11:03AM 10     with that I.D., we just haven't admitted them because

11     they're not identified or registered otherwise.

12            MS. BECKLEY:  Understood, yes.

13            THE CLERK:  Just let me know.

14            MS. BECKLEY:  Thank you.  Ms. Warner is on a

15     New York conference attorney number, so she just needs to be

16     let in.

17            THE CLERK:  Okay.  I'm doing that now, and we will

18     rename her as soon as she joins.

19            THE COURT:  My children, when they were teenagers,

11:04AM 20     they would prank me and my wife all the time, you know, sign

21     in a meeting as Bugs Bunny or something.  I'm glad they

22     weren't around or at home for the Zoom age, I can only

23     imagine what would be happening.

24            MR. TOMASEVIC:  I think there were prank Zoom calls

25     before they got the security fixed.

1          THE COURT:  Hopefully it wasn't someone's own

2    children.

3          MR. TOMASEVIC:  Right.

4          MS. WARNER:  Good morning, your Honor, Peg Warner

5    is on, excuse me.

6          THE COURT:  All right.  Are we ready to get started

7    then?

8          MS. WARNER:  Yes, sir.

9          THE COURT:  This is a hearing on defendant's motion

11:05AM 10    to dismiss.  Ms. Warner, I'm inferring that you're taking

11    the lead here?

12          MS. WARNER:  I am, your Honor.

13          THE COURT:  Okay.

14          MS. WARNER:  Excuse me, I'm trying to deal

15    with -- I made the mistake of coming into the office.

16          May it please the Court, Peg Warner for Liberty

17    Mutual.  Your Honor, this case is about a retiree health

18    plan.  The plaintiff is covered under this plan.  He will

19    receive benefits.  He will receive healthcare benefits under

11:06AM 20    this plan.  He seeks to put at issue in this case the amount

21    of the cost sharing under the plan.  The plaintiff's

22    conclusory allegations in the complaint go to issues about

23    whether he pleads a cognizable claim under ERISA.

24          These issues relate to, first, what was the

25    healthcare benefit regarding cost sharing when he retired in

1    2019?

2          Second, was the retiree healthcare benefit vested,

3    as he alleges in the complaint in a conclusory fashion?

4          And, third, did Liberty Mutual violate procedures

5    for administering an ERISA welfare plan, which is what is at

6    issue here, a welfare plan?

7          The answers to these questions are clear as a

8    matter of established law, and they are clear from the

9    unambiguous language relating to this cost sharing provision

11:07AM 10    in the plan documents.

11          The plaintiff does not have a cognizable case.

12    This cannot be disputed under the law and under the

13    unambiguous contracts that are the plan documents.

14          Your Honor, there are four unambiguous sections of

15    the operative 2019 plan.  Those four sections are the

16    sections to which the Court should refer respectfully when

17    looking at the issues that are pleaded in the complaint:

18          Section 1.4, interpretation on page 2; Section 4.1,

19    benefits on page 4; Section 6.6, right to amend on page 10;

11:08AM 20    and Section 6.2, right to terminate on page 11.

21          Each of these unambiguous provisions in the plan

22    demonstrate unequivocally that he cannot raise a cognizable

23    claim.

24          Next, a provision on page B-60, B-60 of the summary

25    plan description, the SPD, which is made a part of the plan

1    documents by the very unambiguous language laid out.  That

2    addresses the cost-sharing benefit under the healthcare plan

3    for former Safeco employees, and that notes, "Eligibility

4    for cost sharing is based on your most recent hire date of

5    January 1, 2009 and does not include any employment service

6    with Safeco prior to January 1, 2009, unambiguous provision

7    2019 SPD, which is the operative SPD because he alleges that

8    he retired in 2019.

9             With regard to the established law, your Honor,

11:09AM 10    there are three Supreme Court cases that clearly dispose in

11    our view of this motion to dismiss.  Each of these three

12    cases involved healthcare benefits under an ERISA plan:

13             The first is *Curtis Wright*, 115 Supreme Court 1223,

14    1995.

15             Second, *U.S. Airways*, 133 Supreme Court 1537, 2013.

16             Third, *M&G Polymers*, 135 Supreme Court 966, 2015.

17             Each of these cases state what the operative law is

18    under ERISA for welfare plans, healthcare plans, and the

19    right of employers to amend, modify or terminate those plans

11:10AM 20    at any time in any manner.

21             Finally, your Honor, there are four First Circuit

22    cases that state and hold clearly unequivocally that what

23    Liberty Mutual has done here is not only proper but leaves

24    the plaintiff without the ability to plead a cognizable

25    claim under ERISA.

1           Those cases from the First Circuit are the *Edis vs.*

2    *Verizon* case, 417 F.3d 133 from 2005, *Balestracci*, 449 F.3d

3    224, 2006 case, *Livick vs. Gillett*, 524 F.3d 24, 2008, and

4    *Barchock v. CVS*, 886 F.3d 43, 2018.

5           These four cases lay out clearly, unambiguously, in

6    the First Circuit what the standards are for a 12(b)(6)

7    motion in the context of an ERISA litigation, what the

8    plaintiff is required to plead by way of a well-pleaded

9    complaint, the specificity that must be pleaded with regard

11:12AM 10   to an attack on in particular a welfare plan under ERISA.

11          Here, the unambiguous plan language and this

12   mountain of precedence forecloses the plaintiff's conclusory

13   allegations.  He has not pleaded a cognizable claim under

14   ERISA.  Justice O'Connor laid out in 1995 in the

15   *Curtis Wright* opinion what is required of an ERISA plaintiff

16   in a welfare plan case.  He does not meet this standard,

17   which has been the law of the land subsequently.

18          Your Honor, we have requested dismissal with

19   prejudice.  Our position is that under this mountain of

11:13AM 20   precedent and in light of the unambiguous nature of the 2019

21   plan documents that any amendment would be futile.

22          We respectfully request, therefore, that the

23   complaint be dismissed with prejudice.  I would be happy to

24   answer any of the Court's questions.

25          THE COURT:  Okay.  Who is going to take the lead

1    for the plaintiffs?  Is that Mr. Tomasevic?

2         MR. TOMASEVIC:  Yes, your Honor, and can everyone

3    hear me okay?

4         THE COURT:  Yes.

5         MR. TOMASEVIC:  Great, thank you.  Before I start

6    with any prepared remarks, does the Court have any questions

7    about what occurred or any of the briefs or should I just

8    launch in to what I prepared today?

9         THE COURT:  I had some questions, but let me hear

11:13AM 10    your argument first.

11         MR. TOMASEVIC:  Very good, your Honor.  You know,

12    your Honor, in a lot of ways, I feel like we're two ships

13    passing in the night.  You wouldn't know it from listening

14    to my opponent's remarks, but so much of what was said is

15    disputed that this case wouldn't be appropriate for summary

16    judgment, let alone on a motion to dismiss that looks purely

17    within the four corners of the pleadings.

18         To summarize, our case is pretty clear and laid out

19    pretty simple and laid out pretty clearly in the complaint.

11:14AM 20    Mr. Turner, along with many others, were promised by

21    Liberty, including through original plan documents, that

22    workers would get full credit for their Safeco years.  They

23    were told they would be grandfathered in.

24         That's in paragraph 39 of the complaint, that as

25    far as this hire date, they were repeatedly told in writing

1   that their hire date was their earlier date with Safeco, not

2   the 2008 date with Liberty Mutual.

3        In other words, Mr. Turner's hire date was 38 years

4   ago, more than 38 years ago, and then, and this is

5   undisputed, Liberty refused to give any such credit.  We're

6   not fighting over whether such credit was given.  Liberty

7   doesn't deny that it's not going to give the credit.

8        Liberty refused to give any such credit, even going

9   so far as to try to issue new plan documents and revised

11:15AM 10   plan documents after and because Mr. Turner tried to claim

11   his past service with Safeco.

12        Now, these facts give rise to liability under what

13   I like to think of is two halves of the ERISA private right

14   of action.  That's a (a)(1)(b), which is basically a claim

15   to enforce the promises in the written plan documents or to

16   interpret those promises, and then secondly under 83, which

17   is more of a catch-all and more of a general provision

18   allowing the Court to draw on its equitable powers to grant

19   any equitable relief for breaches of ERISA, including

11:15AM 20   breaches of fiduciary duty.

21        Now, when I said that we are two ships passing in

22   the night, it's because nearly every remark made by my

23   opponent presumed that the 2019 plan is the only relevant

24   plan here.

25        Well, first, as a matter -- a very important

1    threshold question is I don't even know what they're talking

2    about when they refer to the 2019 plan.  They attached

3    extrinsic evidence to their motion to dismiss, something

4    that, of course, we object to, and I'm not going to go into

5    that unless the Court has questions about that, but they

6    attach two documents, a 2013 plan, that's a medical plan

7    document, and then they attached a 2019 SPD, summary plan

8    description, incomplete summary plan description.

9         These are the 2019 documents that they drafted only

11:16AM 10   after and as a result of Mr. Turner speaking up and pointing

11   out that he was not getting his benefits.

12        We've never seen the actual written plan from 2008

13   or anything from 2009 to 2013, and there's no plan submitted

14   that -- no document called a plan after 2013.  In fact, in

15   their reply, they admit there's another plan dated 2017 that

16   we also don't have in front of us.

17        Now, let me talk about the SPDs.  The SPDs come

18   from 2019, I told you sort of ex post facto after my client

19   and only after my client objected, but they don't include

11:17AM 20   the SPDs from 2008 or 2009 or even what may be the current

21   SPDs from 2020.  We don't have those.  What we have is this

22   cherry-picked version taken out of context of a couple of

23   documents, which we don't even admit are authentic or

24   genuine, frankly, let alone relevant or important, and

25   that's important for something very important that my

1    opponent said.

2         She said essentially that this is a contract issue.

3    Well, we all know from contracts class and enumerable cases

4    litigating contracts, the first thing you do when you

5    litigate a contracts case is you have to identify what the

6    contract is, and then you have to look at the entire

7    contract, the whole of it and its parts to objectively

8    determine the parties' intent, you don't cherry-pick little

9    pieces here and there.

11:18AM 10         We can't get past the first part here in this

11    admittedly contract interpretation type of case, at least

12    under (a)(1)(b) and Claim 1, when we don't even have the

13    documents, and, in fact, Liberty refuses to produce the

14    documents that are necessary for this contract analysis.

15         So, your Honor, we are worlds apart, and we

16    completely disagree that it is clear that there's

17    unambiguous, unchallenged evidence showing what Liberty

18    thinks is shown here.

19         Now, let me talk about another point that my

11:18AM 20    opponent made, which is that it's clear under *Curtis Wright*

21    and other cases, including in the First Circuit that welfare

22    benefits are a little different than pension benefits, and

23    for the importance of this case that welfare benefits can be

24    taken away.

25         Well, we don't dispute that under some

1    circumstances, welfare benefits can be taken away.  I don't

2    know why Liberty Mutual spent so much time talking about

3    this when it's undisputed, but as the *Balestracci* case, a

4    case that both sides cite repeatedly in all of their briefs,

5    makes pretty clear, an employer can contractually cede its

6    freedom to amend and terminate the plan and may provide

7    retirees with vested retiree welfare benefits that cannot be

8    changed unilaterally.  That comes straight from the

9    *Balestracci* case at page 230 of the First Circuit's opinion.

11:19AM 10    There, they were citing the *Inter-Modal Rail*

11    *Employees* case that, again, I think both sides have cited

12    for you, the Supreme Court case, 520 U.S. 510, and that's

13    exactly what we say happened here, and we allege

14    specifically that Mr. Turner was essentially promised, it

15    was made part of his employment agreement in essence, and it

16    was promised to him not only in those, in that capacity, but

17    also in other written and oral manners that he would be

18    vested in these retirement benefits, that they were not

19    forfeitable and that he, like everyone else at Liberty

11:20AM 20    Mutual, would be treated the same and would get all of their

21    past service credits for all of the years at Liberty Mutual

22    and that at prior companies, companies that were acquired by

23    Liberty Mutual.

24    Again, we explicitly allege that those were

25    promised, nonforfeitable vested benefits, and when you

1    realize that important and crucial distinction, it

2    doesn't -- *Curtis Wright* and its progeny and all those other

3    cases don't matter anymore because we are taking them out of

4    the normal distinction that exists between welfare benefits

5    and pension benefits.

6         So, your Honor, I think the case is frankly quite

7    simple.  We've alleged promises that were not kept.  The

8    only way that Liberty Mutual has attempted to attack them is

9    to say not necessarily that they didn't make those promises,

11:21AM 10   although they do say that, but here are some brand new

11    documents cherry-picked from a whole library of documents

12    consisting that cover hundreds of thousands of employees at

13    one of America's largest companies, a cherry-picked select

14    set of paragraphs rather than the whole gamut of promises

15    that are needed to actually decide the decision that you're

16    going to need to decide this very important decision

17    probably on some motion for summary judgment down the line.

18         It's inappropriate to consider those documents.

19    Liberty's arguments in that regard must be rejected, and we

11:22AM 20   ask that you deny the motion outright and allow us to

21    finally do the discovery and make Liberty actually produce

22    the real documents that their arguments truly rely on.  With

23    that, unless you have any questions, your Honor.

24         THE COURT:  Let me ask you this, so if I understand

25    what you're saying is the plaintiff here has vested rights

1    or perhaps equitable rights based on sort of one of or maybe

2    all but three different categories.  One is some one or more

3    earlier plans.  That would be Category 1.  Category 2 would

4    be some other written documents, such as an employment

5    agreement.  And Category 3 would be an oral representation.

6        Am I correct, did I read it correctly that you

7    don't have copies of the written documents on which

8    plaintiff relies?  In other words, he says he has vested

9    rights, but he doesn't have those documents.  Do I have that

11:23AM 10    right?

11        MR. TOMASEVIC:  I'll answer your question in two

12    parts.  You are correct in your summary that we will

13    introduce evidence of all three things, plan documents, of

14    which there are many other written documents that may not

15    necessarily be plan documents and oral representations, so

16    you're correct there, your Honor.

17        As far as what we have in writing, remember,

18    Liberty Mutual refused to produce the whole library of plan

19    documents, even though it's their obligation to do so, or at

11:23AM 20    least, you know, that's what we allege and lay out in the

21    complaint.

22        What we do have are some older SPDs that now

23    apparently Liberty Mutual will say are not relevant, and

24    those SPDs say specifically that the Safeco people were

25    grandfathered into the program, including their prior years

1   of service.

2         We also have, and we don't want the Court to

3   consider them, but if the Court were even to look at the

4   documents that Liberty attached to its motion, those

5   documents themselves rely on earlier plan documents, and, in

6   particular, Section 6.1 and 6.2 of their purported plan

7   documents says nothing in these new documents is going to

8   change what you were given and what we incurred in the

9   earlier documents, so they're acknowledging these earlier

11:24AM 10   documents but not showing them to us, your Honor.

11         So to answer your question in short, yes, we rely

12   on those three things, but, no, we have some things we were

13   able to gather despite Liberty Mutual's insistence on not

14   letting us see everything.

15         THE COURT:  I mean, one of the reasons I'm asking

16   is normally you are the plaintiff, you know, you put forth

17   your affirmative case saying, you know, I relied on this

18   piece of paper, here it is, and I'm not sure I'm seeing

19   that.  Maybe I'm missing it.

11:24AM 20         I know you don't have complete copies of everything

21   you need, but it wouldn't surprise me that an employee

22   doesn't have, you know, a complete copy of the plan as

23   opposed to an SPD or something here or there, but it's a

24   difference between a fishing expedition and not a fishing

25   expedition I guess is the point I'm trying to make.

1          You know, if he says no, here it is, it says here

2     in writing I'm vested or this benefit won't be taken away,

3     or we'll give you credit for your Safeco service, he

4     presumably has that, right?

5          MR. TOMASEVIC:  Well, your Honor, there's a couple

6     of -- I'm going to answer your question in two parts, and I

7     believe my colleague, Mr. Jack Winters, if you'll allow,

8     will have something to add, so as a matter of pleading,

9     there's no rule that says you have to attach all documents

11:25AM 10    to your complaint, as we all know.

11          Well, we gave to the best of our ability quotes,

12    such as grandfathering in, such as vested, and we describe

13    the representations as well as the written materials that my

14    client was exposed to in the complaint, and, again, that we

15    didn't include exhibits is really I don't think critical

16    here, but I think perhaps more importantly, I didn't want to

17    make the same mistake that Liberty is making here, which is

18    attaching out of context a small selection of what we know

19    is a giant library, a library that, frankly, we should have

11:26AM 20    had already because ERISA requires Liberty to give it to us,

21    so, I mean, if the Court wants to see some paper, some

22    additional paper more than that it's already seen, we can do

23    that to an extent, but the best method or the most efficient

24    use of our time would be, well, let's do that after Liberty

25    Mutual has complied with its obligation under ERISA to

1    provide all the documents.

2         THE COURT:  I'll let Mr. Winters hop in in a moment

3    here, but my next question is what is your response to the

4    case law that says it doesn't matter, you know, that there

5    were oral representations, that ERISA doesn't work that way,

6    and a related question to me, anyway, is normally when

7    you're relying on a representation, whether it's a

8    misrepresentation, claim or fraud, or an oral

9    representation, you need to provide particulars, who made

11:27AM 10   the representation, when, you know, what authority did that

11   person say, and it's all pretty vague in the complaint.

12        It wouldn't survive a Rule 9(b) motion, for

13   example, if you were alleging fraud, but should I even

14   consider any of these oral representations, and, if so, why?

15   I mean, even if you're right, let's say, and this earlier

16   plan documents say he's vested or maybe his employment

17   agreement says he's somehow vested, under what circumstances

18   do I consider the oral representation, if so, and why are

19   they not specifically alleged?  You know, who?

11:28AM 20        MR. WINTERS:  Your Honor, perhaps I can explain in

21   some more detail.

22        THE COURT:  All right.

23        MR. WINTERS:  The plan documents that you have in

24   front of you are only part of the overall ERISA plan.  If

25   you look at the section of the SPD that they provided you at

1    page B-57, Exhibit 1, there is a section entitled, "Cost for

2    Retiree Coverage," and in that section, it references

3    employment of individuals who came with the company before

4    2013 and remained there, and it specifically references the

5    Liberty Mutual retirement benefit plan.  That is not what

6    you have in front of you, you only have part of that plan is

7    the health part.

8         THE COURT:  But that's all we're talking about,

9    right?

11:29AM 10         MR. WINTERS:  No.

11         THE COURT:  It's not a pension benefit?

12         MR. WINTERS:  No, no, your Honor, the health plan

13    referenced in the SPD utilized representations made in the

14    benefit plan.  We do not have in this case, your Honor, copy

15    of the Liberty Mutual retirement benefit plan.

16         We happen to know, your Honor, we are the attorneys

17    who handled the *Moyle vs. Liberty Mutual* prong, and that was

18    a retirement benefit plan, but we have extensive information

19    regarding that plan, and one of the aspects of that plan are

11:29AM 20    vesting provisions we believe will probably apply here as

21    well.

22         That plan, which is referenced in their exhibit,

23    which has not been produced, also contains definitions for

24    all of these terms.

25         Now, we can't use them yet because we're not sure

1    exactly what those plans are.  There is nothing that says,

2    your Honor, that a health plan is limited to just one thing,

3    one piece of paper.  There's no law to that effect, and we

4    have alleged that everything constitutes part of the plan.

5         With regards to the oral representation prong, your

6    Honor, Mr. Turner had significant, lengthy, hour-long

7    conversations on the phone, all of which were recorded for

8    more than a year before they modified the SPDs.  We asked

9    for those recordings, and we haven't gotten them, so we will

11:30AM 10  have evidence of representations.  We will be able to answer

11   the Court's questions as to who, what and when was it said,

12   but we don't have that information.

13        Your Honor, this is really a totality of the

14   circumstances case.  We do not have in front of you an

15   administrative record yet, and in most cases like this, you

16   have the entire administrative record, you have the entire

17   ERISA plan.  There's no integration clause in the materials

18   that they have provided.  We get to come in with oral

19   representations that explain ambiguous provisions.  We get

11:31AM 20  to come in and put our case on, and we need to be able to

21   articulate these things specifically.  We need to see

22   everything, as does the Court, and, your Honor, there is the

23   possibility of retaining the right to modify a plan and

24   completely eliminate the plan, but if they haven't done it

25   the right way, they can't do that, they can only eliminate

1   it completely.

2          This is a unique case because they literally

3   modified the SPD specifically in response to Mr. Turner's

4   complaint.  They only modified it as to Safeco employees.

5   There was no reason to do that.  They didn't need to modify

6   it, and there was even -- there's even issues, your Honor,

7   concerning his delay in retirement, why he delayed it.

8          There are issues of fact in this case, your Honor,

9   to the extent that their lawyers in response to Mr. Turner

11:32AM 10   before he had presented any litigation threat literally got

11   involved in this, redrafted everything, and then wouldn't

12   tell us what they had done or why they had done it.

13          This is a very complex situation, and we need some

14   discovery to be able to articulate everything, and so there

15   are answers to everything here, your Honor, but as my

16   co-counsel has indicated, they're just cherry-picking.  We

17   do not agree for one moment that you have in front of you

18   the entire plan, and we are entitled to see the entire

19   contract, and we are entitled to be able to then present our

11:33AM 20   theories in a fashion which should be done by way of cross

21   motions for summary judgment.

22          Sorry to interrupt so long, Alex.

23          THE COURT:  Let me hear Ms. Warner's response to

24   this.

25          MS. WARNER:  Excuse me.  Your Honor, let me first

1    address the issue of the allegation here that the plan

2    documents are not before the Court.  First of all, that's

3    not correct.  The 2019 plan at Section 1.4, interpretation

4    page 2 states, "The plan shall consist of the articles and

5    appendices of this plan document, the SPD as may be amended

6    from time to time."

7         There is no doubt from the allegations made in this

8    complaint that the plaintiff had in his possession the 2019

9    plan and the 2019 SPD.  Those are the two operative

11:34AM 10   documents because he retired in 2019.

11        Secondly, he attempts to put at issue earlier plan

12   documents, other documents and oral representations.  Those

13   are all precluded by the law.  They're precluded clearly by

14   the law, and the Supreme Court cases that I've cited state

15   that, oral representations do not suffice.  ERISA is all

16   about the written plan.

17        THE COURT:  Suppose he says, I think, I'm

18   struggling with this a little bit, but he says he was vested

19   under one of these earlier versions of the plan.  Suppose

11:35AM 20   the 2013 plan says you are vested and entitled to all your

21   time, you know, at Safeco.  That would matter, wouldn't it,

22   regardless of what the 2019 plan is, like that's something

23   you couldn't take away, right?

24        MS. WARNER:  Your Honor, the facts in the 2013

25   plan, which was provided as an exhibit to the reply, show

1    unequivocally and unambiguously that Liberty Mutual reserved

2    the right to modify, amend the plan at any time.  That is

3    the law of welfare plans under ERISA.

4         THE COURT:  Including, unvesting people who have

5    already vested?

6         MS. WARNER:  That's the second point, your Honor.

7         THE COURT:  Okay.

8         MS. WARNER:  They take for granted that there has

9    been vesting, but, again, that flies in the face of the

11:36AM 10   complete, clear Supreme Court precedent and what they've put

11   at issue here.  Welfare benefits do not vest absent some

12   other contractual arrangement.  They have not pleaded any

13   other contractual arrangement.  They are required to do that

14   under the controlling pleading standards.

15        They haven't done it.  Frankly, they cannot do it.

16   They have a promise that these benefits were vested.  That

17   is absolutely, absolutely contrary to what *Curtis Wright*

18   requires, *U.S. Airways* requires and the *M&S Palmer* case

19   requires, so there is no vesting of welfare benefits in a

11:37AM 20   situation where clearly at all times the plan and the SPD

21   provided for amendments, provided for changes in the plan's

22   structure, which is completely unallowed under ERISA, and

23   Justice O'Connor addressed the reason for this, the

24   legislative reason for this in the *Curtis Wright* decision.

25        Next, he did not allege that Liberty Mutual failed

1    to provide him with the operative plan documents.  He

2    clearly has the 2019 plan.  He clearly has the 2019 SPD.  He

3    has the two documents that are the operative documents to

4    determine his welfare benefits under the Liberty Mutual 2019

5    health plan.

6         There was no misrepresentation of the benefits

7    here.  There was no misrepresentation because there couldn't

8    be a misrepresentation with regard to vesting because

9    vesting never happened under the very language of each of

11:38AM 10   these documents.

11        With regard to the issue that Liberty Mutual failed

12   to provide the operative documents, again, completely runs

13   into the mountain, it flies into the mountain of

14   Supreme Court precedent.  *Curtis Wright*, I'm very enamored

15   with *Curtis Wright* because it is the leading case, it is the

16   seminal case on this issue.  Justice O'Connor said in

17   *Curtis Wright*, "ERISA requires that every plan administrator

18   make available for inspection a set of all currently

19   operative governing plan documents."

11:39AM 20        Liberty Mutual mailed the currently operative

21   governing plan documents to Mr. Turner.  There is no

22   allegation in the complaint otherwise.  Mr. Winters has made

23   a number of statements in argument today.  None, zero of

24   those are well pleaded in this complaint.

25        They have failed to plead a number of these items.

1    Pleading them would be futile because they would be running

2    into this precedent, running into the unambiguous language

3    of the operative plan documents, but, regardless, your

4    Honor, they haven't pleaded them.  If they want to try to

5    make a cognizable claim, I suppose they could try by

6    repleading.  It would be futile under the law.  It would be

7    a waste of the Court's valuable resources at this time, but

8    they can't just say to you now in this argument things that

9    are not pleaded in this complaint, and they cannot get

11:40AM 10    around these clearly stated established principles under

11    ERISA welfare benefit law.

12         There is no vesting of welfare benefits absent a

13    contractual arrangement.  They have not pleaded any such

14    contractual arrangement with Mr. Turner.  They cannot get

15    around the 2019 unambiguous plan language.  Thank you.

16         THE COURT:  The 2019 amendment that made the

17    specific reference to Safeco obviously amended an earlier

18    existing plan.  What was the date of the earlier existing

19    plan, was it 2013?

11:41AM 20         MS. WARNER:  It was 2013, your Honor, and I want to

21    be very clear on one point that's been stated by plaintiff's

22    counsel.  Mr. Turner, and it is alleged in their complaint

23    and it is true, it is not just true for the purposes of this

24    12(b)(6) motion, it is true Mr. Turner retired in 2019.  He

25    did not retire prior to that time.

1          THE COURT:  All right.  Mr. Tomasevic, any response

2    to that?

3          MR. TOMASEVIC:  Yes, your Honor, briefly.  So the

4    idea that Mr. Turner retired or may have retired in 2019 is

5    completely irrelevant and a red herring.  There is no law

6    cited by the defendant, nor any plan language that says that

7    when you retire is the dispositive date upon which we no

8    longer look at any other documents.

9          In fact, that wouldn't make any sense even under

11:42AM 10    their own exhibits and their own documents because, as I

11    pointed out in Section 6.1 and 6.2 of their own exhibit,

12    which is Exhibit 2, it says essentially we're incorporating

13    the prior language, and nothing in this new language is

14    meant to overthrow obligations incurred in the prior

15    language.

16          THE COURT:  But you say as of the 2013 plan, he was

17    vested, right?

18          MR. TOMASEVIC:  I'm saying he was vested at all

19    times and prompt vesting from 2008 on, your Honor.

11:42AM 20          THE COURT:  So up to the moment they amended the

21    plan in 2019, he was vested at the second date they amended

22    the plan?

23          MR. TOMASEVIC:  Right, as we allege in the

24    complaint, he was vested, he had an unforfeitable right to

25    those medical benefits, your Honor.

1          THE COURT:  That's true under the earlier plan?

2          MR. TOMASEVIC:  Under earlier plan documents, and

3     remember, you know, your Honor, I'm still confused as to

4     what this phrase "2019 plan" refers to.  Is it the 2017 plan

5     that's referenced in the reply, is it the 2013 plan attached

6     to their initial motion, is it the 2013 plan as modified by

7     the SPDs that they drafted in 2019 only after my client

8     spoke up?

9          I still don't know what document is being referred

11:43AM 10     to as "2019 plan," and as Mr. Winters pointed out, when you

11     talk about ERISA and you talk about a "plan," it's not some

12     neat little 10-page document, especially not at a company of

13     this size that's been in existence so long, we're talking

14     about documents like a medical plan portion that are part

15     of, as we allege in the complaint, an entire retirement

16     benefit plan that has been amended over many years that

17     includes what's called and what we refer to sort of quickly

18     as SPDs, but then if you stop there, SPDs means actually a

19     collection of documents, including correspondence and other

11:44AM 20     things that are not attached to their motion, even if we

21     accept what they attach to their motion.

22          SPDs are supposed to include summaries of material

23     plan modifications, again, also admitted by Liberty in its

24     motion if we're going to even count against the extrinsic

25     evidence, so, Liberty has to prove what the plan is, that

1    question Number 1 we talk about in every contracts case,

2    identifying the contract, and they can't do it with a

3    cherry-picked, taken out of context set of paragraphs from

4    documents that were created after the dispute arose, your

5    Honor, and that's our main thrust here, but, again, when

6    Mr. Turner retired in 2019 is really besides the point, and

7    there's no case and no language in the contract that

8    supports that claim.

9            In fact, their own contract at Section 6.1 and 6.2

11:44AM 10    actually incorporates the older documents, we have to look

11    at the older documents.

12            THE COURT:  All right.  Let me --

13            MR. TOMASEVIC:  There was one other point I wanted

14    to make about oral representation, your Honor.  So there's

15    one thing we have to keep crystal clear.  Basically there's

16    two theories or two halves to the case.  I mean, there are

17    additional claims, but let's talk about (a)(1)(b) and (a)(3)

18    again briefly.

19            (A)(1)(b) is a contract type of analysis.  Does the

11:45AM 20    paperwork say what we think it says or what Liberty thinks

21    it says, and to the extent Liberty cites authority that says

22    you can't modify the written plan with oral representations.

23    Well, we dispute that because Mr. Winters pointed out

24    whenever there's ambiguity, you can always bring in parole

25    evidence when there's no integration clause, but even if

1   Liberty was right, and we don't think they are, that still

2   doesn't speak to (a)(3) claim or Count 2, which is more of

3   an equitable, broad, and I call it a catch-all provision

4   that allows again and gives greater weight and consideration

5   to these additional pieces of parole evidence, if you will.

6        And, in fact, if you look at our arguments with

7   respect to the SPD claim, the fourth claim, we there point

8   out what is also important and what is undisputed here is

9   that what you start to look at when you're evaluating SPDs,

11:46AM 10   as Liberty Mutual itself invites, you have to look at the

11   expectation of the parties.

12        In fact, this is what -- this is how Liberty Mutual

13   lost summary judgment in the *Moyle* case in the Ninth Circuit

14   is because we were able to plead and prove that there was a

15   reasonable expectation by the retirees that would get past

16   service credit this time for a company called Golden Eagle.

17        And the Court was very clear, and the Ninth Circuit

18   affirmed that we have to look at the reasonable expectations

19   of the parties, and if the reasonable expectations are such

11:46AM 20   that they expected something, well then you have to disclose

21   anything contrary in plain language and expressly in your

22   SPDs, and it has to be somewhere in your documents.

23        Again, we're missing all of the documents, but,

24   second, we clearly allege that that's not anywhere in any

25   documents, so, again, the oral representations are

1    important, they're not dispositive here, and there is no

2    9(b) requirement that we plead them with any type of

3    specificity, but they are important, and they're especially

4    important for the (a)(3) claim, which we have keep distinct

5    from the (a)(1)(b) claim, your Honor.

6          THE COURT:  All right.  Let me toss out an idea

7    here, which is this:  I would like to eliminate this dispute

8    about whether we're looking at documents outside the record

9    on a 12(b)(6) motion.  I think it's pretty clear that the

11:47AM 10   plan documents that are at the center of the dispute can be

11    considered, but I'd like to eliminate that issue.

12          I would like to convert this to a motion for

13    summary judgment and to permit some supplemental affidavits

14    and briefing in order to eliminate that issue.  In order to

15    make that a useful exercise, among other things, the thought

16    occurs to me, and I guess I'll put the question first to

17    Ms. Warner, I'm disinclined to permit discovery at this

18    point for what should be obvious reasons, but is there any

19    reason why Liberty could not produce, just so that there's

11:48AM 20   no dispute about this, the current plan and current SPD or I

21    should say the plan and SPD as of January 2019 and whatever

22    the plan and SPD were prior to that amendment in their

23    entirety incorporating prior documents by reference, you

24    know, produce those documents, too, and just so there is no

25    dispute, the plan on the day he retired and the plan before

1     it was amended, which they say was improper.

2          And then, plaintiffs, is there some reason if you

3     have written documents, employment agreements, whatever it

4     is you say you have, oral representations made by somebody,

5     is there some reason you can't put that in the record,

6     whatever you have, and it's either relevant or not, I'll

7     look at the case law.  You know, the oral representations, I

8     assume I have my doubts about it, but I'll look at the

9     cases, and then we have what I'll call the core dispute.

11:49AM 10          Ms. Warner.

11          MS. WARNER:  Your Honor, yes, Liberty can

12     absolutely provide the operative plan documents.  I want to

13     be clear what those are.  They are as they are defined in

14     the plan, the plan and the SPDs.  We will provide those, and

15     we will provide those with regard to 2019, and we will

16     provide the prior ones, but I want to be abundantly clear

17     here that the plaintiffs have those, for sure, but that's

18     not what they've asked for.  They have asked in addition for

19     a number of items that are absolutely not the plan

11:50AM 20     documents.

21          THE COURT:  Maybe we get there, maybe not, but for

22     us to even go down that path, I need to see that they have a

23     valid basis for a claim, not a plausible claim, that's why

24     I'm talking about summary judgment here, not just an

25     allegation but, you know, sufficient evidence to convince me

1    at this stage, and, obviously, there may be some Rule 56(d)

2    type responses if they don't have enough information, but I

3    want affidavits, documents, fragments of documents,

4    whatever, sufficient to show, you know, the basis of their

5    claim and so I can evaluate that and decide, ah-huh, is

6    there something here in the case law that would permit this

7    to survive summary judgment or permit me to allow discovery

8    to go forward.

9         I need to be convinced of that, but I also want to

11:51AM 10    eliminate this dispute about what is the plan in 2019 and

11    what was the plan the day before it was amended.

12         MS. WARNER:  We will provide the answer to that

13    question, which we have laid out in the motion.  We will be

14    abundantly clear about it.

15         THE COURT:  If it's 10,000 pages, give them 10,000

16    pages; if they already have it, fine, give it to them again.

17         MS. WARNER:  We will.  It's not 10,000 pages, but

18    we will give them everything that are the plan documents for

19    those years.

11:51AM 20         THE COURT:  Okay.  And so, again, my idea here, I

21    convert this to a Rule 56 motion, these documents get

22    produced, supplemental affidavits and briefing are

23    permitted, and plaintiffs lay out what they have, you know,

24    maybe what they don't have, why they need discovery under

25    Rule 56(d) but permitting me to look outside the record at

1    this point and to look at the case law and decide whether or

2    not these claims should survive or at least survive into the

3    discovery stage.

4          Mr. Tomasevic, is there any reason why that

5    wouldn't work?

6          MR. TOMASEVIC:  Well, your Honor, your first

7    question to me was is there any reason the plaintiff can't

8    provide more evidence or detail as to what he relied on, to

9    paraphrase, your Honor.  The answer to that is no, there's

11:52AM 10   no reason we can't.  In fact, we intended to, we just didn't

11   think it was necessary on a motion to dismiss.

12          Now that you're converting that, we're in a

13   different arena, so to speak, and I acknowledge that and

14   this is progress, but I want to be clear that this is only

15   progress to one part of the case, so the plan documents and

16   the written contractual documents are really important to

17   the (a)(1)(b) claim, and you'll be able to probably call

18   balls and strikes on the (a)(1)(b) claim on the first count,

19   but when you start getting into the equitable claim under

20   (a)(3) and especially when you start getting into the

21   reasonable expectations argument that is critical to Count 4

22   of the adequacy of SPDs, we're going to have look well

23   beyond the contractual language, and we start thinking of

24   those oral representations, we start looking at the recorded

25   conversations that Liberty has refused to provide that

1    Mr. Winters talked about, and we're looking at a whole host

2    of other things, marketing materials, other things from 2008

3    that were given to the class when they were asked to make

4    this important decision as to whether to come over from

5    Safeco to Liberty Mutual or go on their own.

6            So you've got from what my colleague, Mr. Winters,

7    said about his phrase, you've got more of a totality of

8    circumstances inquiry with all of the counts except for

9    (a)(1)(b), so to summarize, yes, we're making progress on

11:54AM 10   the (a)(1)(b) claim by looking at claim documents, but

11   you're going to hear from us that we need a lot more if

12   we're going to do summary judgment on the rest of the

13   claims.

14           THE COURT:  And I just want you to lay out what you

15   have, okay, so I can evaluate that according to the case

16   law, and it may be an affidavit that says that the executive

17   vice-president stood up at a meeting, you know, on such and

18   such a date and said X, Y, Z, and I don't have any document,

19   and then Ms. Warner can say, well, no, that's an oral

11:54AM 20   representation, that's irrelevant, and you can say, no, it

21   was part of the equitable, reasonable expectation package,

22   and I can evaluate that, and either, you know, I grant

23   summary judgment or I deny it, but I want to look at the

24   facts that you have in hand right now that form the basis of

25   your equitable claim, including things that are in writing,

1    like you say that there's an employment agreement that, you

2    know, affects this, you know, where they made a direct

3    representations to the contrary, let's see it, okay, and

4    let's see how that, you know, the evaluation of that

5    totality of information that is not total in the sense that

6    without discovery, you don't have everything but enough that

7    I can evaluate it and decide, yes, there is sufficient

8    evidence to support a claim for equitable relief that should

9    permit this case to go forward into the discovery stage.

11:55AM 10    Ms. Warner.

11         MS. WARNER:  Yes, your Honor, thank you.  So we

12    will put forth again to the Court the legal reasons why the

13    equitable relief is not available here due to the lack of

14    vesting, due to therefore the lack of any misrepresentation

15    and due to the other legal factors that we briefed.

16         I just want to state that.  I understand what the

17    Court is requesting, and I'm giving you a little bit of a

18    preview of how we will come back at that because we feel

19    very strongly that they can't move to these so-called

11:56AM 20    equitable remedies unless they can demonstrate that the plan

21    was anything other than clear with regard to the benefits

22    that could be modified at any time.

23         THE COURT:  Okay.  So just to be clear, you know,

24    you may wind up wanting to move to strike some of this

25    stuff.  You can just kind of fold that into your summary --

1    I'll leave it to you to brief it how you want.  You know, if

2    you think it's irrelevant and the appropriate remedy is

3    motion to strike, that is fine, but that's a collateral

4    technical piece of this dispute I think at this point.

5         MS. WARNER:  Understood, your Honor.

6         THE COURT:  All right.  The timing on all of this,

7    because of the holidays and because of COVID, I am inclined

8    to give you about a month.  Is that too much, too little,

9    and then some replies after that, and then we reconvene?

11:56AM 10    MR. WINTERS:  When would we be looking at the new

11    materials from Liberty?  I mean, one of the things we're

12    looking for is the Liberty Mutual Retirement Benefit Plan

13    that's referenced in the SPD.  We know that's extensive, and

14    when are we looking at all of these materials getting to us?

15         THE COURT:  Ms. Warner, when do you think you could

16    get this produced?

17         MS. WARNER:  I believe I could get this within the

18    week.  I will consult with my client, and I will provide an

19    e-mail to the plaintiff's lawyers today in terms of the time

11:57AM 20    frame, but I do not foresee this being a problem.

21         THE COURT:  Okay.  If it's longer than a week, that

22    is, if you can't do it by December 22nd, let's talk about

23    that, and, you know, maybe I need to extend the schedule or

24    something.  Hold on.  Let me look at the calendar.

25         All right.  So I'm going to direct that -- well,

1    first, I'm going to formally direct that I'm going to

2    convert this motion to a motion for summary judgment.   I

3    don't need new briefing from scratch, although I'll leave

4    that to your discretion, just have mercy on me in terms of

5    what you are providing to me that I have to read, so by

6    January 15th, any supplemental briefing or supplemental

7    affidavits and exhibits, replies by -- that is, responses to

8    that we'll say by January 29th, and let's reconvene with a

9    Zoom hearing, how about Friday, February 5th at 2:00 eastern

11:58AM 10    time.   Does all that work?

11             MS. WARNER:   That works, your Honor.

12             MR. TOMASEVIC:   Your Honor, I'm sorry to be the

13    thorn in the side, but I know that I'm going to be without

14    some staff until January 6th, at least, and so things like

15    getting all the documents in our system, uploaded and the

16    volume of the documents is going to be tough to handle

17    before then.

18             THE COURT:   I'll tack a week onto everything, so

19    I'll make the simultaneous filings January 22nd, replies by

11:59AM 20    February 5th, and how about Friday 12th at 2:00 for

21    argument?

22             MR. TOMASEVIC:   All right, your Honor, and I think

23    in so doing, you answered my second question, which is these

24    are simultaneously traded briefs, both the supplemental and

25    the replies.   Okay, great.

1        THE COURT:  Yes.

2        MR. TOMASEVIC:  My last point, I want to be candid

3    with the Court, so when I made earlier remarks about an

4    employment agreement, it was really -- what I really want to

5    say is I don't know that there's a written employment

6    agreement that says vesting, vesting, vesting.

7        THE COURT:  Okay.

8        MR. TOMASEVIC:  I say that it was effectively part

9    of the agreement and the understanding, which could have

12:00PM 10    meant orally.

11        THE COURT:  Mr. Turner has his version of the

12    facts, okay, I want it laid out in an affidavit.  You do

13    your job how you think you need to do it, but it seems to me

14    if he says the guy shook my hand and said, don't worry,

15    you're vested, whatever the facts are, I would put that in

16    an affidavit, and then we can evaluate it according to what

17    you say of the case law that permits equitable relief under

18    such circumstances.

19        MR. WINTERS:  Judge, just so we're clear, we're not

12:00PM 20    going to -- if what they give us is not sufficient in the

21    next week, that's just something we raise in the motion.

22        THE COURT:  No, I'd like get it resolved well in

23    advance.  In other words, if you think somehow, you know,

24    she's going to give you 2019 in its entirety, the prior plan

25    in its entirety, which I think is 2017, if you think

1  something is missing, meet and confer, you know, and if you

2  have a dispute, bring it to my attention, but let's get that

3  wrapped up.  I mean, those documents are what they are.

4  Somewhere in the files of Liberty Mutual, you know, the law

5  department, you know, it's probably electronic now, but they

6  have this, right.  And if it's complicated, sometimes it is,

7  you know, meet and confer, and I can resolve any disputes.

8  Okay.

9            MR. WINTERS:  Very good, your Honor.

12:01PM 10            MR. TOMASEVIC:  Thank you, your Honor.

11            THE COURT:  So the motion will remain pending, and

12  this will be the schedule.  If there are disputes, requests

13  for clarifications, I would rather nip them in the bud

14  rather than letting them fester for long periods of time.  I

15  may not be entirely easy to reach between Christmas and

16  New Year's, but I will do my best, you know, so let's try to

17  hold to the schedule.

18            Okay.  Thanks, everyone, and have a safe holiday

19  and a good holiday, not necessarily the same thing, and we

12:01PM 20  will speak again in February unless something comes up.

21            MR. TOMASEVIC:  Thank you, your Honor.

22            (Whereupon, the hearing was adjourned at 12:01 p.m.)

23

24

25

1                   C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT )

4    DISTRICT OF MASSACHUSETTS ) ss.

5    CITY OF BOSTON )

6

7            I do hereby certify that the foregoing transcript,

8    Pages 1 through 40 inclusive, was recorded by me

9    stenographically at the time and place aforesaid in Civil

10   Action No. 20-11530-FDS, THOMAS TURNER, an individual on behalf

11   of himself and others similarly situated, vs. LIBERTY MUTUAL

12   RETIREMENT BENEFIT PLAN and thereafter by me reduced to

13   typewriting and is a true and accurate record of the

14   proceedings.

15           Dated December 17, 2020.

16

17                        s/s Valerie A. O'Hara

18                        _____

19                        VALERIE A. O'HARA

20                        OFFICIAL COURT REPORTER

21

22

23

24

25