**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ )<br>**THOMAS TURNER, an individual, on** )<br>**behalf of himself and others similarly** )<br>**situated,** )<br> )<br>**Plaintiff,** )<br> )<br>**v.** )<br> )<br>**LIBERTY MUTUAL RETIREMENT** )<br>**BENEFIT PLAN; LIBERTY MUTUAL** )<br>**MEDICAL PLAN; LIBERTY MUTUAL** )<br>**RETIREMENT BENEFIT PLAN** )<br>**RETIREMENT BOARD; LIBERTY** )<br>**MUTUAL GROUP INC.; LIBERTY** )<br>**MUTUAL INSURANCE COMPANY;** )<br>**and, DOES 1–50, Inclusive,** )<br> )<br>**Defendants.** )<br>_____ ) | **Civil Action No.**<br>**20-11530-FDS** |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT**

**SAYLOR, C.J.**

This is an action arising under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001.  Plaintiff Thomas Turner contends that defendants Liberty Mutual

Retirement Benefit Plan, Liberty Mutual Medical Plan, Liberty Mutual Retirement Benefit Plan

Retirement Board, Liberty Mutual Group Inc., and Liberty Mutual Insurance Company (together,

"Liberty Mutual") incorrectly calculated his cost-share obligations for his post-retirement

medical benefits.

Liberty Mutual calculates post-retirement medical benefits based, in part, on a retiree's

years of service with the company.  Turner contends that his time of employment at Safeco

Insurance Company, prior to its acquisition by Liberty Mutual, was wrongfully excluded from that "years of service" component.  Turner brings this action on behalf of himself and all current and former Liberty Mutual employees who were previously employees of Safeco Insurance and who participated in Liberty Mutual's benefit plan.  The complaint alleges various violations of ERISA and related federal regulations.

Whether plaintiff is entitled to the cost-share benefits he seeks depends on the terms of the Liberty Mutual Retiree Medical Plan ("the Plan").  Incorporated into the terms of the Plan are Summary Plan Descriptions ("SPDs"), which are generally published on an annual basis. However, in the months before plaintiff's 2019 retirement, Liberty Mutual published two SPDs—one in January 2019, and then a February 2019 revision—that contain provisions concerning former Safeco employees.  Plaintiff and defendants relied on the January and February 2019 SPDs, respectively, while litigating Liberty Mutual's first motion for summary judgment.  Unable to discern from the record which SPD was operative at the time plaintiff retired, the Court denied the motion without prejudice.

Liberty Mutual has renewed its motion for summary judgment as to Count 1, which seeks a determination of Plan terms under 29 U.S.C. § 1132(a)(1)(B).  It maintains that the February SPD controls, but it also contends that the January and February 2019 SPDs describe identical benefits for former Safeco employees.  According to Liberty Mutual, the February 2019 SPD provided a clarification of benefits that were unartfully described in the January 2019 SPD; it did not amend the Plan or terminate plaintiff's benefits.  It contends that both SPDs describe the same benefits, albeit in different language, and that Turner is not entitled to relief according to either document.

By contrast, Turner contends that the plain terms of every SPD published by Liberty

Mutual, including the February 2019 SPD, granted him a vested post-retirement medical benefit that could not be amended or revoked.  He does not, however, identify a specific moment when the benefit vested, nor does he specify which document governs his vested benefit.  He also contends, in the alternative, that the Plan's terms are ambiguous and therefore present a triable issue of fact.

For the reasons set forth below, the Court concludes that Turner's post-retirement medical benefit was not a vested benefit and that the unambiguous terms of the January 2019 SPD—which, for present purposes, the Court will assume to be the operative SPD—do not provide the level of benefit (cost-sharing credit for his years with Safeco) that he seeks.  The motion for summary judgment will therefore be granted as to Count 1.

I.    **Background**

    A.    **Factual Background**

        1.    **The Parties**

Thomas Turner is a former employee of Safeco Insurance Company and Liberty Mutual Insurance Company.  He is a participant in Liberty Mutual's retirement and medical benefit plans.  (Compl. ¶ 7).

Liberty Mutual Insurance Company is a Massachusetts insurance company that sponsors various benefit plans for its employees.  (*See id*. ¶¶ 8-12).  The employee benefit plans offered by Liberty Mutual are subject to the provisions of ERISA, 29 U.S.C. § 1001 *et seq*.  (*See id.*).

        2.    **Liberty Mutual Retiree Medical Plan Generally**

The Liberty Mutual Retiree Medical Plan ("the Plan"), as restated in January 2013, provides former Liberty Mutual employees with medical benefits after they retire from the company.  (ECF No. 79, Ex. 1 ("Retiree Medical Plan") at 1).  The Plan consists of the terms of the plan itself, as well as a Summary Plan Description, which is periodically amended, and

3

relevant HMO documents.  (*Id.* at 2-3).

Liberty Mutual must follow certain processes to amend the Plan.  The Plan states that Liberty Mutual, through its board of directors or a committee of that board, has the right to "amend or modify the Plan" at "any time," as long as any amendment or modification does not "prejudice any claim or benefit under the Plan which was incurred but not paid prior to the amendment or modification . . . ."  (*Id.* at 10).  In December 2016, the Plan was amended to grant the Chief Executive Officer of Liberty Mutual authority to amend or terminate the Plan without board approval.  (ECF No. 79, Ex. 7 ("Amendment to Post-Retirement Medical Plan") at 4-5).  However, any amendments to benefits are required to adhere to the terms of the charter of the Liberty Mutual Compensation Committee, as well as applicable law, and cannot "prejudice any claim or benefit under the Plan which was incurred but not paid prior to the date of an amendment."  (*Id.*).

The Compensation Committee charter grants the Committee authority over employee benefit programs.  (ECF No. 79, Ex. 8 ("Charter of Compensation Committee") at 4).  That charter also sets forth a protocol mandating that the Chief Talent and Enterprise Services Officer ("CTESO") of Liberty Mutual, or his or her designee, "report a summary of the Liberty Mutual Group's significant benefits and compensation changes" to the Compensation Committee at least annually.  (*Id.* at 6).  In the periods between those reports to the committee, the CTESO may "make any benefits and compensation changes consistent with the compensation philosophy outlined by the Compensation Committee and for which authority has not been explicitly retained by the Compensation Committee."  (*Id.*).  Compensation Committee approval is required, however, for the "[a]doption or termination of any material benefits or compensation plans" or "[m]aterial changes to overall benefits and compensation philosophy or to a material

benefits or compensation plan." (*Id.* at 7). The Compensation Committee may delegate its approval authority to the CEO and CTESO for specific benefit plans—although the record is not clear whether the Retiree Medical Plan is subject to that delegated authority. (*Id.* at 7).[1] For those plans, Liberty Mutual's "Benefits and Compensation Management Team" makes a recommendation concerning plan amendments to the CEO or CTESO, who then approves or rejects the proposed changes. (*Id.*). Taken together, the Plan documents and the Compensation Committee Charter require that amendments to benefits be approved by Liberty Mutual's board of directors, the Compensation Committee, the CEO, or another designated official.

According to Liberty Mutual, not all changes to Plan documents constitute an amendment. It asserts that formal plan amendments are limited to "material changes that have either been authorized by the CEO or the [Chief Human Resources Officer]." (DiMarino Dep. at 136). Such "material changes" may be the "[c]hanging [of] plan provisions, deductibles, out-of-pocket maximums, formulary changes, . . . [or] adding a new plan option . . . ." (*Id.*). In contrast, "clarifications" to Plan documents are "sentence changes that provide[] clarity to employees so they better understand the provisions of the Plan and how [the provisions] appl[y] to them." (*Id.*). As a Liberty Mutual representative explained, "[I]f the benefits that were offered prior to the clarifying language [are] exactly the same as the benefit offered after the clarification, then, therefore, it isn't a change. It's a clarification." (*Id.* at 112). As a result, clarifications, according to Liberty Mutual, do not require CEO approval. (*Id.* at 110).

The Plan states that if instances arise where the terms of the Plan contradict other

---

[1] The charter appends a Compensation and Benefits Plan Inventory that details whether amendment approval has been delegated to the CEO or retained by the Committee. (*Id.* at 9-12). However, it is not apparent from the list provided that the Retiree Medical Plan is one where such authority has been delegated by the Committee. In any event, the 2016 Amendment to the Post-Retirement Medical Plan provides the CEO with amendment authority.

incorporated documents, then the Plan terms control. (Retiree Medical Plan at 3). However, if a conflict arises between Plan documents "with respect to benefit amount and/or entitlement information," then the "provisions of the HMO document shall control." (*Id.*). The Plan also grants to the "Plan Administrator, and its designees" the "complete and final discretionary authority to construe and interpret the Plan . . . including interpretation of all Plan documents . . . ." (*Id.* at 11).

### 3.   Transition of Safeco Employees and Benefits to Liberty Mutual

Turner began working at Safeco Insurance in 1980. At some point, Safeco offered its employees post-retirement health benefits; however, it froze those benefits effective December 31, 2004. (ECF No. 79, Ex. 15 at 5).[2] According to Liberty Mutual, Safeco, at that time, provided cost-sharing credit to employees who met specific age requirements and who had served a requisite number of years. (*Id.*). However, additional benefits under that plan stopped accruing after December 31, 2004. (*Id.*).

In 2008, Liberty Mutual acquired Safeco. (Turner Decl. ¶ 2). As a result of that acquisition, Liberty Mutual sought to amend its benefit plans to include Safeco employees who were transferring to Liberty Mutual. (ECF No. 84, Ex. Q ("2008 Proposed Benefit Action") at 1). The minutes of the relevant meeting of the Compensation Committee state, "As a result of the acquisition of [Safeco], [Liberty Mutual] wishes to amend the Liberty Mutual benefit plans to recognize past service for certain purposes for those Safeco employees and retirees transferring to Liberty Mutual . . . ." (*Id.*). The committee recommended as follows:

Past service credit will be granted for purposes of eligibility and cost sharing in the

---

[2] The following information is drawn from a letter sent to Turner by Jeffrey Stohlberg, an Assistant Vice President at Liberty Mutual, that explained Turner's post-retirement medical benefits. In that letter, Stohlberg describes how the frozen Safeco benefit was grandfathered into the Liberty Mutual benefit plan. Although neither party offers direct evidence demonstrating the existence of the frozen Safeco benefit, the parties do not appear to dispute the issue.

> Liberty Mutual post-retirement medical plan for Transferred Employees . . . who
> were hired prior to January 1, 2004, were at least 36 years of age as of December
> 31, 2004, and retired or will retire having attained age 55 or older with at least 10
> years of service; and age and service points that total at least 75.

(*Id.* at 2).

However, the parties do not point to any evidence that the proposal was ever adopted by the Compensation Committee.  The minutes of the meeting provided in the record state only that the Committee voted that Safeco would be permitted to adopt Liberty Mutual's suite of benefit programs, effective January 1, 2009.  (*Id.* at 79).

Also, as part of the transition, Liberty Mutual published a pamphlet titled, "Welcome to Liberty Mutual:  An Overview of Liberty Mutual Benefits for Eligible Transitioning Safeco Employees."  (ECF No. 79, Ex. 14 ("Benefits Transition Pamphlet")).  That pamphlet informed transitioning employees that they would participate in Liberty Mutual benefit programs "[e]ffective January 1, 2009."  (*Id.* at 1).  With respect to post-retirement health and welfare benefits, the pamphlet informed Safeco employees:

> Liberty Mutual provides access to medical, dental, and life insurance coverage to
> eligible employees when they retire.  Eligibility and Liberty's cost sharing is
> based on service with Liberty.  Your Safeco Service will be counted for purposes
> of benefit eligibility; as noted earlier, however, it will not be recognized for
> purposes of cost-sharing.

(*Id.* at 18).

Notwithstanding the language of the transition pamphlet, it does appear that, immediately following the merger, the terms of Liberty Mutual's medical plan entitled specific Safeco employees to receive credit for eligibility and cost-sharing purposes based on the frozen Safeco benefit.  The Liberty Mutual Medical Plan Summary Plan Description from 2009 (the "2009 SPD") stated as follows:

> Generally only service with your employer during the period your employer is a
> Participating Employer counts for determining eligibility and cost-sharing for

post-retirement Medical Plan coverage.  In some cases, however, service with your employer prior to its becoming a Participating Employer or service with a previous employer may count towards eligibility and cost sharing:

. . .

Former grandfathered employees of Safeco Corporation and Subsidiaries transitioning to Participating Employers on January 1, 2009 will receive credit for eligibility and cost sharing based on the following:

| Grandfathered Age and Service Points as of 12/31/2004 | Younger than Age 65 | Age 65 or Older |
|---|---|---|
| 87 or more | Cost sharing based on 35+ years of service category. | Cost sharing based on 10-19 years of service category. |
| 82 through 86 | Cost sharing based on 30-34 years of service category. | Cost sharing based on 10-19 years of service category. |
| 78 through 81 | Cost sharing based on 20-24 years of service category. | Cost sharing based on 10-19 years of service category. |
| 75 through 77 | Cost sharing based on 10-14 years of service category. | Cost sharing based on 10-19 years of service category. |

(ECF No. 84, Ex. B ("2009 SPD") at B-61-B-63).

Thus, a Safeco employee who had been entitled to the Safeco retirement benefit before the acquisition by Liberty Mutual would receive cost-sharing credit for his Safeco service until the time that the Safeco benefit had been frozen.  In that sense, the Safeco benefit was "grandfathered" into the Liberty Mutual benefit plan.

### 4. Turner's Employment and Inquiries about Benefits

#### a. Events Prior to 2017

As noted, Turner was hired by Safeco in 1980.  He continued to work for Safeco following its acquisition by Liberty Mutual in 2008.  (Turner Decl. ¶¶ 2-3).  According to Turner, he was not "rehired" in any meaningful way at the time of the transition—that is, he did not reinterview for his job, nor did his compensation change.  (*Id.* ¶ 2).  He alleges that he and his fellow Safeco employees were told that they would continue to work for Safeco, albeit under

the umbrella of the Liberty Mutual Group.  (*Id.* ¶ 3).  He alleges that despite the merger, his job continued as it had before.  (*See id.*).

Turner also alleges that Liberty Mutual always considered the date he began work with Safeco in 1980 as his Liberty Mutual "hire date."  (*Id.* ¶ 2).  He points to a pay-slip and compensation statement that both list his hire date as April 28, 1980.  (ECF No. 84, Ex. N).  He also points to a pension statement indicating that as of August 7, 2018, he had earned 38.6 years of vested service (which suggests a hire date in early 1980).  (*Id.*).

Turner alleges broadly that after the acquisition of Safeco by Liberty Mutual, he was advised repeatedly that he would receive cost-sharing credit for his post-retirement health benefits based on both his pre-merger years of service with Safeco and his time at Liberty Mutual.  (Turner Decl. ¶ 4).  He does not remember receiving the "Welcome to Liberty Mutual: An Overview of Liberty Mutual Benefits for Eligible Transitioning Safeco Employees" pamphlet distributed to Safeco employees, which informed Safeco employees that their prior service would not be credited for cost-sharing purposes.  (ECF No. 79, Ex. 11 at 8).  Instead, he appears to have been under the impression that his Safeco years would be counted because, according to him, his co-workers who had worked at companies acquired by Liberty Mutual had "received full consideration of their service with the acquired companies as it related to their post-retirement benefit amounts and eligibility."  (Turner Decl. ¶ 33).

He also alleges that in 2017, the "Health Benefits Administrator" of Liberty Mutual told him that former Safeco employees would receive cost-sharing credit based on their service to both companies.  (*Id.* ¶ 4).  However, he does not provide any specific details concerning those

discussions.[3]

**b.      2017-2018 Correspondence with Liberty Mutual**

At some point around 2017, in anticipation of his retirement, Turner began to inquire about his post-retirement benefits.  (*Id.* ¶ 13).  In response to those inquiries, he allegedly received "multiple and errant answers" from the benefits administrator.  (*Id.*).  Eventually, he alleges, he was told that he could not speak directly with anyone at "Liberty Benefits," but that he should write a letter instead.  (*Id.*).

Turner wrote such a letter on December 18, 2017.  (ECF No. 84, Ex. L).  In that letter, he asserted that a Liberty Mutual benefits representative had told him that upon retirement he would receive "[twelve] years of cost-sharing consideration."  (*Id.* at 2).  However, he disagreed with that assessment and contended that, based on his own interpretation of Plan documents, he was entitled to cost-sharing consideration for 37 years of service—that is, the combined years that he worked for both Safeco and Liberty Mutual.  (*Id.* at 3-4).

Jeffrey Stohlberg of Liberty Mutual responded to Turner's letter on February 19, 2018. (ECF No. 79, Ex. 15 at 5).  Stohlberg explained to Turner that under the terms of the 2017 Liberty Mutual Health Plan Summary Plan Description (the "2017 SPD"), Turner was, at that time, entitled to a retirement benefit based on his grandfathered Safeco benefit, but he was not yet eligible for cost-sharing based on the Liberty Mutual retirement benefit.  (*Id.* at 6).

According to Stohlberg, Safeco had frozen its post-retirement health benefits for its employees on December 31, 2004, four years before its acquisition by Liberty Mutual.  (*Id.* at 5). At that time, the "Safeco Medical and Life Insurance Benefits Summary Plan Description"

---

[3] Willis Towers Watson appears to have been contracted by Liberty Mutual to administer the "day-to-day" operation of Liberty Mutual's benefit programs.  (*See generally* ECF No. 84, Ex. M ("2019 Emails"); DiMarino Dep. at 142).

provided:

> If you were age 50 or older as of December 31, 2004, and your age plus years of service equaled at least 75 as of December 31, 2004, Safeco currently shares the cost of coverage with you after you retire.  If you retire after 12/31/2004, your accumulated age plus service points are based on the value as of 12/31/2004 rather than on your date of retirement.

(*Id.*).

"Based on your age and years of service at the time Safeco froze the post-retirement health benefit," Stohlberg wrote, "you had earned 75 points toward their cost sharing subsidy and were grandfathered into eligibility for post-retirement health coverage through Safeco."  (*Id.*). That "grandfathered" Safeco benefit, according to the letter, entitled Turner to twelve years of cost-sharing credit from Liberty Mutual based on the following provision of the 2017 Liberty Mutual Health Plan Summary Plan Description:

> Former grandfathered employees of Safeco Corporation and subsidiaries who transitioned to Participating Employers on January 1, 2009 who retire after December 31, 2013 will receive credit for purposes of eligibility and cost-sharing based on the following:

| Grandfathered Age and Service Points as of 12/31/2004 | Younger than Age 65 |
|---|---|
| **87 or more** | Company contribution category: 85<br>Credited service for multiplier[1]: 35 |
| **82 through 86** | Company contribution category: 85<br>Credited service for multiplier[1]: 32 |
| **78 through 81** | Company contribution category: 80 to 84<br>Credited service for multiplier[1]: 22 |
| **75 through 77** | Company contribution category: 70 to 74<br>Credited service for multiplier[1]: 12 |

[1] In the event that eligible credited service from January 1, 2009, forward is greater, the credited service can increase up to a maximum of 35 years of credited service.

(*Id.* at 6) (footnote in original).

Stohlberg also explained that Liberty Mutual separately provided a retiree cost-sharing

benefit based on an employee's years of service at Liberty Mutual.  (*Id.* at 6-7).  However, Turner had not yet "met the eligibility requirements for post-retiree health coverage through Liberty Mutual; at least age 55 with 10 years of employment."  (*Id.*).  Stohlberg stated that Turner's most recent hire date, for the purposes of calculating his post-retirement health benefits, was January 1, 2009—that is, the date that former Safeco employees began work for Liberty Mutual following the acquisition.  He also stated:

> You will not have 10 years of employment with Liberty Mutual until January 1, 2019.  Since you were not accruing service time toward a post-retirement health benefit after December 31, 2004, your post-retirement health benefit calculation cannot include service time from your date of hire of April 28, 1980.

(*Id.* at 6).  Thus, according to Stohlberg's interpretation of the 2017 SPD, Turner was eligible for twelve years of cost-sharing credit based on his grandfathered Safeco Benefit, but he was not yet eligible for Liberty Mutual's retirement benefit.  (*Id.* at 7).

Following his receipt of Stohlberg's letter, Turner continued to seek additional clarification as to what his benefits would be upon retirement.  In March 2018, he sent Stohlberg and Linda Higgins an email inquiring about what his retirement benefits would be if he chose to retire after January 1, 2019.  (ECF No. 79, Ex. 11 ("2018 Emails") at 11).[4]  Stohlberg responded that he and Higgins would obtain estimates and respond with an update.  (*Id.* at 10).

Stohlberg responded by email on May 21, 2018.  (*Id.* at 8).  He reiterated that Turner's "most recent hire date" for the purpose of calculating his retirement benefits was January 1, 2009—the date when Turner "became a Liberty Mutual employee and on the Liberty Mutual payroll."  (*Id.* at 9).  As a result, Turner did not meet the "eligibility requirements for post-retiree health coverage" because, again, he was not "at least age 55 with 10 years of employment [with

---

[4] Linda Higgins worked in Liberty Mutual's benefits administration team.  (DiMarino Dep. at 76).

Liberty Mutual]." (*Id.*).

Stohlberg also informed Turner that should he choose to retire after January 1, 2019, he would "retain [his] Safeco grandfathered health benefit" and be entitled to an additional Liberty Mutual dental benefit based on his then "10 years of service with Liberty Mutual." (*Id.*). The email then discussed coverage options available to Turner through the Medicare marketplace, as well as financial assistance he would be eligible for based on a Health Reimbursement Arrangement available through Liberty Mutual. (*Id.*).

On September 27, 2018, Turner again emailed several representatives at Liberty Mutual, contesting Stohlberg's interpretation of his benefits. (*Id.* 7). He expressed concern that Stohlberg's letter had not specifically addressed his own interpretation of the 2017 SPD. (*Id.*). He also maintained that he should be entitled to cost-sharing credit based on the entirety of his service with Safeco and Liberty Mutual, because "most recent hire date" was a term left undefined in the SPD, and because other documents he had received from Liberty Mutual, such as his pay-slips and pension documents, listed a hire date of 1980. (*Id.*).

On September 28, 2018, Thomas Oksanen, Liberty Mutual's Vice President for Corporate Human Resources and Administration, acknowledged receipt of Turner's September 2018 email. He told Turner that he would review the situation. (*Id.* at 6). Subsequent emails between Oksanen and his team reiterated their belief that Turner was not eligible for the cost-sharing credit based on his Safeco hire date. (*Id.*). However, in response to Turner's assertions, Liberty Mutual personnel decided to "take the opportunity to make the 2019 SPD clearer." (*Id.* at 3). Proposed clarifications to the SPD included clarifying language concerning an employee's "hire date," further defining what years of service would make an employee eligible for cost-sharing benefits, and restructuring sections within the SPD to minimize confusion concerning

13

benefits.  (*Id.*).[5]

### c.        Alleged 2018 Representations Made by Liberty Mutual

Turner alleges that he was told by Liberty Mutual at some point in 2018 that he would

need ten years of post-acquisition service "under the Liberty Mutual umbrella" before he would

earn "an additional cost-sharing benefit on top of a 'grandfathered' credit for eligibility and cost-

sharing."  (Turner Decl. ¶ 4).  In other words, Turner alleges that Liberty Mutual stated he would

receive two retirement benefits simultaneously.  It is not clear whether that allegation is based on

his email correspondence with Liberty Mutual representatives, as set forth above, or other

conversations concerning his benefits.[6]  Nevertheless, he alleges that based on those

representations, he "targeted to work [ten] years following the acquisition," despite having

wanted to retire in 2018.  (*Id.* ¶¶ 4, 26).

Turner also alleges that he reviewed "every SPD from 2009 through 2018" and that each

of those SPDs stated that he would receive cost-sharing credit based upon his service with both

Safeco and Liberty Mutual.  (*Id.* ¶ 5).  According to Turner, he "was never told . . . that [his]

grandfathered credit would only be available until [he reached] ten years or that [he] would ever

have to make [a] choice between using [the grandfathered Safeco or Liberty Mutual

benefit] . . . ."  (*Id.*).

---

[5] It is not clear from the record when, exactly, Oksanen responded to Turner.  However, according to his email to Higgins on October 10, 2018, Oksanen stated that he planned to do so.  (*Id.*).  He wrote that he did not intend to address each of Turner's arguments specifically, but he planned to "include a copy of [Stohlberg's] letter and verify that it [i]s accurate and that I agree with its points and support its conclusion."  (*Id.*).

[6] Turner alleges that he had multiple telephone and email communications with benefit representatives throughout 2018 and early 2019.  Those discussions, he alleges, concerned payments of health-plan premiums.  (Turner Decl. ¶ 31).  He also alleges generally, and his counsel contends in several filings, that Liberty Mutual refused to produce transcripts of those and other communications, particularly transcripts of telephone calls, in discovery.  It does not appear that Turner filed a motion to compel the production of those documents; in any event, whether those transcripts are relevant or should have been disclosed is not the issue here.

14

d.      **2019 Retirement Announcement and Subsequent Correspondence**

On January 4, 2019, Turner announced his plan to retire from Liberty Mutual. (Turner Decl. ¶ 26). Around that time, he requested a letter outlining his retirement benefits. (*See* 2019 Emails at 19).

His request sparked internal discussions at Liberty Mutual concerning the retirement benefits to which former Safeco employees should be entitled—specifically whether, after accruing ten years of service with Liberty Mutual, those employees were entitled to choose between their grandfathered Safeco benefit and their newly-earned Liberty Mutual retirement benefit, or whether they were entitled to the Liberty Mutual benefit only. (*See generally* 2019 Emails).

On January 9, 2019, Higgins emailed a colleague, Nicole Yong, asking for assistance in determining Turner's benefits. (*Id.* at 5). Higgins's confusion stemmed from an ambiguity in Plan documents as to whether cost-sharing credit for former Safeco employees—who were entitled to the grandfathered Safeco benefit, but had also earned a Liberty Mutual post-retirement medical benefit based on their ten years of post-merger employment—was calculated based on points accrued under the Safeco benefit or the separately-earned Liberty Mutual benefit. (*Id.*). She wrote:

> "[I]s the intent to keep them in the medical service points bucket based on the Safeco [grandfathered] benefit or [recalculate] the points bucket for medical as a straight [Liberty Mutual] benefit (now that these [employees] have [ten years of service] with [Liberty Mutual]) and give the [employee] the option to choose between the two like we do for life [insurance]?"

(*Id.*). "My friend Thomas Turner is back," she added, explaining that, based on her calculations, his grandfathered Safeco benefit would be more cost-effective for his spouse, who was under 65 years old, whereas the Liberty Mutual benefit was better for Turner himself. (*Id.*). She asked,

15

"Does he get to choose between the two like [life insurance]?"  (*Id.*).  "He's constantly asking where all of this is in writing and the SPD is not that explicit.  I'm sure he will sue once he retires."  (*Id.*).

Yong replied that no plan documents directly addressed the issue and whether grandfathered Safeco employees could choose between the grandfathered Safeco benefit and the Liberty Mutual benefit was "a gray area as at the time the provisions were put in place, we didn't have anyone from . . . Safeco [who] had 10 years of [Liberty Mutual] service."  (*Id.* at 11).  "Employee 'choice' in a grandfathered vs. [Liberty Mutual] benefit only applies to the [employee] Life Insurance plan," she wrote.  (*Id.*).  According to her reading of the SPD, Turner could not choose between the two benefits.  (*Id.*).   She also disputed Higgins's calculation of Turner's cost-sharing points under the Liberty Mutual benefit considering his ten years of service.  (*Id.*).

Also on January 9, Higgins scheduled a meeting with Amy O'Neill, Liberty Mutual's Director of Health Insurance and Well-Being, to discuss the issue.  (*Id.* at 3; DiMarino Dep. at 120).  Higgins explained that Turner had questioned Liberty Mutual's benefit administrator about his retirement benefits and that he felt that "his post-retirement benefits should be based on his hire date with Safeco which goes back to the early 1980's."  (2019 Emails at 3).  Higgins wrote that she wanted to understand the "intent for his post-retirement medical benefit[,] which [she couldn't] find documented anywhere," and that she was unsure whether Turner was entitled to retain the grandfathered Safeco benefit or if he could choose between the Safeco benefit and the Liberty Mutual benefit.  (*Id.*).

On January 24, Higgins emailed Marc Kelleher and Josh Brcka, employees of Willis Towers Watson.  (*Id.* at 2).  The email informed them that after meeting with O'Neill and

counsel for Liberty Mutual, a decision was made that "the Liberty Mutual retiree medical benefit trumps the [grandfathered] Safeco benefit . . . ." (*Id.*).  That is, once an employee reached ten years of post-merger service with Liberty Mutual, the Safeco benefit was extinguished.  According to Higgins, "The [grandfathered] Safeco benefit was in place to preserve a retiree benefit for those who retired prior to being eligible for the Liberty benefit." (*Id.*).  She then stated that Turner's benefits would have to be recalculated according to the parameters of the Liberty Mutual benefit.  (*Id.*).  She cautioned, "I wouldn't discuss with him the Safeco [grandfathered] medical benefit vs. the [Liberty Mutual] retiree medical unless he asks.  (I would have an experienced rep talk to him.)." (*Id.*).

Higgins also raised the issue of updating the SPD to reflect that determination.  "Related to this change," she wrote, "we will be updating our SPDs to address this for 2/1/19 retirements but it may take a week or two for the update to be published." (*Id.*).  She advised, "Turner may ask about the SPD." (*Id.*).  However, the changes to the post-retirement medical benefit did not affect retiree life insurance.  She wrote, "Those with a [grandfathered] Safeco retiree life benefit can choose between the Safeco [grandfathered] life benefit or the [Liberty Mutual] benefit." (*Id.*).

Kelleher responded the following day and informed Higgins and Brcka that a representative had called Turner to inform him of the decision concerning his benefits.  (*Id.* at 13).  According to the email, Turner was dissatisfied with the answer concerning his medical benefit and wanted a more detailed explanation about how his cost-sharing credit was calculated.  (*Id.*).  He apparently reiterated his belief that Liberty Mutual had previously told him that his cost-sharing credit would be based on his total years of service with both Safeco and Liberty Mutual.  (*Id.*).  Kelleher also stated that he threatened to go to the media with his grievances.

(*Id.*).  Kelleher asked Higgins if the benefits administrator should draft a letter to Turner explaining the calculation of his Liberty Mutual medical benefit.  (*Id.*).

On January 26, Higgins told Kelleher to "hold off" on writing the letter and asked that he send her and Stohlberg the audio recording of the call.  (*Id.* at 18).  She also emailed O'Neill, Stohlberg, and Nancy Keating, informing them of the call with Turner.  (*Id.* at 16).[7]  "I can draft a letter and provide the calculation for his costs," she wrote, "but it's the [years of service] piece, that's been addressed with him several times, that he continues to challenge."  (*Id.*).  She stated that Turner had never been told that his years of service with both Safeco and Liberty Mutual would be considered for his cost-sharing calculation.  (*Id.*).

In response, Keating wrote, "I think that SPD is clear that former Safeco employees get credit only for eligibility."  (*Id.* at 15).  Nonetheless, she asked if there would be a significant change in Turner's post-retirement medical benefit if Liberty Mutual credited his years of service with both companies.  (*Id.*).  Higgins replied that the difference would indeed be substantial.  (*Id.* at 14).

As a written response to Turner was being drafted, Liberty Mutual also developed revisions to the SPD.  Between January 28 and January 30, Higgins and Stohlberg exchanged emails reviewing proposed language.  (*Id.* at 17).  According to the emails, the SPD revision was scheduled to be published on February 1.  (*Id.*).

On February 4, Higgins emailed Stohlberg and Keating concerning Liberty Mutual's draft of its written response to Turner.  (*Id.* at 19).  She said her intent was to provide Turner with a "comprehensive picture of his post-retirement coverage and costs."  (*Id.*).  When writing the letter, she reviewed prior communications with Turner—including Stohlberg's February

---

[7] The record does not indicate Keating's role at Liberty Mutual.

18

2018 letter, which represented to Turner that he would retain his grandfathered Safeco benefit

should he retire after January 1, 2019.  (*Id.*).  She explained that when the letter was written, she

(and apparently Stohlberg) had been under the impression that Turner could choose between his

Safeco and Liberty Mutual benefits.  (*Id.*).  That belief contradicted, of course, the determination

that former Safeco employees were entitled to only the Liberty Mutual benefit once they accrued

ten years of service for Liberty Mutual.  (*Id.*).  She then recommended the following:

> Since the above statement was provided in writing to Mr. Turner, I think we need
> to make an exception for his case and let him choose between the two medical
> benefits.  The attached draft gives him the option to choose the [Liberty Mutual]
> retiree medical benefit or the [grandfathered] Safeco retiree medical benefit
> (which works better for him financially since his spouse is only in her late 50's).

(*Id.*).  She concluded the email, "I so hope he retires soon!!"  (*Id.*).

On February 7, after listening to the recording of the January 25 call with Turner and a

benefits representative, Higgins further updated the letter to clarify a life-insurance benefit that

had been incorrectly described to Turner:  "Based on the incorrect [information] provided to him

by [the representative] regarding spouse life [insurance], I've updated the letter to address what

happens to spouse life at retirement."  (*Id.* at 20).  The letter that followed does not appear to be

part of the record.

### e.     Retirement and Appeals

Turner retired from Liberty Mutual on May 1, 2019.  (ECF No. 79, Ex. 15 at 1).  On May

14, he wrote a letter to Liberty Mutual appealing the determination of his post-retirement

medical benefits.  (*Id.*).  He reiterated the arguments he had raised previously and recounted his

past communications with Liberty Mutual concerning his benefits.  (*Id.*).  He again requested

cost-sharing credit for the entirety of his years of service to both Safeco and Liberty Mutual.

(*Id.*).

On June 10, Oksanen denied the appeal.  His letter denying Turner's appeal stated the

following:

> Although you were hired by Safeco on April 28, 1980, your service time with Safeco from your original hire date, April 28, 1980 up to January 1, 2009, the transition date on which you became a Liberty Mutual employee, **does not count toward cost sharing** under the Liberty Mutual post-retirement medical benefit.

> Those years (April 28, 1980 through December 31, 2008) during which you were a Safeco employee do not provide any credit for cost sharing toward the cost of coverage under the Liberty Mutual Post-Retirement Plan (the "Plan") for the years you were not a Liberty Mutual employee.  Since your most recent hire date with Liberty Mutual is January 1, 2009, you, along with all other Safeco employees who became Liberty Mutual employees on January 1, 2009 and who remained active employees, did not reach the 10 years of service requirement to be eligible for Liberty Mutual post-retirement health and welfare benefits until February 1, 2019.  As of that date, any Safeco employee who had transitioned to Liberty Mutual on January 1, 2009 and was still active became eligible for post-retirement benefits and cost sharing based on Plan provisions—

> > - **Eligibility for post-retirement health and welfare benefits and cost sharing under the Liberty Mutual Retiree Health, Dental, and Life Insurance plans requires that you are (1) covered under the plan immediately prior to your retirement, (2) have at least 10 years of continuous employment from your most recent hire date with Liberty Mutual and (3) are at least age 55.**  Plan provisions also require that you must elect the benefit at the time of your retirement, if eligible, otherwise you forfeit the benefit and cannot elect coverage in the future.

> Separate from the above, you had earned a [p]ost-retirement medical benefit under the provisions of the Safeco Retirement Plan during your employment time with Safeco.  This grandfathered benefit was preserved when you became a Liberty Mutual employee on January 1, 2009.  Had you retired prior to February 1, 2019, you would have received a cost sharing subsidy toward the cost of medical coverage earned under the Safeco Retirement Plan, as previously explained to you in prior correspondences.  (Please note that Safeco did not offer dental coverage to retirees.)

> . . .

> At the time of your retirement on May 1, 2019, you were eligible for the post-retirement coverage under the Plan, having satisfied the 10 years of service as of February 1, 2019, and the grandfathered benefit you had earned under the Safeco Plan.  You were provided with the option to choose one or the other.

> After further review of your request regarding your eligibility and entitlement for post-retirement health and welfare benefits, our research again confirms that you

were provided with the correct coverage options and subsidy amounts based on
Plan provisions at the time of your retirement.

(*Id*. at 9-10 (emphasis in original)).  Turner then filed a second appeal, which was also denied.

(*Id*. at 11-19).

### 5.   Summary Plan Description at Time of Turner's Retirement

The benefits to which Turner contends he is entitled are described in the Liberty Mutual

Health Plan Summary Plan Description.  As relevant here, the SPD details a cost-sharing scheme

for the payment of post-retirement employee medical benefits.

The SPD that went into effect on January 1, 2019, provided as follows:

Employees who are age 65 or older and retire on or after [January 1, 2018] will
not be eligible for coverage under the Plan.  However, provided they meet all
eligibility requirements listed below, they will be eligible to elect coverage
through the Medicare marketplace through Willis Towers Watson.  Please see the
summary plan description for the Liberty Mutual Post-65 Retiree Health
Reimbursement Arrangement for more information.

Employees hired prior to January 1, 2018, and who are under the age of 65 at
retirement are eligible to elect to continue coverage under the retiree health plan
provided that they were covered on the Plan immediately prior to their retirement,
have at least 10 years of continuous eligible credited service, and are at least age
55 at the time of retirement.

(ECF No. 79, Ex. 3 at B-55).  For those eligible employees, it set forth the following as to cost-

sharing:

If you were actively employed on December 31, 2013, your cost-share tier was
calculated using the sum of your age as of December 31, 2013 plus your eligible
credited service as [of] December 31, 2013, which was the higher of (i) years of
continuous service from your most recent hire date or (ii) your years of credited
service under the Liberty Mutual Retirement Benefit Plan. . . . In order to
calculate the annual Company contribution, you will need to multiply your cost-
share tier's Company contribution amount by your eligible credited service as of
your termination date (up to a maximum of 35 years).

(*Id*. at B-57).

However, those provisions did not apply to all Liberty Mutual employees, as the SPD

instructs employees of acquired companies to refer to a section entitled "Additional Provisions

for Employees of Acquired Companies." (*Id.*).  That section provided as follows:

> Generally only continuous service with your employer during the period your employer is a Participating Employer counts for determining eligibility and/or cost-sharing for post-retirement Plan coverage.  In some cases, however, service with your employer prior to it becoming a Participating Employer or service with a previous employer may count toward eligibility and/or cost-sharing, as listed below . . . .
>
> . . .
>
> Safeco employees employed with Safeco as of January 1, 2009 receive credit for prior employment service with Safeco for eligibility purposes only.
>
> Former grandfathered employees of Safeco Corporation (i.e., employees who were hired prior to January 1, 2004, were at least age 36 as of December 31, 2004 and whose age plus years of service at Safeco added up to at least 75 on December 31, 2004) and subsidiaries who transitioned to Participating Employers on January 1, 2009 who retire after December 31, 2013, will receive credit for purposes of eligibility and cost-sharing based on the following:

| Grandfathered Age and Service Points as of 12/31/2004 | Younger than Age 65 |
| --- | --- |
| **87 or more** | Company contribution category: 85<br>Credited service for multiplier[1]: 35 |
| **82 through 86** | Company contribution category: 85<br>Credited service for multiplier[1]: 32 |
| **78 through 81** | Company contribution category: 80 to 84<br>Credited service for multiplier[1]: 22 |
| **75 through 77** | Company contribution category: 70 to 74<br>Credited service for multiplier[1]: 12 |

> [1] In the event that eligible credited service from January 1, 2009 forward is greater, the credited service can increase up to a maximum of 35 years of credited service.

(*Id.* at B-58, B-60) (footnote in original).

However, as discussed, Liberty Mutual published a revised SPD in February 2019.  That

revision, as it concerned former Safeco employees, read as follows:

> Effective February 1, 2019, former Safeco employees who (1) transitioned to Liberty Mutual on January 1, 2009; (2) have at least 10 years of continuous

> service with Liberty Mutual; (3) have attained age 55; and (4) are enrolled in the
> Plan immediately prior to retirement will be eligible for retiree health benefits
> under the Liberty Mutual Retiree Health Plan.  Note:  Eligibility for cost sharing
> is based on your most recent hire date of January 1, 2009 and does not include
> any employment service with Safeco prior to January 1, 2009.

(ECF No. 79, Ex. 2 at B-60).  The revised SPD removed any mention of "grandfathered" Safeco

employees.

Both the January 2019 and February 2019 SPDs also contain a provision granting the

Plan Administrator the following authority:  "The Plan Administrator, or its designee, has the

authority, in its sole discretion, to construe the terms of this Plan and decide all questions of

eligibility to participate in the Plan and decide any other matters relating to the administration or

operation of the Plan."  (*Id*. at B-63; January 2019 SPD at B-64).

According to Liberty Mutual, the February revisions did not amend the plan, and

therefore no formal approval was necessary.  (*See* DiMarino Dep. at 110, 120).  It contends that

the February 2019 SPD merely clarified the language of the January 2019 SPD and that

clarification did not change the benefits to which Turner was entitled.  (*Id*. at 120, 127).  Turner

disputes that characterization, asserting that the February 2019 SPD revision "extinguished" the

grandfathered Safeco benefit and therefore constitutes an amendment to the Plan.  (Pl.'s SMF

¶ 84).

**B.**      **Procedural Background**

On August 14, 2020, Turner brought this action against Liberty Mutual on behalf of

himself and others similarly situated.  The complaint asserts four claims.  Count 1 seeks a

determination of Plan terms and a clarification of rights to benefits under 29 U.S.C.

§ 1132(a)(1)(B).  Count 2 seeks equitable relief under § 1132(a)(3).  Counts 3 and 4 allege

violations of § 1132(c)(1) for failure to supply requested information pursuant to federal

regulations.

Liberty Mutual moved to dismiss the complaint for failure to state a claim. During the hearing on that motion, the Court determined that it would convert the motion to dismiss to a motion for summary judgment. After discovery and additional briefing, Liberty Mutual then moved for summary judgment. However, the Court could not determine, based on the record provided, which SPD was operative at the relevant time. It therefore denied the motion without prejudice to its renewal.

Liberty Mutual has now renewed its motion for summary judgment as to Count 1.

## II.   **Standard of Review**

This claim is brought under 29 U.S.C. § 1132(a)(1)(B), which suggests that the alleged denial of benefits should be reviewed *de novo* or under an arbitrary or capricious standard. *See Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 813 F.3d 420, 427 (1st Cir. 2016). Both parties, however, cite to the ordinary standard for summary judgment, and the Court will accordingly employ that standard here.

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth

specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 250 (1986) (quotations omitted).  The nonmoving party may not simply "rest upon

mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.*

at 256-57.

## III.   Analysis

Count 1 seeks a determination of Plan terms and a clarification of plaintiff's rights under

those terms.  Specifically, it alleges that the terms of the Plan entitled plaintiff, in connection

with his post-retirement medical benefit, to cost-sharing credit for his years of service with both

Safeco and Liberty Mutual.

In essence, plaintiff puts forth three contentions as to why summary judgment should be

denied.  First, he contends that the Plan documents as of the beginning of 2019 guaranteed him a

vested benefit for his years of service to both companies.  Second, he contends that the February

2019 SPD was an amendment to the plan that was not properly adopted because it purported to

terminate his vested benefit without following proper procedures.  Third, he contends that the

Plan documents (at least the January and February 2019 SPDs) were ambiguous as to the

benefits owed to him and that the resolution of those ambiguities should be left to a jury.

### A.   Vesting of Benefits

The first issue is whether the Plan, as of the beginning of 2019, conferred upon plaintiff a

vested right to credit for his pre-merger years of service with Safeco when determining the level

of cost-sharing for his post-retirement medical benefit.

Both employee pension and welfare-benefit plans are subject to the provisions of ERISA.

*See* 29 U.S.C. § 1002(1), (2).  However, "ERISA treats [those] two types of plans differently."

*M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 434 (2015).  "Unlike pension benefit plans,

which are subject to strict vesting requirements, welfare benefits are not automatically vested

under ERISA." *Balestracci v. NSTAR Elec. & Gas Corp.*, 449 F.3d 224, 230 (1st Cir. 2006).

That is because "ERISA does not create any substantive entitlement to employer-provided health

benefits or any other kind of welfare benefits." *Curtiss-Wright Corp. v. Schoonejongen*, 514

U.S. 73, 78 (1995).  That leaves employers with "large leeway to design . . . welfare plans as

they see fit." *M & G Polymers USA, LLC*, 574 U.S. at 435 (quoting *Black & Decker Disability

Plan v. Nord*, 538 U.S. 822, 833 (2003)).  Thus, "[e]mployers or other plan sponsors are

generally free under ERISA, for any reasons at any time, to adopt, modify, or terminate welfare

plans," *id.* at 434-35 (quoting *Curtiss-Wright Corp.*, 514 U.S. at 78), so long as they abide by

"certain procedural standards when they do so," *Coffin v. Bowater Inc.*, 501 F.3d 80, 85-86 (1st

Cir. 2007).

      Under certain circumstances, "an employer may contractually cede its freedom to amend

and terminate the plan and may provide retirees with vested retiree welfare benefits that cannot

be changed unilaterally." *Balestracci*, 449 F.3d at 230 (internal quotation marks omitted).  Such

a concession may be made in a "bilaterally negotiated contract[] . . . or in the ERISA plan

itself." *Id.* (citations omitted).

      "When reviewing the language of an ERISA benefit plan, we look to federal substantive

law and 'common-sense canons of contract interpretation.'" *United Steel, Paper & Forestry,

Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. National

Grid*, 38 F.4th 279, 287 (1st Cir. 2022) (quoting *Bellino v. Schlumberger Techs., Inc.*, 944 F.2d

26, 29 (1st Cir. 1991)).  "[U]nambiguous language in a plan is enforced according to its terms."

*Balestracci*, 449 F.3d at 230.  However, "if a party demonstrates ambiguity in a plan on a

particular question, reference may be made to extrinsic evidence to determine the parties'

intended meaning." *Id.* at 230-31.  "If such extrinsic evidence is not one-sided, the issue of the

parties' intent might be for the fact-finder." *Id.* at 231.  That said, if evidence concerning the

parties' intent is "so one-sided that no reasonable person could decide the contrary," then

summary judgment may be appropriate notwithstanding the ambiguity of the plan.  *Id.* at 230

(quoting *Allen v. Adage, Inc.*, 967 F.2d 695, 698 (1st Cir. 1992)).

Plaintiff contends that unambiguous language common to all SPDs published between

2014 and 2019 promised him that his past service with Safeco would be credited for cost-sharing

purposes.  He further contends that the minutes of the Compensation Committee meeting held

before Liberty Mutual's acquisition of Safeco demonstrate that the company intended to award

Safeco employees cost-sharing credit for their Safeco years of service.

To begin, plaintiff fails to identify language in any SPD or Plan document that a

reasonable factfinder could interpret as granting the vested benefit he claims.  Nor does he

identify any particular point at which that vesting occurred.  His principal contention is that the

following language from an SPD published in 2014 demonstrates that his post-retirement

medical benefit had vested:

> Effective January 1, 2014, [Liberty Mutual] moved to a retiree cost-sharing
> arrangement with an annual fixed dollar Company contribution based on your
> years of eligible credited service. . . .  Eligible credited service for the purposes of
> determining your age and service category is based on the greater of your
> continuous years of service from your most recent hire date or years of vested
> service in the pension plan as of December 31, 2013.

(ECF No. 84, Ex. B ("2014 SPD") at B-61).[8]  Plaintiff argues that the term "hire date" refers to

the date when he began work at Safeco, as evidenced by a pay slip and pension document that

lists a hire date of 1980.  (Opp'n at 15).  He further contends that reference to the "vested service

in the pension plan" demonstrates that the post-retirement medical coverage was a vested benefit.

---

[8] That provision was reiterated in essentially the same language in each succeeding SPD.

(*Id.*).  Because his years of service with Safeco did entitle him to credit under Liberty Mutual's pension benefit, he contends the same must apply to the post-retirement medical benefit as well. (*Id.*; ECF No. 84, Ex. R at HH-8).

It is certainly true that the 2014 SPD provides a formula for calculating the "years of eligible credited service" under the retiree medical plan.  And that formula provides that credit would be given for the greater of two potentially applicable periods:  (1) the employee's continuous years of service from his most recent hire date or (2) the employee's years of vested service under the pension plan.  But that language does *not* provide that the credited years (or, for that matter, the retiree medical plan) was a *vested* benefit—that is, a benefit that could never be modified or reduced.  Furthermore, to construe the post-retirement medical plan as a vested benefit would run headlong into the express terms of the Retiree Medical Plan, which state that Liberty Mutual had the right to "amend or modify the Plan" at "any time" as long as that modification did not prejudice an accrued benefit.  (Retiree Medical Plan at 10).  Because employers are generally free to amend or modify welfare plans, and because there is no language in the Plan or SPD to the contrary, no reasonable reader would conclude that Liberty Mutual had granted its employees a vested post-retirement health benefit.  *See Balestracci*, 449 F.3d at 233.[9]

The extrinsic evidence cited by plaintiff is also unpersuasive.  He points to a proposal presented to the Liberty Mutual Compensation Committee during a meeting before the acquisition of Safeco.  The minutes of that meeting generally state that Liberty Mutual wished to amend its benefit plans "to recognize past service *for certain purposes* for those Safeco

---

[9] And even if the language cited by plaintiff had granted a vested benefit, it is by no means clear that the benefit that he claims would have applied to him.  The 2014 SPD, as all others after it, contained separate cost-sharing provisions for employees of acquired companies, such as Safeco.  (*See* 2014 SPD at B-66).  Plaintiff points to no language in those provisions that suggests the creation of a vested benefit.

employees and retirees transferring to Liberty Mutual." (2008 Proposed Benefit Action at 1

(emphasis added)). In addition, the Committee made the following recommendation:

> Past service credit will be granted for purposes of eligibility and cost sharing in
> the Liberty Mutual post-retirement medical plan for Transferred Employees who
> are not former ASI retirees who were hired prior to January 1, 2004, were at least
> 36 years of age as of December 31, 2004, and retired or will retire having attained
> age 55 or older with at least 10 years of service; and age and service points that
> total at least 75.

(*Id.* at 2). Again, that language does not state or suggest that Liberty Mutual had conferred a

*vested* post-retirement medical benefit upon former Safeco employees. And, in any event,

plaintiff does not cite to any evidence that the proposal was ultimately adopted.

Moreover, other intrinsic and extrinsic evidence demonstrates that Liberty Mutual never

intended to grant former Safeco employees a vested cost-sharing credit. For example, the

transition pamphlet stated:

> Liberty Mutual provides access to medical, dental, and life insurance coverage to
> eligible employees when they retire. Eligibility and Liberty's cost sharing is
> based on service with Liberty. Your Safeco Service will be counted for purposes
> of benefit eligibility; as noted earlier, however, it will not be recognized for
> purposes of cost-sharing.

(Benefits Transition Pamphlet at 18). And the express terms of every SPD up to the February

2019 revision provided that—except for the grandfathered Safeco post-retirement medical

benefit—Safeco service counted for eligibility purposes only, not for cost-sharing purposes.

In short, a reasonable factfinder could not conclude from the evidence that the post-

retirement medical benefit was a vested, and therefore irrevocable, benefit. Accordingly,

plaintiff's post-retirement medical benefit was not vested at the time of his retirement.

**B.    The February 2019 SPD**

Plaintiff retired in May 2019; therefore, the operative SPD at that time, the February 2019

SPD, presumably should control. However, plaintiff contends that the February 2019 SPD was

not properly adopted, because it purported to amend employee benefits without following the approval procedures set forth in Plan documents.

Although employers are generally free to amend, modify, or terminate welfare-benefit plans, they must follow certain procedures when they do so.  *See Coffin*, 501 F.3d at 91.

> That is, an ERISA plan amendment must be in writing; it must be executed by a party authorized to amend the plan; the language of the amendment must clearly alert the parties that the plan is being amended; and the amendment must meet any other requirements laid out for such amendments in the plan's governing documents.

*Id.* at 91-92.  Such procedural specificity is necessary to ensure that "disputes between employees and their employers may be resolved by reference to the documents that govern the plan."  *Id.* at 92.

The Liberty Mutual Retiree Medical Plan provides several avenues for amending the Plan.  As set forth above, the Plan documents require that amendments must be approved by the board of directors, the Compensation Committee, the CEO, or some other senior official.

However, the initial issue is not whether Liberty Mutual undertook the correct process when it published the February 2019 SPD, but whether that SPD actually amended the Plan. Liberty Mutual contends that the changes to the February 2019 SPD were merely clarifications intended to help employees better understand Plan provisions, not substantive amendments that required formal approval.

Internal correspondence among Liberty Mutual employees reveals considerable confusion as to whether former Safeco employees, who qualified for the grandfathered Safeco retirement benefit, had the option to choose between that benefit or the Liberty Mutual retirement benefit.  (*See* 2019 Emails at 3, 5, 10).  Furthermore, in Higgins's email to Yong concerning plaintiff's inquiry, her calculations demonstrated that, under certain circumstances, the two benefits could yield different cost-sharing points depending on whether the beneficiary

was younger or older than 65.  (*Id.* at 5).  It therefore appears that the loss of one benefit or the other, or the lack of a choice between the two, would result in a material change in benefits for the retired employee.

The parties do not dispute that the February 2019 SPD reflected Liberty Mutual's conclusion that former Safeco employees were no longer eligible for the grandfathered Safeco benefit.  Higgins's email on January 24 states that a decision had been made that "the Liberty Mutual retiree medical benefit trumps the [grandfathered] Safeco benefit . . . ." (*Id.* at 2).  She also suggests that revisions be made to the SPD to reflect that decision.  (*Id.*).[10]  The February 2019 SPD was published days later and made clear that former Safeco employees were entitled to the Liberty Mutual benefit only.

Thus—and although it is by no means clear that Plan terms entitled former Safeco employees to a choice between benefits—there is a reasonable basis to conclude that the February 2019 SPD amended the Plan by terminating the grandfathered Safeco benefit.  And because Liberty Mutual did not undertake a formal approval process before issuing the February 2019 SPD, there is a reasonable basis to conclude that the promulgation of the February 2019 SPD was without effect, and did not change the terms of the Plan.

It does not follow, however, that plaintiff's claim survives summary judgment.  At a minimum, if the February 2019 SPD was without effect, that means that the January 2019 SPD remained in force.  And the parties do not dispute that the January 2019 SPD was properly

---

[10] Plaintiff alleges that Liberty Mutual delayed his own benefit determination so that it could publish the February 2019 SPD revision first, thereby depriving him of the benefits to which he was entitled.  Whatever the intent of Liberty Mutual in revising the SPD, the Court, for the reasons set forth below, will assess plaintiff's claim according to the January 2019 SPD.   He also alleges that the tone in which Liberty Mutual representatives discussed his case reflected their contempt for him.  It is not clear to the Court how the alleged tone of Liberty Mutual's representatives bears upon his claim for clarification of his benefits under the terms of the Plan.

adopted.[11]  In fact, Liberty Mutual contends that the benefits conferred by the January 2019 SPD

are identical to those in the February 2019 SPD.  Therefore, and for the purposes of the current

motion, the Court will assume that the January 2019 SPD was the operative Plan document at the

time of plaintiff's retirement.

      **C.**      **The January 2019 SPD**

      Plaintiff contends that the January 2019 SPD entitles him to cost-sharing credit for his

Safeco and Liberty Mutual years of service for the same reasons that he contends that it granted

him a vested medical benefit.  Again, plaintiff centers his argument around his interpretation of

the term "eligible credited service":

> [B]oth 2019 documents continue to define eligible credited service in terms of the
> higher of years of service from the employee's "hire date" or years of service as
> defined under the Retirement Benefit ([a.k.a.] "pension") plan.  In the end, *all*
> plan documents say that medical benefit cost sharing is determined, for Safeco
> employees, according to their hire date (which for Mr. Turner was in 1980) *or* is
> defined in the same way vested retirement/pension benefits are defined in the
> pension plan, which, in turn, expressly incorporates the pre-merger Safeco tenures
> just like the concept of "hire date" does.

(Opp'n at 12-13).

      Plaintiff, however, cites to the wrong provision of the SPD.  The January 2019 SPD, and

others before it, contained a section titled "Additional Provisions for Employees of Acquired

Companies."  That section stated that Safeco employees were generally not entitled to cost-

sharing credit based on their prior service.  (January 2019 SPD at B-60).  It provided an

exception to that general rule for certain Safeco employees, such as plaintiff, who had earned a

grandfathered Safeco benefit.  (*Id.*).  However, that exception did not entitle those employees to

---

[11] Plaintiff contends that Liberty Mutual was "precluded from making any modifications to the plan after at least Spring of 2018 that would 'prejudice' Mr. Turner's ongoing claim."  (Opp'n at 18).  However, he does not argue that the January 2019 SPD made any modifications (or at least any to which he objects).  Furthermore, in Liberty Mutual's first motion for summary judgment, plaintiff himself argued that the January 2019 SPD was the operative document.  (ECF No. 35, Ex. A; *see* ECF No. 45, Mem. & Order on Def't's Mot. Summ. J.).

cost-sharing credit for all their years of service at both companies; rather, the terms of the SPD granted cost-sharing credit according to a formula based on the employee's age and accumulated service points as of December 31, 2004—the date when Safeco froze the benefit.  (*Id.*).  Nothing in the SPD section concerning former Safeco employees suggests that plaintiff was provided a vested cost-sharing credit for his years of Safeco service.

Plaintiff's argument thus hinges on reading the SPD's definition of "eligible credited service" in isolation, ignoring the context of the section that follows concerning employees of acquired companies.  The SPD expressly states that "[g]enerally only continuous service with your employer during the period your employer is a Participating Employer counts for determining eligibility and/or cost sharing for post-retirement Plan coverage."  (*Id.*).  It then goes on to list acquired companies and the provisions applicable to the transferred employees. Because Safeco was obviously not a participating employer in Liberty Mutual's benefit plan, it is unreasonable to interpret the SPD as granting cost-sharing credit for plaintiff's time at Safeco; in fact, to do so would contradict the plain language of the SPD.

Plaintiff also contends, in the alternative, that the Plan terms are ambiguous.  As evidence of that ambiguity, he points to the fact that Liberty Mutual thought it was necessary to swiftly publish revisions in the February 2019 SPD.  That argument might have some force if plaintiff claimed that he had been denied his grandfathered Safeco benefit or denied a choice between that benefit and the Liberty Mutual benefit.

 But that is not plaintiff's claim.  Indeed, Liberty Mutual made an exception for plaintiff and afforded him a choice between his Safeco benefit and his Liberty Mutual benefit.  Instead, he claims that the Plan is ambiguous as to whether he is entitled to cost-sharing credit for the entirety of his years of service to both companies.  Again, the Plan language is clear that he was

33

not.

Finally, although plaintiff does not argue as much in his briefing, he alleges in general terms that he was told, at various times throughout his employment with Liberty Mutual, that he would receive full cost-sharing credit for his years of service with both companies. Even assuming that to be the case, it does not warrant a different outcome here. "ERISA plans must be in writing and cannot be modified orally." *Livick v. Gillete Co.*, 524 F.3d 24, 31 (1st Cir. 2008).

> [A] plan beneficiary might reasonably rely on an informal statement interpreting an *ambiguous* plan provision; if the provision is clear, however, an informal statement in conflict with it is in effect purporting to *modify* the plan term, rendering any reliance on it inherently unreasonable. . . . This is why courts which do recognize ERISA-estoppel do so only when the plan terms are ambiguous.

*Id.* (emphasis in original). Again, plaintiff points to no ambiguity in the Plan language—other than that it was amended to terminate the grandfathered benefit—that would justify reliance on informal statements to the contrary.

At no time was the Plan language unclear as to whether Safeco employees were entitled to cost-sharing credit for *all* their years of prior service. They were not so entitled. And that point was reiterated to plaintiff time and again by Liberty Mutual and its representatives—in the pamphlet given to him when he transitioned, in the 2018 letter from Stohlberg, in his email correspondence with Liberty Mutual representatives, and in Liberty Mutual's letters denying his appeal.

In short, in light of the unambiguous language of the Plan, including the January 2019 SPD, the Court finds that plaintiff was not entitled to cost-sharing credit for the entirety of his service with both Safeco and Liberty Mutual. Because that contention stands at the core of his claim under § 1132(a)(1)(B) (Count 1), the Court will grant summary judgment in favor of defendants on that count.

34

**IV.**   <u>**Conclusion**</u>

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
_____
F. Dennis Saylor IV
Dated: August 30, 2022                    Chief Judge, United States District Court