**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

THOMAS TURNER, an individual, on behalf of himself and other similarly situated,

Plaintiff,

vs.

LIBERTY MUTUAL RETIREMENT BENEFIT PLAN, et al.,

Defendants.

Civil Action No. 1:20-cv-11530-FDS

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GORDON E. MEYER & ASSOCIATES, PC
Gordon E. Meyer (MA BBO 561791)
8 Winchester St.
Boston, MA 02116
Tel (617) 482-2377; Fax (617) 482-0669
Email: gordon@gmeyerlaw.com

NICHOLAS & TOMASEVIC, LLP
Craig M. Nicholas, *Pro Hac Vice*
Alex Tomasevic, *Pro Hac Vice*
225 Broadway, 19th Floor
San Diego, California 92101
Tel (619) 325-0492
Fax (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

WINTERS & ASSOCIATES
Jack B. Winters, Jr., *Pro Hac Vice*
Sarah Ball, *Pro Hac Vice*
8489 La Mesa Blvd.
La Mesa, California 91942
Tel (619) 234-9000
Fax (619) 750-0413
Email: jackbwinters@earthlink.net
Email: sball@einsurelaw.com

Attorneys for Plaintiff THOMAS TURNER

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................................ 7

II. RELEVANT FACTS ..................................................................................................... 11

III. LEGAL STANDARD..................................................................................................... 14

IV. ARGUMENT: DEFENDANT'S MOTION SHOULD BE DENIED .............................. 15

**A.** Mr. Turner's (a)(3) Claim Does Not Seek to Relitigate His Claim for Benefits Under (a)(1)(B). ......................................................................................... 15

**B.** *Amara* Applies to Claims Under a Welfare Benefit Plan .................................... 17

**C.** Questions of Fact Regarding Whether Liberty Breached Its Fiduciary Duty Prevent the Grant of Summary Judgment .......................................................... 19

**D.** Further Discovery is Appropriate Under a Claim for Breach of Fiduciary Duty . 21

V. Liberty's Motion on the Third and Fourth Causes of Action Should Be Denied ............ 23

Liberty's Failure to Provide Plan Documents................................................................ 23

**A.** Defendant's Motion as to Count IV Should be Denied ....................................... 25

VI. CONCLUSION............................................................................................................. 26

## TABLE OF AUTHORITIES

Cases

*A.F. v. Providence Health Plan*, 157 F.Supp 3d 899 (D. Or. 2016) .......... 18

*Adams v. Freedom Forge Corp*., 204 F.3d 475 (3d Cir. 2000) .......... 19, 20

*Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042 (9th Cir. 2000).......... 23

*Brenner v. Metro. Life Ins. Co.,* No. 11-12096-GAO, 2015 U.S. Dist. LEXIS 36044, at *26 (D. Mass. Mar. 3, 2015).......... 10

*Brent S. v. Blue Cross Blue Shield of Mass., Inc.,* Civil Action No. 17-cv-11569-ADB, 2019 U.S. Dist. LEXIS 120415, at *10-11 (D. Mass. July 19, 2019).......... 17

*Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 774 F. App'x 942 (6th Cir. 2019).......... 20

*Brown v J.B. Hunt Transport Services, Inc.,* 586 F.3d 1079 (8th Cir. 2009) .......... 7

*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).......... 8

*Cotten v. Blue Cross & Blue Shield of Mass. HMO Blue, Inc*., No. 16-12176-RGS, 2018 U.S. Dist. LEXIS 205869, at *8 (D. Mass. Dec. 6, 2018) .......... 17

*Estate of Smith v. Raytheon Co.*, 573 F.Supp.3d 487 (D. Mass. 2021) .......... 9, 17

*Faircloth v. Lundy Packing Co.,* 91 F.3d 648 (4th Cir. 1996).......... 19

*Fitzwater v. CONSOL Energy, Inc*., 1:17-CV-03861, 2020 WL 6231207, at *10 (S.D.W. Va. Oct. 22, 2020).......... 15

*George v. Duke Energy Ret. Cash Balance Plan*, 560 F.Supp.2d 444 (D.S.C. 2008) .......... 19

*Grossman v. Dirs. Guild of Am*., Inc., No. ED CV 16-1840-GW (SPx), 2018 U.S. Dist. LEXIS 227227, at *4 (C.D. Cal. Aug. 22, 2018) .......... 21

*Hill v. State St. Corp*., 2013 U.S. Dist. LEXIS 181168, at *13-14 (D. Mass. Dec. 30, 2013) .......... 23

*In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig*., 57 F.3d 1255 (3d Cir. 1995) .......... 15, 20

*In re Varrasso*, 37 F.3d 760 (1st Cir. 1994) .......... 15

*Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund*, 933 F. Supp. 1124 (D. Mass. 1996) .......... 10

*James v. Pirelli Armstrong Tire Corp*., 305 F.3d 439 (6th Cir. 2002) .......... 15

*Jensen v. Solvay Chemicals, Inc*., 520 F.Supp. 2d 1349 (D. Wyo. 2007) .......... 21

*Jette v. United of Omaha Life Ins. Co*., 18 F.4th 18 (1st Cir. 2021) .......... 25

*Krohn v. Huron Memorial Hosp*., 173 F.3d 542 (6th Cir. 1999) .......... 20

*LaRocca v. Borden,* 276 F.3d 22 (1st Cir. 2002) .......... 16, 17

*Mannino v. La. Health Serv. & Indem. Co*., No. 19-185-SDD-RLB, 2021 U.S. Dist. LEXIS 60015, at *13-14 (M.D. La. Mar. 29, 2021) .......... 21

*Moore v. Lafayette Life Ins. Co*., 458 F.3d 416 (6th Cir. 2006) .......... 20

*Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948 (9th Cir. 2016) .......... 8, 9, 16, 26

*N.R. v. Raytheon Co*., 24 F.4th 740 (1st Cir. 2022) ............................................................ 24

*Rainey v. Sun Life Assurance Co*., 2014 U.S. Dist. LEXIS 141779, at *4-5
(M.D. Tenn. Oct. 6, 2014) ................................................................................... 18

*Rodowicz v. Mass. Mut. Life Ins. Co*., 192 F.3d 162 (1st Cir. 1999)......................................... 23

*Serapion v. Martinez*, 119 F.3d 982 (1st Cir. 1997) .................................................................. 14

*Shields v. United of Omaha Life Ins. Co.,* 50 F.4th 236 (1st Cir. 2022)............................ 8, 10, 17

*Smith v. Jefferson Pilot Fin. Ins*. Co., 245 F.R.D. 45 (D. Mass. 2007) ...................................... 22

*Steve C. v. Blue Cross & Blue Shield of Mass., Inc.*, 450 F.Supp.3d 48 (D.
Mass. 2020)......................................................................................................... 17

*Tebo v. Sedgwick Claims Mgmt. Servs*., Civil Action 09*-40068-FDS,
2020 U.S. Dist. LEXIS 50834, at *9 (D. Mass. May 20, 2010) ...................................... 22

*Trovato v. Prudential Ins. Co. of Am*., , 2018 U.S. Dist. LEXIS 21372, at
*9 (D. Mass. Feb. 9, 2018)........................................................................................ 9

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ........................................................................ 16, 19

Statutes

29 C.F.R. § 2520.102-2(a) ......................................................................................... 25

29 C.F.R. § 2560 ..................................................................................................... 23

29 C.F.R. § 2560.502c-1 .......................................................................................... 24

29 U.C.S. § 1104(a)(1)(A)(i) ...................................................................................... 19

29 U.S.C § 1132(c)(1)(B) .......................................................................................... 24

29 U.S.C. § 1022(b) ................................................................................................. 24

29 U.S.C. § 1024(b)(4) ........ 24

29 U.S.C. § 1132........ 7, 23, 24

29 U.S.C. § 1132(a) ........ 24

29 U.S.C. § 1132(a)(1)(A) ........ 24

29 U.S.C. § 1132(a)(1)(B) ........ 7

29 U.S.C. § 1132(a)(3)........ 7, 15

29 U.S.C. § 1132(c) ........ 24

Rules

Fed. R. Civ. P. 56(c) ........ 14

Fed. R. Civ. P. 56(d) ........ 15, 23

Regulations

29 C.F.R. § 2560.503-1(a)(1)(B) ........ 7

Plaintiff THOMAS TURNER hereby submits his Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment as follows:

## I. INTRODUCTION

Without the benefit of complete discovery, Defendants (collectively "Liberty") bring yet another motion for Summary Judgment alleging that all of Plaintiff Thomas Turner's remaining claims are deficient. Liberty is wrong.

Mr. Turner brings his main claims under ERISA's "Civil enforcement" section: 29 U.S.C. § 1132. ERISA and its enforcement provisions are "remedial legislation and should be liberally construed to effectuate Congress's intent to protect plan participants." *Brown v J.B. Hunt Transport Services, Inc.,* 586 F.3d 1079, 1086 (8th Cir. 2009). In turn, Section 1132 has two main, but different, enforcement mechanisms at issue here: 1132(a)(1)(B) (an "(a)(1)(B) claim") for favorable contract *interpretation*, and 1132(a)(3) (an "(a)(3) claim") for equitable relief including, but not limited to, contract *reformation*, and restitution. In short, Liberty argues that because the Court summarily adjudicated Mr. Turner's contract claim – his (a)(1)(B) claim - in a prior proceeding, he is automatically disqualified from bringing a separate (a)(3) claim for equitable relief. More specifically, Liberty argues that Plaintiff cannot bring such an (a)(3) claim because: 1) the written terms of the plan do not provide the benefits Mr. Turner seeks, and 2) Mr. Turner cannot bring a claim under (a)(3) because the plan at issue is a welfare benefit plan.[1] Both of these arguments are wrong and demonstrate a misunderstanding of current ERISA law in this Circuit. Section 1132(a)(1)(B) claims and (a)(3) claims are separate and can be brought

---

[1] While Plaintiff believes the terms of the applicable Summary Plan Description (hereinafter "SPD") do provide past service credit for Mr. Turner's time at Safeco, or, at worst, the terms of the plan are ambiguous, this Court has already ruled on Mr. Turner's claims under 29 C.F.R. § 2560.503-1(a)(1)(B) (hereinafter "(a)(1)(B)")), and as such, for purposes of this Opposition Plaintiff will assume recovery under the terms of the relevant SPD and (a)(1)(B) is not available.

simultaneously as a matter of law. *Shields v. United of Omaha Life Ins. Co.,* 50 F.4th 236, fn. 12 (1st Cir. 2022).

Liberty's argument not only defies this Circuit's law, but it also defies logic and Plaintiff's well-pled allegations. Liberty contends this case is entirely about Plan language. But this is Liberty trying to move the goal posts, i.e., trying to re-characterize Plaintiff's case. It hopes to do so because it was successful on its prior Motion for Summary Judgment on Mr. Turner's (a)(1)(B) claim- the only claim that relied specifically on the plan language – and where this Court found that the written terms of the Plan documents did not expressly provide the benefits Plaintiff was seeking.

Mr. Turner's separate equitable claim under (a)(3), however, ask the Court to reform the existing plan in accordance with a host of extra-contractual misrepresentations Liberty made to Mr. Turner and other former employees of Safeco – *not* in accordance with any written plan language. ECF No. 1, ¶ 73. Plaintiff's remaining claims, specifically the (a)(3) claim, do not rely on plan language.

Said differently, there is no doubt that one of the remedies available under (a)(3) is contract reformation. *CIGNA Corp. v. Amara*, 563 U.S. 421, 440-41 (2011) (holding that an ERISA plan may be reformed under (a)(3) and principles of equity in order to remedy false or misleading information provided to plan participants). And a request for reformation *necessarily* assumes that the requested relief is not available under the written terms of the applicable plan – that the written plan must be changed ("reformed"). This is precisely what Mr. Turner requests here under (a)(3).

Additionally, Liberty's arguments fully ignore that it has been in a substantially similar situation before, in *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948 (9th Cir. 2016), a case

involving the same defendants, many of the same actors, and plans, and where the plaintiff alleged that Liberty breached its fiduciary duty by failing to inform employees that they would not receive past service credit for the purpose of benefit accrual under a retirement pension plan. In *Moyle*, which has been adopted in this Circuit[2] the Ninth Circuit made clear that if the class was unsuccessful on their claim that the language of the plans at issue provided the benefits they sought (as is the case here for Mr. Turner), they could nonetheless move forward on a claim under (a)(3) for reformation of the plan. As *Moyle* explained: "[the Supreme Court] clearly provides that, where a plan participant has no remedy under another section of ERISA, she can assert a claim for breach of fiduciary duty under § (a)(3)." *Id*. at 961-962, citing *Varity*, *supra*.

Here, Mr. Turner will prove his extra-contractual claims under (a)(3): that, generally, Liberty misrepresented its intent to provide past service credit to Safeco employees through a mix of misrepresentations and omissions, and, specifically, that Mr. Turner, and others, were led to believe that the cost of post-retirement medical care would be on a combination of years of service with Liberty and years of service with Safeco prior to its acquisition by Liberty. This is precisely the same kind of breach of duty committed by Liberty in *Moyle*. *Moyle*, *supra*, at 962 (stating that the case turns on a "factual determination of whether Liberty Mutual breached its fiduciary duty by failing to inform Golden Eagle employees that past service credit for the purpose of benefit accrual did not include the period prior to October 1, 1997). Mr. Turner's case is basically one for misrepresentation and for violation of the duty of candor, and this district has specifically held that a plan participant can bring an (a)(3) claim premised on the

[2] See, e.g., *Estate of Smith v. Raytheon Co.*, 573 F.Supp.3d 487, 502 n.18 (D. Mass. 2021) (holding that particularly where no remedy was available under (a)(1)(B) plaintiffs entitled to seek relief under (a)(3)); *Shields*, *supra* at 38; *Trovato v. Prudential Ins. Co. of Am.*, , 2018 U.S. Dist. LEXIS 21372, at *9 (D. Mass. Feb. 9, 2018).

violation of a duty of candor. *Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund*, 933 F. Supp. 1124, 1146 (D. Mass. 1996). Mr. Turner's (a)(3) claim is viable, and triable issues of fact related to whether Liberty breached its duty preclude the granting of this motion. Notably, Liberty has not alleged a single undisputed fact related to Plaintiff's (a)(3) allegations, and instead only offers quotations from this Court's prior orders.

Liberty's second argument is that Mr. Turner's (a)(3) claim is distinguishable from the many similar cases allowing (a)(3) relief because it is brought under a welfare benefit plan- as opposed to a pension plan. Liberty is wrong again and its argument ignores recent case law in this very district. *See, e.g.*, *Shields v. United of Omaha Life Ins. Co.,* 50 F.4th 236, fn. 12 (1st Cir. 2022) (rejecting the same argument Liberty makes here – i.e. the argument that (a)(3) relief "was unavailable as a cause of action if the plaintiff could bring any other claim under ERISA" - and noting that "this restrictive reading of [(a)(3)] was subsequently rejected [by the Supreme Court]."(citing *Amara*, *supra*); *see also Brenner v. Metro. Life Ins. Co.,* No. 11-12096-GAO, 2015 U.S. Dist. LEXIS 36044, at *26 (D. Mass. Mar. 3, 2015) (allowing a claim under (a)(3) to move forward where plaintiff alleged she took certain actions regarding a life insurance policy - a welfare benefit policy- based on information and advice provided by the plan administrator).

Mr. Turner's claim under (a)(3) seeks equitable relief related to the misrepresentations made to him, and to the class, related to past service credit. To date, Mr. Turner has not been allowed to complete discovery related to these alleged misrepresentations. Nonetheless, questions of fact remain that preclude the granting of this motion. Mr. Turner respectfully requests the Court deny Liberty's motion and allow discovery on these issues to finally commence.

Finally, and importantly, this Court should deny Liberty's motion because there are

outstanding discovery requests which, to date, Liberty has not been made to respond to and which leave upon disputed questions of fact. See Affidavit of Jack B. Winters, Jr. filed herewith. The Court has previously limited discovery to issues related to which plan documents governed Mr. Turner's claim for benefits. *Id*. at ¶ 4-5. Subsequent to the grant of Defendant's Motion for Summary Judgment on the (a)(1)(B) claim, Plaintiff served additional interrogatories and requested Defendant supplement its prior discovery responses and produce documents it had previously refused to produce. *Id*. at ¶ 6-8. Defendant, instead, filed this motion and a Motion to Stay Discovery. ECF No. 103. Extensive discovery, which will undoubtedly shed light on the allegations of misrepresentation Mr. Turner has made in the counts that are the subject of this motion, remain unanswered. Winters Affidavit, ¶ 9. Mr. Turner respectfully requests the Court deny this motion, and allow discovery to move forward.

## II. <u>RELEVANT FACTS</u>

Mr. Turner was originally hired by Safeco Insurance in 1980. Response to Statement of Facts filed herewith ("RSOF") ¶ 2. In 2008, Safeco merged with Liberty Mutual. *Id*. at ¶ 18. But very little changed for Mr. Turner and his Safeco colleagues after the merger. In short, Safeco business would operate largely as per usual, and Mr. Turner understood Safeco people were being seamlessly folded into the Liberty Mutual parent company and gaining the benefits that came with that. Id.

More specifically, at no time was Mr. Turner ever terminated and rehired in any fashion. Id. at ¶ 19. He did not have to do a new job interview with Liberty and his compensation did not change. Id. And during his entire tenure with Liberty/Safeco – both before and after the merger– Liberty listed only one hire date for Mr. Turner in internal documents: his 1980 hire date with Safeco. Id. at ¶ 20. Indeed, all statements Liberty Mutual gave Mr. Turner, including those that mentioned his benefits, referenced only the original 1980 hire date with Safeco. Id. Those

statements also repeatedly combined his prior years with Safeco and his more recent years with Liberty into one aggregate "Years of Vested Service" calculation. *Id*.; See also Winters Affidavit, Ex. A – Pension Statement. In short, it appeared Liberty was crediting all prior service years as it was supposed to.

Moreover, Safeco employees were originally told, in 2009, that they would continue to work for Safeco but simply under the umbrella of Liberty Mutual Group (just as other companies that had been purchased by or merged with Liberty Mutual). RSOF ¶ 21. Mr. Turner was further told that the Safeco company or brand would still operate, and it did, including by maintaining the Safeco name and company logo. *Id*. at ¶ 22. Indeed, even today the Safeco brand still operates for products including personal lines insurance, as shown on Safeco's own website, which existed before the merger, after the merger, and at the time of Mr. Turner's retirement. Id. The website still exists today: https://www.safeco.com/ (the company is still referred to as "Safeco Insurance, a Liberty Mutual Company") (last accessed Dec. 19, 2021). In short, Turner and his colleagues were only hired once by one company (Safeco).

Following the acquisition of Safeco, which occurred in 2008, Liberty confirmed for Mr. Turner that he would receive credit based on the service provided prior to the acquisition, as well as the service provided thereafter. Id. at ¶ 23. Mr. Turner was told on many more occasions that employees would receive credit for both Safeco (prior to the acquisition) and Liberty Mutual (following the acquisition). *Id*. Mr. Turner was additionally aware of co-workers of his who had received full credit for their prior service with companies that had merged with Liberty. *Id*. at ¶ at ¶ 26. As a result of this information and these beliefs, Mr. Turner continued to work for Liberty, and did not take advantage of other offers of employment. *Id*. at ¶ 25.

Also, in or around 2018, Liberty told Mr. Turner he would need 10 years of service

following the acquisition in order for his years of service with Liberty Mutual to apply, i.e., that after ten years of service under the Liberty umbrella he would earn an additional cost-sharing benefit on top of a "grandfathered" credit for eligibility and cost-sharing. *Id*. at ¶ 24. Based on this, Mr. Turner targeted to work 10 years following the acquisition. *Id*. at ¶25.

In about 2014, Mr. Turner took up a greater interest in how his retirement benefits, including his retirement medical benefits, were going to work, as well as those for his wife. *Id*. at ¶ 27. Then, Liberty advised Mr. Turner that his years of service with Safeco would be counted toward the cost sharing calculation of his retirement medical benefits, and that the only requirement was that he stay with Liberty (post-merger) for at least 10 years. *Id*. at ¶ 27.

Liberty's promises to Mr. Turner were also consistent with Liberty's normal course of business during that time. Indeed, Mr. Turner's co-workers that had retired actually did get full credit for their prior work with companies that merged with Liberty. *Id*. at ¶ 26.

Mr. Turner relied on Liberty's numerous statements about the calculation of his cost-sharing benefits in retirement, particularly Liberty's promise that he would get full credit for his past (pre-merger) years at Safeco. *Id.* at ¶¶ 24-25. Because he reasonably believed he would receive these valuable benefits, he did not accept any of a variety of offers he received to explore opportunities from other carriers and headhunters. *Id.* at ¶ 25. Stated differently, once Liberty promised Mr. Turner that all he needed to do was work through the 10-year requirement, he prioritized doing so.

In 2017, Mr. Turner started to ask more specific questions about the exact amount of the benefit (the amount of cost sharing) he would receive if he retired soon. *Id*. at ¶ 28. At that point, Liberty personnel on the phone refused to give those answers and instructed Mr. Turner to write a letter. *Id*. He did so and it took Liberty two months to respond. Turner Affidavit at ¶ 17.

During this time, Liberty personnel were realizing and internally acknowledging the ambiguities and infirmities within their own documents. At the same time, Liberty personnel were showing contempt toward Mr. Turner and bias against his claim rather than recognizing their fiduciary duties toward him. See Turner Affidavit filed in Support of Plaintiff's Opposition to Summary Judgment, ECF No. 85 at ¶¶ 14-24 (filed under seal citing numerous internal Liberty emails).

Importantly, the records produced by Liberty so far do not reflect all of the communications Mr. Turner had with Liberty. Turner Affidavit ¶ 20. Many of these communications were recorded and would shed light on what Mr. Turner was told. *Id*. Ultimately, as the Court is aware, Mr. Turner did not receive service credit for cost sharing for his time at Safeco prior to the merger.

Mr. Turner ultimately brought this suit, and the Court dismissed his claim under (a)(1)(B) holding that under the terms of the 2019 SPD, he had no right to past service credit for purposes of cost sharing. Importantly, the service credit provided under the 2019 SPD, as interpreted by the Court, was counter to what Mr. Turner had been told numerous times by Liberty prior to 2017 when he began attempting to get a calculation of his future cost of benefits.

## III. LEGAL STANDARD

Summary judgment is authorized only "if pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Liberty here must first demonstrate absence of any genuine issue of material fact. See *Id*.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If this initial burden is not met, summary judgment must be denied without considering further evidence. *Id*. at 330-31. In evaluating Liberty's motion, the Court is required to draw all inferences in favor of the non-moving party. See *Serapion v. Martinez*, 119 F.3d 982, 987 (1st Cir. 1997). Summary

judgment is not appropriate where conflicting inferences can be drawn from undisputed evidence. *In re Varrasso*, 37 F.3d 760, 764 (1st Cir. 1994).

Also, Liberty's actions here in denying even basic discovery on the (a)(3) claim implicate Fed. R. Civ. P. 56(d), which allows a court to deny summary judgment, or delay ruling on it, until the nonmoving party has had a fair opportunity to obtain discovery. There are disputed issues of fact that cannot yet be resolved, and as such this motion must be denied.

## IV. <u>ARGUMENT: DEFENDANT'S MOTION SHOULD BE DENIED</u>

Here, Liberty Mutual cannot satisfy its burdens on summary judgment. There are, at a minimum, triable issues of fact as to whether Mr. Turner was misled as to the calculation of benefits, related to whether he would receive service credit for his time with Safeco Insurance prior to its acquisition by Liberty.

### A. Mr. Turner's (a)(3) Claim Does Not Seek to Relitigate His Claim for Benefits Under (a)(1)(B).

Regardless of what the plan documents say, Mr. Turner is nonetheless entitled to relief under Section 1132(a)(3). Stated differently, even if a court rejects an ERISA benefit claim under (a)(1)(B)- as happened here- a party may nevertheless pursue a breach of fiduciary duty cause of action under (a)(3). See *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig*., 57 F.3d 1255, 1264 n.13 (3d Cir. 1995). Interpretation of plan documents in the employer's favor, for example, would not necessarily "insulate[] an employer from its fiduciary duty to provide complete and accurate information when that employer on its own initiative provides inaccurate and misleading information about the future benefits of a plan." *James v. Pirelli Armstrong Tire Corp*., 305 F.3d 439, 454-55 (6th Cir. 2002); see *Fitzwater v. CONSOL Energy, Inc*., 1:17-CV-03861, 2020 WL 6231207, at *10 (S.D.W. Va. Oct. 22, 2020) (another case about welfare

benefits, holding that although the Plaintiff could not prevail under (a)(1)(B), potential equitable relief was still available under (a)(3) for alleged breaches of fiduciary duty).

Initially, Liberty's misreads *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) and asserts that Mr. Turner cannot bring an (a)(3) because he has adequate relief under (a)(1)(B). Liberty's restrictive interpretation ignores that this Court already ruled that relief under (a)(1)(B) is not available to Mr. Turner, and also ignores *Amara, Moyle*, and the vast number of cases that have expanded on *Varity*. As explained in *Moyle*, *Amara* authorized equitable relief in the form of plan reformation-*even where plaintiff also sought relief under (a)(1)(B)*. *Moyle*, *supra*, at 960. As they do here, in *Moyle,* Liberty "insisted on applying *Varity* and gave *Amara* short shrift, even though the latter is controlling authority." *Id*. *Moyle* further explained that *Amara* does not "contravene *Varity*" because *Varity* "does not explicitly prohibit a plaintiff from pursuing simultaneous claims under [(a)(1)(B)] and [(a)(3)]". In short, neither the plaintiff in *Moyle*, nor Mr. Turner are precluded from seeking relief under (a)(1)(B) because they also sought relief under (a)(3)—they are only precluded from *recovering* under both sections. *Id.* at 961. As summarized by the court, the *Moyle* appellants "seek the payment of benefits under § 1132(a)(1)(B), but if that fails, Appellants seek an equitable remedy for the breach of fiduciary duty to disclose under § 1132(a)(3)." *Id.* at 962. The court held such was consistent with *Amara* and *Varity*. This is precisely what Mr. Turner seeks here, with one difference- he has already been denied relief under (a)(1)(B) and as such there is no longer a possibility he could recover under it.

In its motion, Liberty leans heavily on a pre-Amara case, *LaRocca v. Borden,* 276 F.3d 22 (1st Cir. 2002) for its contention that the fact that Mr. Turner brought a now dismissed claim under (a)(1)(B) that he cannot seek relief under (a)(3). However, as explained in *Shields*,

"[w]hile the First Circuit has yet to explicitly overrule *LaRocca*, it more recently has shown a willingness to consider the merits of a § 1132(a)(3) claim that accompanied an alternative claim under § 1132(a)(1)." *Shields, supra*, at 38 (citing *O'Shea v. UPS Ret. Plan*, F.3d 67, 77-78 (1st Cir. 2016)[3]. *LaRocca*, as explained by Liberty, in fact only held that it is not appropriate for an ERISA beneficiary to use section (a)(3) and (a)(1)(B) to obtain the same benefits. See Def. Motion ECF No. 101, p. 14-15 citing *LaRocca*, *supra*, at 28. This holding is inapplicable here for two reasons: 1) Mr. Turner's (a)(1)(B) claim has been dismissed and as such he cannot recover under the terms of the plan; and 2) *LaRocca* is a pre-*Amara* case and as such, Mr. Turner contends it is no longer the appropriate standard.

**B. *Amara* Applies to Claims Under a Welfare Benefit Plan**

Liberty attempts to hand wave past the Supreme Court in *Amara* by claiming *Amara* applies only to pension benefits cases, but does so without citation to a single case to support this contention. Section (a)(3) allows Mr. Turner, or any "participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or (B) to obtain other appropriate equitable relief [] to redress such violations…" Section (a)(3) does not draw a distinction between claims for pension benefits and claims for welfare benefits such as Mr. Turner's claim.

As cited above, *Shields* and *Brenner* involved welfare benefit plans, specifically, life

---

[3] Liberty cites to one post-*Amara* case to argue that *LaRocca* is still good law, but *Cotten* was decided before *Shields*, and provides almost not analysis. See *Cotten v. Blue Cross & Blue Shield of Mass. HMO Blue, Inc.*, No. 16-12176-RGS, 2018 U.S. Dist. LEXIS 205869, at *8 (D. Mass. Dec. 6, 2018). Subsequently, multiple other cases have held that both (a)(1)(B) and (a)(3) claims can be pled simultaneously, as long as the plan participant does not recover under both. *See, e.g.*, *Brent S. v. Blue Cross Blue Shield of Mass., Inc.,* Civil Action No. 17-cv-11569-ADB, 2019 U.S. Dist. LEXIS 120415, at *10-11 (D. Mass. July 19, 2019); *Steve C. v. Blue Cross & Blue Shield of Mass., Inc.*, 450 F.Supp.3d 48, 61 (D. Mass. 2020); *Estate of Smith v. Raytheon*, *supra*.

insurance policies, and the courts ruled that plaintiffs' (a)(3) claims could move forward. See *Shields*, *supra*, *Brenner*, *supra*. Similarly, other districts have also allowed (a)(3) relief- particularly in the form of reformation- where the plan participant alleges they were misled as to their benefits. In *Rainey v. Sun Life Assurance Co*., 2014 U.S. Dist. LEXIS 141779, at *4-5 (M.D. Tenn. Oct. 6, 2014), the plaintiff initially sought reformation, and subsequently surcharge, where she alleged the plan administrator misrepresented the benefits to which the plaintiff was entitled under a life insurance and accidental death plan. Further, the court ruled that the (a)(3) claim was not simply a "repackaged" (a)(1)(B) claim because she sought reformation to align the plan to the misrepresentations made by the defendant, just as Mr. Turner does here. As the court stated "the question is not whether benefits were wrongly denied, but whether [defendant] breached a fiduciary duty." *Id*. at *3. In so holding, the court emphasized that without an (a)(3) claim, the plaintiff had no remedy. This is the relevant inquiry- not whether the relief is sought under a pension plan or a welfare benefit plan.

The Ninth Circuit has also allowed (a)(3) relief under welfare benefit plans. In *A.F. v. Providence Health Plan*, 157 F.Supp.3d 899, 902 (D. Or. 2016), plaintiffs brought suit against a health plan, seeking injunctive and equitable relief under (a)(3), and benefits under (a)(1)(B). In an in depth analysis of *Varity*, the *A.F.* court dismissed concerns expressed by Amici in *Varity* that allowing equitable relief would increase the cost of welfare benefit plans and discourage employers from offering such benefits, and held that the district court's dismissal of the (a)(3) claim was in error, and allowed it to continue. *Id*. at 918.

Liberty has offered no explanation for its contention that Amara does not apply to welfare benefit claims. That a claim is made under a welfare benefit plan should not preclude a plan participant for seeking relief where a plan fiduciary has breached their duty.

### C. Questions of Fact Regarding Whether Liberty Breached Its Fiduciary Duty Prevent the Grant of Summary Judgment

Section (a)(3) provides a private right of action for breach of fiduciary duty. Various duties are enumerated in 29 U.C.S. § 1104(a)(1)(A)(i), among other places. There, ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and benefits and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). This section falls within what are sometimes referred to as ERISA's "fiduciary responsibility provisions." See *Faircloth v. Lundy Packing Co.,* 91 F.3d 648, 656 (4th Cir. 1996) (citing 29 U.S.C. §§ 1101–14); *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) ("To participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act 'solely in the interest of the participants and beneficiaries.'").

Ultimately, these provisions obligate fiduciaries not only to avoid making any material misrepresentations to beneficiaries, but also "incomplete, inconsistent, or contradictory disclosures that misinform beneficiaries." *George v. Duke Energy Ret. Cash Balance Plan*, 560 F.Supp.2d 444, 474 (D.S.C. 2008) (citing *Griggs v. E.I. DuPont de Nemours & Co*., 237 F.3d 371, 380 (4th Cir. 2001)); see also *Adams v. Freedom Forge Corp*., 204 F.3d 475, 492 (3d Cir. 2000) ("An employee may recover for a breach of fiduciary duty if he or she proves that an employer, acting as a fiduciary, made a material misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment.").

Once an ERISA beneficiary has requested information from a fiduciary who is aware of the beneficiary's status and situation, the fiduciary has a duty to convey complete and accurate information, even if that requires conveying information about which the beneficiary did not

specifically inquire. See *Krohn v. Huron Memorial Hosp*., 173 F.3d 542, 548 (6th Cir. 1999). In turn, when a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries. *Unisys*, 57 F.3d at 1264.

To state a breach of fiduciary claim based on a purported misrepresentation, a plaintiff must plead facts showing that (1) the defendant, while acting in a fiduciary capacity, (2) made a material misrepresentation, (3) that the plaintiff relied on. See *Moore v. Lafayette Life Ins. Co*., 458 F.3d 416, 433 (6th Cir. 2006). "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision . . . ." *Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 774 F. App'x 942, 947 (6th Cir. 2019) (internal citations omitted).

Here, Liberty- undisputedly a fiduciary- breached its duties to Mr. Turner by repeatedly promising him that his Safeco years would count toward his medical cost sharing benefit and, importantly, that those benefits were unassailable or vested. See Declaration of Thomas Turner in Support of First Supplemental Brief, ECF No. 34 at ¶ 6 (referencing four to five conversations from 2014 through 2017); See also Ex. A to Winters Affidavit (listing the last hire date as “28-Apr-1980”). Liberty’s representations “would confuse a reasonable beneficiary” at the very minimum if the promises turned out not to be true – as Liberty now admits. *Adams*, 204 F.3d at 492. And Liberty does not dispute that Mr. Turner relied on its promises. To the extent Liberty later decided to snatch away or never give Mr. Turner those valuable benefits, Liberty omitted that critical information – not telling Mr. Turner that they had plans to do so until it hurriedly maneuvered to (attempted to) change the plan documents and single out Mr.

Turner and other Safeco employees only after -and only because - Mr. Turner spoke out. There are, at the very least, triable issues of fact with respect to Mr. Turner's (a)(3) claim on this theory.

**D. Further Discovery is Appropriate Under a Claim for Breach of Fiduciary Duty**

While the evidence Mr. Turner already marshalled, despite Liberty's attempts to block his investigations, is already enough to create triable issues, additional discovery would certainly help further establish Liberty's breaches.

First, it is important to note that that, unlike in some ERISA cases, Mr. Turner is not limited to the administrative record here. Such limitations do not apply to (a)(3) claims. The "prevailing jurisprudence" is that "discovery regarding claims under § 502(a)(3) should not be limited to administrate record and should, instead, be governed by the general scope of discovery provided by Rule 26(b)(1)." *Mannino v. La. Health Serv. & Indem. Co*., No. 19-185-SDD-RLB, 2021 U.S. Dist. LEXIS 60015, at *13-14 (M.D. La. Mar. 29, 2021) (and see cases cited therein); *see also Grossman v. Dirs. Guild of Am*., Inc., No. ED CV 16-1840-GW (SPx), 2018 U.S. Dist. LEXIS 227227, at *4 (C.D. Cal. Aug. 22, 2018). This expanded scope of discovery in (a)(3) claims is "logical, as these actions do not benefit from the administrative process. Courts are not required to give deference to plan committees or fiduciaries in [(a)(3)] actions and therefore limitations to administrative record are not required." *Jensen v. Solvay Chemicals, Inc*., 520 F.Supp. 2d 1349, 1352 (D. Wyo. 2007).

Discovery in this case, to date, has been limited to documents necessary to determine which SPD was in force at the time Mr. Turner retired – i.e., limited to the (a)(1)(B) contract claim issues. See Winters Affidavit ¶¶ 2-9; see also Exhibit E. To date, even the full administrative record has not been produced. *Id*. Additionally, records of audio calls, and

additional email communications (some, but not all, have been produced) between Mr. Turner and Liberty, which would certainly shed light on what Liberty represented to employees, including Mr. Turner, regarding rights to past service credit and cost sharing, have not been produced. *Id*. And Liberty disputes what Mr. Turner contends it said about these key issues. See Liberty's Answer, ECF No. 53, ¶¶ 3-6 (denying all allegations that Mr. Turner and others were promised past service credit at the time of acquisition and after). In short, how can Plaintiff be expected to fully litigate a case about misrepresentations when the Defendant refuses to turn over all its communications on the very subjects in dispute?

Moreover, Liberty is wrongly withholding documents on the basis of purported attorney client privilege and work product doctrine. As argued extensively in Plaintiff's Motion to Compel, ECF No. 64, these documents are not protected "work product" because they were primarily authored when there was no pending litigation. *Tebo v. Sedgwick Claims Mgmt. Servs*., Civil Action 09*-40068-FDS, 2020 U.S. Dist. LEXIS 50834, at *9 (D. Mass. May 20, 2010) (stating that the work product doctrine protects a document prepared in anticipation of litigation and that was prepared by or for a party or party's representative).

Liberty's claims of privilege are equally meritless. Again, Liberty is Mr. Turner's fiduciary. And in ERISA cases, a fiduciary exception to the attorney-client privilege provides that communications between an attorney and a plan administrator are not protected from disclosure to beneficiaries. *Tebo*, *supra*, at *9 n.5. This exception is based on an ERISA trustee's duty to disclose to plan beneficiaries all information regarding plan administration. *Smith v. Jefferson Pilot Fin. Ins*. Co., 245 F.R.D. 45, 47-48 (D. Mass. 2007). Advice from an attorney given for the benefit of the plan, its beneficiaries, or as a matter of plan administration "involving the defendant's role as the beneficiaries' fiduciary" is not privileged. *Hill v. State St.*

*Corp*., 2013 U.S. Dist. LEXIS 181168, at *13-14 (D. Mass. Dec. 30, 2013) (internal citations omitted).

Specifically, email discussions from 2018, discussing a potential amendment to the Plan, are also not protected by the attorney-client privilege. See Winters Affidavit, ¶ 9(e) (discussing communications- including emails- withheld on the basis of attorney client privilege).- Defendants knew at that time that the amendments they were discussing would have a potential negative effect on Mr. Turner's benefits and his decision regarding when to retire. The "serious consideration test" adopted in this district states that, where a potential change in retirement benefits that is material enough that it could influence employment decisions becomes sufficiently likely, such consideration triggers fiduciary duties, and such seriously considered changes must be communicated to inquiring plan participants. See *Bins v. Exxon Co. U.S.A*., 220 F.3d 1042, 1048-50 (9th Cir. 2000); *see also Rodowicz v. Mass. Mut. Life Ins. Co*., 192 F.3d 162, 174 (1st Cir. 1999) (applying the "serious consideration test" in this circuit).

In order to fully assess the (a)(3) claim- specifically to better determine if Liberty misrepresented the requirements and benefits he was entitled to under the plans at issue- the discovery that Mr. Turner has been seeking for years must be completed. Without the completion of discovery, undisputed issues of fact cannot be resolved. *See* Fed. R. Civ. Proc. 56(d).

## V. <u>Liberty's Motion on the Third and Fourth Causes of Action Should Be Denied</u>

### Liberty's Failure to Provide Plan Documents

Defendant contends that Plaintiff's third count must fail because there is no private cause of action. As Plaintiff argued in Opposition to Defendant's initial Motion to Dismiss, the court need not tackle the private right of action question. Liberty failed to comply with 29 U.S.C. § 1132, which requires the production of plan documents, as well as 29 C.F.R. § 2560, which requires "fair review" documents. Counsel for Defendant has been requesting these documents,

and informing Liberty of its obligations, since before litigation was filed. See Ex. D to Winters Affidavit. Even today Liberty has not produced all plan documents. Winters Affidavit ¶ 9.

Under 29 U.S.C. Section 1132, a plan participant or beneficiary like Mr. Turner may also bring a civil action for a plan administrator's "refusal to supply requested information." 29 U.S.C. § 1132(a) (creating a private right of action); 29 U.S.C. § 1132(c) (discussing the obligation to supply requested information). The cause of action rises whenever administrators refuse to furnish, upon request, "a copy of the latest updated summary [] plan description and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Elsewhere, ERISA adds that "the plan description and summary plan description" shall include, among other things, "the plan's requirements respecting eligibility for participation and benefits" and "circumstances which may result in disqualification ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). If a plan administrator fails to comply with these requirements, the district court has discretion to impose a penalty of up to $110 per day. 29 U.S.C § 1132(c)(1)(B); 29 C.F.R. § 2560.502c-1.

Importantly, as explained by *N.R. v. Raytheon Co*., 24 F.4th 740, 752 (1st Cir. 2022); 29 U.S.C. § 1132(a)(1)(A) "§ 1132(a)(1)(A) authorizes a plan participant or beneficiary to bring a civil action against a plan administrator who violates § 1132(c)(1)(B), which provides for damages for an administrator who (circularly) 'fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary.'"

The documents Plaintiff contends Defendant failed to provide are the types of documents this subchapter of ERISA states specifically must be produced. For example, the language of

subsection (h)(2)(iii) “unambiguously requires that all documents relevant to a claim for benefits be provided to the claimant.” *Jette v. United of Omaha Life Ins. Co*., 18 F.4th 18, 27-28 (1st Cir. 2021). *Jette* stated that the scope of documents that must be produced is broad, and is not limited to documents used to make the initial benefit determination. *Id*.

Because the administrator here failed to provide documents required to be provided under ERISA, Mr. Turner is authorized, by the plain language of the statute and under current First Circuit case law, to bring a civil action against Liberty and seek damages as outlined in the statute.

**A. Defendant’s Motion as to Count IV Should be Denied**

Liberty understands all too well from the Moyle case that “Summary Plan Descriptions must contain a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery… of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide.” *Moyle*, supra, at 962 (internal quotation marks omitted). “The regulation also requires Liberty Mutual to state which benefits Appellants would be denied based on their reasonable expectations.” *Id.* at fn. 7, citing 29 C.F.R. § 2520.102-3(1). Also, 29 C.F.R. § 2520.102-2(a) requires the Summary Plan description to be “written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan participants and beneficiaries of their rights and obligations under the plan.” *Id.*

Here, Mr. Turner and his colleagues had the reasonable expectation that Liberty would provide full past service credit for the Safeco years because that is what Liberty told them, repeatedly orally and in writing. This was also how Liberty treated other retirees who came from merged companies. And such combined treatment would also come naturally from the way Liberty chose to actually combine Safeco- by way of merger with no functional change or

transition to operations, branding or reporting structure. The SPDs were drafted in a manner sufficient to correct the misunderstanding that resulted from Liberty's misrepresentations and did not disclose the truth about how Liberty really intended to calculate medical benefits upon retirement. *Cf. Moyle, supra*, at 963. ("Excluding explicit statements about benefits accrual was a material omission that Liberty Mutual should have clearly disclosed, especially since it had the opportunity to do so in its Summary Plan Descriptions"). The Court here, despite granting the (a)(1)(B) claim never found that there was an actual disclaimer of the vested Safeco benefits, i.e., the Court declined to find that the February 2019 SPD (the version of the SPD that did include such a disclaimer) applied. See ECF No. 91, at p. 29, et seq.

Here Liberty's omissions again caused damage to its retirees, including Mr. Turner. To summarize, once discovery is allowed to commence, Mr. Turner will establish his reasonable expectation regarding his prior service credit and his benefits, which obligated Liberty to disclose any contrary information expressly and plainly in its SPDs, which Liberty failed to do to Mr. Turner's detriment. At worse, questions of fact persist that should prevent the granting of Liberty's motion as to this count.

## VI. CONCLUSION

No discovery has yet been completed related to the allegations of Plaintiff's Second, Third and Fourth Causes of action. Mr. Turner's (a)(3) claim alleges a breach of fiduciary duty related to Liberty's misrepresentations to Mr. Turner, and others, regarding the past service credit he would receive related to his time at Safeco prior to Liberty's acquisition of it. This claim is not relitigating the now dismissed (a)(1)(B) claim. Because no discovery has been completed on these issues, questions of fact remain prohibiting the granting of Liberty's motion. Mr. Turner respectfully requests the Court deny the motion, and allow discovery to, finally, move forward on these issues.

DATED: April 5, 2023

/s/Jack B. Winters, Jr.
Jack B. Winters, Jr., *Pro Hac Vice*
Sarah Ball, *Pro Hac Vice*
WINTERS & ASSOCIATES
8489 La Mesa Blvd.
La Mesa, CA 91942
Tel (619) 234-9000
Fax (619) 750-0413
jackbwinters@earthlink.net
sball@einsurelaw.com

NICHOLAS & TOMASEVIC, LLP
Craig M. Nicholas, *Pro Hac Vice*
Alex Tomasevic, *Pro Hac Vice*
225 Broadway, 19th Fl.
San Diego, CA 92101
Tel (619) 325-0492
Fax (619) 325-0496
cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org

GORDON E. MEYER & ASSOCIATES, PC
Gordon E. Meyer (MA BBO 561791)
8 Winchester St.
Boston, MA 02116
Tel (617) 482-2377
Fax (617) 482-0669
Email: gordon@gmeyerlaw.com

Attorneys for Plaintiff
THOMAS TURNER, an individual, on behalf of himself and others similarly situated

**CERTIFICATE OF SERVICE**

I certify that this document, filed through the Court's ECF system, will be sent electronically to the registered participants in this matter as identified on the Notice of Electronic Filing.

DATED: April 5, 2023

/s/Jack B. Winters, Jr.

Jack B. Winters, Jr. (CA SBN 82998)
WINTERS & ASSOCIATES
8489 La Mesa Blvd.
La Mesa, CA 91942
Tel (619) 234-9000
Fax (619) 750-0413
jackbwinters@earthlink.net

NICHOLAS & TOMASEVIC, LLP
Craig M. Nicholas (CA SBN 178444)
Alex Tomasevic (CA SBN 245598)
225 Broadway, 19th Fl.
San Diego, CA 92101
Tel (619) 325-0492
Fax (619) 325-0496
cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org

GORDON E. MEYER & ASSOCIATES, PC
Gordon E. Meyer (MA BBO 561791)
8 Winchester St.
Boston, MA 02116
Tel (617) 482-2377
Fax (617) 482-0669
Email: gordon@gmeyerlaw.com

Attorneys for Plaintiff
THOMAS TURNER, an individual, on behalf of himself and others similarly situated