UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ――――――――――――――――――――――――　）<br>THOMAS TURNER, an individual, on　）<br>behalf of himself and others similarly　）<br>situated,　）<br>　）<br>　　　Plaintiff,　）<br>　）<br>　　v.　）<br>　）<br>LIBERTY MUTUAL RETIREMENT　）<br>BENEFIT PLAN; LIBERTY MUTUAL　）<br>MEDICAL PLAN; LIBERTY MUTUAL　）<br>RETIREMENT BENEFIT PLAN　）<br>RETIREMENT BOARD; LIBERTY　）<br>MUTUAL GROUP INC.; LIBERTY　）<br>MUTUAL INSURANCE COMPANY;　）<br>and DOES 1-50, inclusive,　）<br>　）<br>　　　Defendants.　）<br>――――――――――――――――――――――――　） | Civil Action No.<br>20-11530-FDS |

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON COUNTS 2-4

SAYLOR, C.J.

This is an action arising under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff Thomas Turner contends that defendants Liberty

Mutual Retirement Benefit Plan, Liberty Mutual Medical Plan, Liberty Mutual Retirement

Benefit Plan Retirement Board, Liberty Mutual Group Inc., and Liberty Mutual Insurance

Company (together, "Liberty Mutual") incorrectly calculated his cost-share obligations for his

post-retirement medical benefits. He further alleges that Liberty Mutual misrepresented the

terms of the benefit plan, failed to provide him with a "full and fair review" of his claim for

benefits, and failed to adequately disclose limitations in the plan documents.

The Court previously granted Liberty Mutual's motion for summary judgment on Count 1, which sought a determination of plan terms under § 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B). Specifically, the Court concluded that Turner's post-retirement medical benefit was not a vested benefit, and that the unambiguous terms of the January 2019 Summary Plan Description state that the plan does not provide cost-sharing credit for his years working with Safeco Insurance Company, a company acquired by Liberty Mutual.

Liberty Mutual has now moved for summary judgment on the remaining claims: equitable relief under § 502(a)(3); failure to provide plan documents and a "reasonable opportunity for full and fair review" as required under 29 C.F.R. § 2560.503-1; and failure to clearly disclose plan limitations under 29 C.F.R. §§ 2520.102-2 and 2520.102-3.

In substance, the principal dispute may be characterized as follows. The Liberty Mutual benefit plan at issue does not provide credit to Turner for his years working at Safeco. That provision of the plan, as the Court has previously held, is unambiguous. Turner nonetheless alleges that Liberty Mutual representatives misled him, by falsely representing that he would receive such credit, and that he relied on those misrepresentations to his detriment. The principal question is whether ERISA permits the assertion of such a claim under the circumstances.

For the reasons set forth below, the answer to that question is "possibly." As a general matter, oral statements by employees of plan sponsors cannot serve to modify a plan or interpret it in ways that contradict the plan. Nonetheless, plan sponsors are fiduciaries, and there may be circumstances—albeit very narrowly circumscribed—in which a beneficiary might be found to have reasonably relied upon a misrepresentation by a sponsor as to the availability of a benefit, such that equitable relief is appropriate. At least two circuits have so held, in the context of specific and unique factual scenarios.

2

Here, because discovery has not taken place as to the alleged misrepresentations, and the context in which they were made, those specific facts are not yet before the Court.  Under the circumstances, the Court has concluded that resolution of the issue should await, at a minimum, a fully developed factual record.  Accordingly, and for the following reasons, the motion for summary judgment as to the claim for equitable relief will be denied.  However, the claims for denial of a "full and fair review" and failure to disclose plan limitations are foreclosed by the Court's findings as to Count 1.  Therefore, summary judgment as to those claims will be granted.

## I.   <u>Background</u>

The facts are set forth in greater detail in the Memorandum and Order of the Court on defendants' motion for summary judgment as to Count 1, dated August 30, 2022.  Facts relevant to the current motion are recapitulated here.

### A.   <u>Factual Background</u>

Thomas Turner is a former employee of Safeco Insurance Company and Liberty Mutual Insurance Company.  He was hired by Safeco in 1980 and continued to work for Safeco following its acquisition by Liberty Mutual in 2008.  (Dkt. No. 115 ("Turner Aff.") ¶¶ 2-3).  He is a participant in Liberty Mutual's retirement and medical benefit plans.  (Compl. ¶ 7).

Liberty Mutual Insurance Company is a Massachusetts insurance company that sponsors various benefit plans for its employees.  (*See id*. ¶¶ 8-12).  The employee benefit plans offered by Liberty Mutual are subject to the provisions of ERISA, 29 U.S.C. § 1001 *et seq*.  (*See id.*).

The Liberty Mutual Retiree Medical Plan ("the Plan"), as restated in January 2013, provides former Liberty Mutual employees with medical benefits after they retire from the company.  (ECF No. 79, Ex. 1 ("Retiree Medical Plan") at 1).  The Plan consists of the terms of the plan itself, as well as a Summary Plan Description, which is periodically amended, and attached HMO documents.  (*Id.* at 2-3).

3

In 2008, Liberty Mutual acquired Safeco.  (Turner Aff. ¶ 2).  As a result of that acquisition, Liberty Mutual sought to amend its benefit plans to include Safeco employees who were transferring to Liberty Mutual.  (ECF No. 84, Ex. Q ("2008 Proposed Benefit Actions") at 1).  As part of the transition, Liberty Mutual published a pamphlet informing transitioning employees that they would participate in Liberty Mutual benefit programs "[e]ffective January 1, 2009," and that their Safeco service would be counted for purposes of benefit eligibility, but not for cost-sharing.  (ECF No. 79, Ex. 14 ("Benefits Transition Pamphlet")).  Notwithstanding that language, immediately following the merger, the terms of Liberty Mutual's medical plan appeared to entitle specific Safeco employees who had been entitled to the Safeco retirement benefit before the acquisition by Liberty Mutual to receive cost-sharing credit for Safeco service until the time that the Safeco benefit had been frozen.  (ECF No. 84, Ex. B ("2009 SPD") at B-61 to B-63).

Turner alleges broadly that after the acquisition of Safeco by Liberty Mutual, he was advised repeatedly that he would receive cost-sharing credit for his post-retirement health benefits based on both his pre-merger years of service with Safeco and his time at Liberty Mutual.  (Turner Aff. ¶ 4).  Those conversations apparently took place in telephone calls with the Liberty Mutual Benefits Center.  (*Id.* ¶ 5).  He has not provided specific details concerning those discussions.[1]  He does not remember receiving the "Welcome to Liberty Mutual: An Overview of Liberty Mutual Benefits for Eligible Transitioning Safeco Employees" pamphlet distributed to Safeco employees, which informed Safeco employees that their prior service would not be

---

[1] Discovery was bifurcated in this case, and the initial round was limited to information that would establish whether the January 2019 or February 2019 SPD was in effect.  The court stayed further discovery pending the outcome of this motion.  Plaintiff alleges that he has not yet received responses to discovery requests that might reveal information about the intent of the parties, representations made to Safeco employees during the transition, audio calls between Liberty Mutual and Turner, and other discovery that might shed light on his misrepresentation-based claims.

credited for cost-sharing purposes.  (ECF No. 79, Ex. 11 at 7).  Instead, he appears to have been under the impression that his Safeco years would be counted in part because, according to him, his co-workers who had worked at companies acquired by Liberty Mutual had "received full consideration of their service with the acquired companies as it related to their post-retirement benefit amounts and eligibility."  (Turner Aff. ¶ 22).  Furthermore, benefit statements he received listed his 1980 hire date with Safeco, and included his years with Safeco in the calculation of "years of vested service."  (Dkt. No. 116 ("Winters Aff.") Ex. A).  He alleges that, based in part on his belief that he would receive full credit for his years with Safeco, he turned down opportunities to explore working with other employers.  (Turner Aff. ¶ 8).

At some point around 2017, in anticipation of his retirement, Turner began to inquire about his post-retirement benefits.  (*Id.* ¶ 11).  He apparently was told by a Liberty Mutual benefits representative that he would receive only 12 years of cost-sharing consideration.  (ECF No. 84, Ex. L).  In a letter to Liberty Mutual, he contended that, based on his own interpretation of Plan documents, he was entitled to cost-sharing consideration for 37 years of service—that is, the combined years that he worked for both Safeco and Liberty Mutual.  (*Id.* at 3-4).

Turner alleges that he was told by Liberty Mutual at some point in 2018 that he would need ten years of post-acquisition service "to qualify for cost sharing in the Liberty Medical Plan into retirement."  (Turner Aff. ¶ 15).  Based on those representations, he delayed his retirement, despite having wanted to retire in 2018.  (*Id.* ¶¶ 16, 19).  According to Turner, he "was never told . . . that [his] grandfathered credit would only be available until [he reached] ten years or that [he] would ever have to make [a] choice between using [the grandfathered Safeco or Liberty Mutual benefit] . . . ."  (*Id.*).

On January 4, 2019, Turner announced his plan to retire from Liberty Mutual and

requested information outlining his retirement benefits.  (Turner Aff. ¶ 19).  His request sparked internal discussions at Liberty Mutual concerning the retirement benefits to which former Safeco employees should be entitled—specifically whether, after accruing ten years of service with Liberty Mutual, employees were entitled to choose between their grandfathered Safeco benefit and their newly-earned Liberty Mutual retirement benefit, or whether they were entitled to the Liberty Mutual benefit only.  (*See generally* ECF No. 84, Ex. M ("2019 Emails")).  Liberty Mutual employees acknowledged internally that that question was a "grey area," and that the SPD "is not that explicit."  (*Id.* at 5, 11).  However, they ultimately concluded that once an employee reached ten years of post-merger service with Liberty Mutual, the Safeco benefit was extinguished.  (*Id.* at 2).  Nevertheless, Liberty Mutual acknowledged that Turner had been misinformed on that point, and recommended granting him an exception by allowing him to choose between his Safeco and Liberty Mutual benefits after 10 years of service.  (*Id.* at 19).[2]

The internal communications reflect that Turner continued to be dissatisfied with the calculation of his years of service.  (*Id.* at 13).

Turner retired from Liberty Mutual on May 1, 2019.  (ECF No. 79, Ex. 15 at 1).  On May 14, 2019, he wrote a letter to Liberty Mutual appealing the determination of his post-retirement medical benefits.  (*Id.* at 3-6).  He again requested cost-sharing credit for the entirety of his years of service to both Safeco and Liberty Mutual.  (*Id.*).  On June 10, Thomas Oksanen, Liberty Mutual's Vice President for Corporate Human Resources and Administration, denied the appeal. (*Id.* at 10-12).  Turner then filed a second appeal, which was also denied.  (*Id.* at 13-19).

---

[2] That letter does not appear to be part of the record, so it is unclear whether Turner was eventually provided with that choice.

B.        **Procedural Background**

On August 14, 2020, Turner brought this action against Liberty Mutual on behalf of

himself and others similarly situated.  The complaint asserts four claims.  Count 1 seeks a

determination of Plan terms and a clarification of plaintiff's rights to benefits under 29 U.S.C.

§ 1132(a)(1)(B).  Count 2 seeks equitable relief under § 1132(a)(3).  Count 3 alleges a violation

of 29 C.F.R. § 256.503-1(h)(2)(i) for failure to provide plan documents and a "reasonable

opportunity for full and fair review."  Count 4 alleges a violation of 29 C.F.R. § 2520.102-3(l)

and § 2520.102-2(a) for failure to disclose plan limitations.

On August 30, 2022, the Court granted summary judgment in favor of defendants on

Count 1.  In that decision, the Court concluded that Turner's post-retirement medical benefit was

not a vested benefit, and that the unambiguous terms of the January 2019 SPD did not provide

cost-sharing credit for his years with Safeco.

Liberty Mutual has now moved for summary judgment on the remaining counts.  The

Court has stayed discovery pending the outcome of defendants' motion.

II.    **Standard of Review**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial."  *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822

(1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).  Summary

judgment shall be granted when "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue is

"one that must be decided at trial because the evidence, viewed in the light most flattering to the

nonmovant, would permit a rational factfinder to resolve the issue in favor of either party."

*Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In

evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of

7

the nonmoving party.  *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted).  The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256-57.

## III.    Analysis

Defendants move for summary judgment on Counts 2-4.  The Court concludes that Count 2 is not duplicative of plaintiff's claim for denial of benefits in Count 1, and that further discovery is required to determine whether equitable relief is warranted.  Summary judgment will therefore be denied on Count 2.  The Court also concludes that its ruling on Count 1— specifically, that the plan did not entitle plaintiff to cost-sharing credit for his years of service with both Safeco and Liberty Mutual—warrants dismissal of Counts 3 and 4.

### A.    Count 2:  Equitable Relief Under ERISA § 502(a)(3)

Count 2 is a claim for equitable relief under ERISA § 502(a)(3).  29 U.S.C. § 1132(a)(3). The complaint alleges that defendants misrepresented to plaintiff that he would receive credit for cost-sharing purposes for his time worked with Safeco, and that plaintiff relied upon those representations in continuing his employment with Liberty Mutual, incurring harm in the form of reduced benefits.  Plaintiff seeks either (1) reformation of the plan to provide complete credit for years employed by Safeco, followed by enforcement of the reformed plan under § 502(a)(1)(B); or (2) surcharge in the amount equal to the unpaid benefits.

Defendants move for summary judgment on the ground that plaintiff cannot use § 502(a)(3) to relitigate the same benefits dispute that the Court resolved in Liberty Mutual's favor under § 502(a)(1)(B).

**1.     Relief for Breach of Fiduciary Duty Under § 502(a)(3)**

ERISA sets forth several civil enforcement provisions.  *See* 29 U.S.C. § 1132(a).

Section 502(a)(1)(B) allows a participant or beneficiary to bring suit "to recover benefits due to

him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his

rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The Court has

already concluded that plaintiff cannot recover the benefits he seeks under that provision because

the unambiguous terms of the plan do not entitle him to cost-sharing benefits for his time at

Safeco.

Under § 502(a)(3), a participant, beneficiary, or fiduciary may bring suit "(A) to enjoin

any act or practice which violates any provision of this subchapter or the terms of the plan, or (B)

to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any

provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Plaintiff seeks

equitable relief for breach of fiduciary duty, in violation of ERISA § 404(a).[3]  That section states

that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the

participants and beneficiaries and [] for the exclusive purpose of [] providing benefits to

participants and their beneficiaries . . . ."  29 U.S.C. § 1104(a)(1)(A)(i). [4]  "Lying is inconsistent

with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA."

*Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (quoting *Peoria Union Stock Yards Co.*

*Retirement Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir.1983)); *see also In re*

---

[3] Plaintiff does not cite this provision in the complaint, but his claim is consistent with case law that allows a breach of fiduciary duty claim based upon misrepresentation, and both parties cite to the provision in their briefs.

[4] Under ERISA, an actor "is a fiduciary with respect to a plan to the extent [] he exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  The parties do not appear to dispute that Liberty Mutual is a fiduciary with respect to the plan.

*Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995) (recognizing a duty "not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures"); *Jackson v. Truck Drivers' Union Loc. 42 Health & Welfare Fund*, 933 F. Supp. 1124, 1146 (D. Mass. 1996) (recognizing claim under §502(a)(3) for breach of the duty of candor).

### 2.   Whether the Court's Ruling on Plaintiff's § 502(a)(1)(B) Claim Precludes Relief Under § 502(a)(3)

The principal issue is whether the Court's ruling that defendants do not owe plaintiff the benefits he requests under § 502(a)(1)(B) precludes him from pursuing a claim under § 502(a)(3). Specifically, defendants contend that Count 2 "is really a run-of-the-mill benefits dispute, dressed up in fiduciary duty clothing." (Defs.' Mem. at 16).

In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court held that an individual beneficiary may pursue a claim for breach of fiduciary duty based upon misrepresentation of plan benefits. There, the trial court had found that the administrator of an employee welfare benefit plan had deliberately misled beneficiaries into withdrawing from the plan and transferring to a subsidiary by promising that their benefits would remain secure, despite knowing that the subsidiary was insolvent. *Id.* at 494. Upon review, the Supreme Court concluded that the plan administrator had acted as a fiduciary when it made the misrepresentations, and that it had breached its duty of loyalty to administer the plan "solely in the interest of the participants and beneficiaries" when it "participat[ed] knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense." *Id.* at 503, 506.

The Supreme Court then considered whether § 502(a)(3) authorized the beneficiaries to bring a lawsuit in their individual capacities against the administrator for breach of its fiduciary

obligations. *Id.* at 507.  It concluded that § 502(a)(3) was a "catchall" provision that serves as "a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy," including claims for breach of fiduciary duty. *Id.* at 512. Nevertheless, the Court stated that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515.  That is, a beneficiary could not "repackage his or her 'denial of benefits' claim as a claim for 'breach of fiduciary duty.'" *Id.* at 513.  In the case at hand, however, because the plaintiffs did not qualify for relief under § 502's other provisions, relief under § 502(a)(3) was appropriate. *Id.* at 515.

Following *Varity*, courts in the First Circuit interpreted the decision to mean that "if a plaintiff can pursue benefits under the plan pursuant to [§ 502(a)(1)(B)], there is an adequate remedy under the plan which bars a further remedy under [§ 502(a)(3)]." *LaRocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) (concluding that, after the district court constructively reinstated employees who had been improperly terminated from an ERISA plan, they were not entitled to further equitable relief under § 502(a)(3) because they could recover benefits due under the plan via § 502(a)(1)(B)); *see also Turner v. Fallon Cmty. Health Plan, Inc.*, 127 F.3d 196, 200 (1st Cir. 1997).  Some decisions have concluded that the mere "availability of relief under [§ 502(a)(1)(B)] bars plaintiff's claims under [§ 502(a)(3)], regardless of whether plaintiff ultimately prevails on the [§ 502(a)(1)(B) claim]." *Gammell v. Prudential Ins. Co. of Am.*, 502 F. Supp. 2d 167, 171 (D. Mass. 2007); *Shaffer v. Foster-Miller, Inc.*, 650 F. Supp. 2d 124, 127 (D. Mass. 2009) (same).

The Supreme Court further clarified the scope of relief available under § 502(a)(3) in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).[5]  There, a class of CIGNA employees challenged the adoption of a new pension plan, alleging that CIGNA had changed the plan terms without providing proper notice.  *Id.* at 424.  The district court concluded that CIGNA had intentionally misled its employees, that its descriptions of the new plan were incomplete and inaccurate, and that its actions had violated the written notice obligations under ERISA and likely caused the employees harm.  *Id.* at 431-32.  It then reformed the plan and ordered the plan administrator to enforce the plan as reformed, relying on § 502(a)(1)(B) for authority.  *Id.* at 433.

Upon review, the Supreme Court considered whether § 502(a)(1)(B) authorizes the reformation of plan terms, and concluded that it does not.  *Id.* at 435-38.  Nevertheless, it suggested that the relief imposed by the district court—which it characterized as reformation, equitable estoppel, and surcharge—qualified as "appropriate equitable relief" under § 502(a)(3).  *Id.* at 438-42.  While the section of *Amara* analyzing relief under § 502(a)(3) is arguably *dicta*, most courts have adopted its reasoning in analyzing claims for equitable relief.  *See, e.g.*, *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 182 (4th Cir. 2012) (noting that the court "cannot simply override a legal pronouncement endorsed . . . by a majority of the Supreme Court").

Taken together, *Varity* and *Amara* stand for the principle that plan administrators have a fiduciary duty not to mislead beneficiaries about plan benefits, and that at least in some

---

[5] Defendants contend that *Amara* is inapposite because it involved vested pension benefits; this case deals with welfare benefits, which the Court has found are not vested in plaintiff's case.  However, that distinction was not central to the *Amara* court's decision, and defendants do not explain why it warrants a different outcome here.  Furthermore, while vesting is treated differently in pension cases versus welfare benefit cases, there is no language in § 502(a)(3) or § 404(a) suggesting that equitable relief is available in one case but not the other, or that fiduciary duties apply differently in the two types of cases.  In fact, *Varity* held that an individual cause of action existed under § 502(a)(3) for breach of fiduciary duty based upon misrepresentation of benefits, where the plan at issue was a welfare benefit plan.  516 U.S. at 491-92, 515.

circumstances, such misrepresentation can be remedied by equitable relief under § 502(a)(3), including through reformation and surcharge.[6]

Following *Amara*, courts have generally held that § 502(a)(1)(B) and § 502(a)(3) claims may be pleaded simultaneously as alternative theories of relief, as long as the plan participant does not recover under both provisions. For example, in *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948 (9th Cir. 2016), the complaint alleged that Liberty Mutual represented that employees would receive past service credit for time that they had worked with Golden Eagle, a company that Liberty Mutual was in the process of acquiring. *Id.* at 952. There was evidence that Liberty Mutual representatives made statements to that effect during transition and enrollment meetings. *Id.* at 953-55. However, the plan and SPD available at the time of enrollment did not address past service credit. *Id.* at 955. The plan and SPD were eventually amended to state that employees' past service would be credited solely for the purpose of eligibility, vesting, early retirement, and spousal benefits. *Id.*

The Ninth Circuit upheld the district court's dismissal of the plaintiffs' § 502(a)(1)(B) claim, concluding that it was reasonable to read the plan as excluding service time with the plaintiffs' former employer from benefits accrual. *Id.* at 959. However, it reversed the dismissal of plaintiffs' claim under § 502(a)(3), which the district court had held was a claim for monetary

---

[6] Defendants contend that summary judgment should alternatively be granted because there is no fiduciary duty to pay extra-plan benefits. It relies upon § 404(a)(1)(D), which states that a fiduciary is obligated to discharge his duties "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), as well as two pre-*Amara* cases holding that "ERISA does not impose a fiduciary duty to pay benefits that are excluded under the plan." *Kourinos v. Interstate Brands Corp.*, 324 F. Supp. 2d 105, 108 (D. Me. 2004); *see also Turner v. Fallon Cmty. Health Plan, Inc.*, 127 F.3d 196, 200 (1st Cir. 1997). While it is true that plaintiff cannot seek extra-contractual benefits under § 502(a)(1)(B), plaintiff's claim under § 502(a)(3) seeks relief in accordance with alleged extra-contractual representations. *Varity* explicitly recognized a fiduciary duty not to deliberately mislead plan beneficiaries about the terms of the plan, *see Varity*, 516 U.S. at 506, while *Amara* recognized the equitable power of the court to reform the terms of the plan "in order to remedy [] false or misleading information," and contrasted that remedy "with the power to enforce contracts as written." *Amara*, 563 U.S. at 440. Accordingly, defendants' motion for summary judgment on that basis will be denied.

relief couched as equitable relief.  *Id.* at 960.  Applying *Amara*, the court concluded that, while the plaintiffs could not recover benefits based on enforcement of the plan terms, they could nevertheless seek reformation and surcharge as equitable remedies under § 502(a)(3).  *Id.* at 960. The court reasoned that *Varity* and *Amara* were consistent with the principle that "[§ 502(a)(1)(B)] and [§ 502(a)(3)] claims may proceed simultaneously so long as there is no double recovery."  *Id.* at 961.

Other courts have come to similar conclusions.  *See, e.g.*, *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) ("We do not read *Varity* . . . to stand for the proposition that [a plaintiff] may only plead one cause of action to seek recovery [for an ERISA violation]. Rather, we conclude those cases prohibit *duplicate* recoveries when a more specific section of the statute, such as § [502(a)(1)(B)], provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, § [502(a)(3)]."); *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 133-35 (2d Cir. 2015).  And while the First Circuit has yet to address the issue directly, it has reversed summary judgment for the defendants on a breach of fiduciary duty claim under § 502(a)(3) even after upholding summary judgment on a § 502(a)(1)(B) claim.  *Shields v. United of Omaha Life Ins. Co.*, 50 F.4th 236, 250 n.12 (1st Cir. 2022) (noting that the position that a § 502(a)(3) claim is unavailable if the plaintiff can bring any other claim under ERISA is a "restrictive reading" that the Supreme Court "subsequently rejected in [*Amara*]"); *see also Steve C. v. Blue Cross & Blue Shield of Mass., Inc.*, 450 F. Supp. 3d 48, 61 (D. Mass. 2020) (denying motion to dismiss § 502(a)(3) claim where it was premature to determine whether § 502(a)(1)(B) claim would prevail); *Est. of Smith v. Raytheon Co.*, 573 F. Supp. 3d 487, 502 (D. Mass. 2021) (allowing § 502(a)(3) claim to proceed where there was no remedy under § 502(a)(1)(B), and therefore no danger of duplicative recovery).

Following *Amara* and the cases that have followed, the Court concludes that the claim for breach of fiduciary duty is not duplicative of the claim for denial of benefits.  First, the Court has already dismissed the § 502(a)(1)(B) claim, so there is no possibility of double recovery.  *See Moyle*, 823 F.3d at 961.  Second, Count 2 does not merely "repackage" the claim for denial of benefits under Count 1.  *Varity Corp.*, 516 U.S. at 513.  Although Count 1 refers to the misrepresentation of plan benefits, in essence, it seeks a determination of benefits under the language of the plan.  (Compl. ¶¶ 62-63).  Count 2, on the other hand, alleges that defendants knowingly misrepresented to plaintiff that he would receive credit for his years of employment at Safeco, that plaintiff relied upon those representations in accepting employment with Liberty Mutual, and that as a result, plaintiff suffered an injury in the form of reduced benefits.  (Compl. ¶¶ 66-74).  That is an entirely different theory of harm.  And third, the relief sought is clearly equitable—plaintiff seeks reformation of the plan or surcharge, both of which *Amara* recognized as "appropriate" relief under § 502(a)(3).  *Amara*, 563 U.S. at 440-42; *see also Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 842 (6th Cir. 2007) (concluding that § 502(a)(1)(B) claim was distinct from § 502(a)(3) claim based upon misrepresentation of benefits).

Accordingly, dismissal of the § 502(a)(1)(B) claim does not preclude plaintiff from pursuing a § 502(a)(3) claim.

### 3.    Whether Plaintiff's Claims for Equitable Relief Are Appropriate

The question then becomes whether the particular equitable relief plaintiff seeks is appropriate where the plan terms unambiguously exclude plaintiff from receiving the benefits he alleges he was promised.

a.  **Equitable Estoppel**

In its reply brief, defendants contend that, while plaintiff labels its claim as one for reformation or surcharge, Count 2 is more naturally read as a claim for equitable estoppel.  *See Earl T. Sydney & Sydney Sheet Metal, Inc. v. Sheet Metal Workers' Pension Fund*, 2017 WL 507210, at *11 (D. Mass. Feb. 7, 2017) (finding that the complaint was "essentially a claim for equitable estoppel" when it was based on alleged statements leading the plaintiff to believe he was entitled to certain benefits or treatment under the plan).

To prove a claim for equitable estoppel, the plaintiff must show (1) that the defendant made "a definite misrepresentation of fact" with "reason to believe" that the plaintiff would rely on it, and (2) that the plaintiff did reasonably rely on that misrepresentation to its detriment. *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 782 (1st Cir. 2014) (quoting *Law v. Ernst & Young*, 956 F.2d 364, 368 (1st Cir. 1992)).  Even after *Amara*, the First Circuit has stated that it has "not yet had occasion" to recognize equitable estoppel claims under § 502(a)(3). *Id.* at 782. Nevertheless, cases in the circuit have "assumed that any such claim under ERISA is necessarily limited to statements that *interpret* the plan and cannot extend to statements that would *modify* the plan." *Id.* (emphasis added).  And the First Circuit has concluded that a statement interprets the plan only where a plan term is ambiguous; "if the provision is clear, [] an informal statement in conflict with it is in effect purporting to *modify* the plan term, rendering any reliance on it inherently unreasonable." *Livick v. The Gillette Co.*, 524 F.3d 24, 31 (1st Cir. 2008).  Because the Court has found the plan terms to be unambiguous, plaintiff's reliance on alleged representations contrary to the plan terms is unreasonable.  Therefore, to the extent Count 2 alleges a claim for equitable estoppel, it must fail.

b.     **Reformation**

Even where equitable estoppel is not available, plaintiff may still seek relief in the form of reformation. *See Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 352 (6th Cir. 2018) (concluding that reformation may be available even where employee was not entitled to equitable estoppel because the plan provision was unambiguous). *Amara* indicated that reformation of plan terms was available to remedy "false or misleading information" provided to a plan participant and to "prevent fraud." *Amara*, 563 U.S. at 440.

The First Circuit has not interpreted the scope of reformation under § 502(a)(3) post-*Amara*. However, other circuits that have done so have generally followed federal common-law contract principles. *See Amara v. CIGNA Corp.*, 775 F.3d 510, 525 (2d Cir. 2014) (*Amara IV*); *Amara*, 563 U.S. at 440 (discussing reformation in terms of contract law). Under that approach, "[a] contract may be reformed due to the mutual mistake of both parties, or where one party is mistaken and the other commits fraud or engages in inequitable conduct." *Amara IV*, 775 F.3d at 525; *Earl T. Sydney*, 2017 WL 507210, at *11 ("Courts typically agree to reform an ERISA plan where there is strong evidence that the plan's language does not reflect the parties' reasonable expectations when they agreed to the plan.") (declining to reform contract in accord with inaccurate pension statements that misled plaintiff to belief that he was accruing credit); 27 WILLISTON ON CONTRACTS § 69:55, at 160 (4th ed. 2010) (reformation is available in a situation where "owing to the fraud of one of the parties and mistake of the other [the writing] fails to express the agreement at which they arrived").

Here, plaintiff does not allege mutual mistake; instead, he contends that he was misled about the availability of benefits under the SPD by Liberty Mutual representatives. Plaintiff must therefore show by clear and convincing evidence that defendants committed fraud or similarly inequitable conduct, and that such conduct caused him to be mistaken. *Amara IV*, 775

17

F.3d at 526 (citing RESTATEMENT (SECOND) OF CONTRACTS § 166; 2 DOBBS, LAW OF REMEDIES § 11.6(1) at 743).  Fraud in the context of equitable reformation does not require a show of intent to deceive.  *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 348 (6th Cir. 2018).

Following *Amara*, several circuits have allowed claims for reformation to proceed notwithstanding the unavailability of relief under § 501(a)(1)(B).  For example, the Second Circuit on remand from the Supreme Court in *Amara*, determined that inaccurate descriptions of the terms of the plan—made through a newsletter, summary of modifications, individual compensation reports, and SPDs—and efforts to conceal a reduction in benefits supported the remedy of reformation.  *Amara IV*, 775 F.3d at 531; *see also Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 747 (2d Cir. 2019) (allowing reformation where the terms of the plan violated ERISA, even in the absence of mistake or fraud).  Similarly, the Sixth Circuit reversed a district court's dismissal of a claim for reformation where the SPD failed to state relevant exclusions included in the plan document, the beneficiary lacked access to the plan document, and was repeatedly directed to rely on the SPD.  *Pearce*, 893 F.3d at 348.

The Ninth Circuit, however, has reached opposite conclusions.  In *Moyle*, the court reversed summary judgment on a misrepresentation-based § 502(a)(3) claim, even though parties were not entitled to past service credit under the terms of the plan.  823 F.3d at 965.  In *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945 (9th Cir. 2014), however, the court concluded that reformation was unavailable where the plan terms accurately reflected that an employee was not eligible to participate in the plan, and therefore inaccurate pension statements did not prevent him from receiving any benefit to which he was entitled.  *Id.* at 961-62.

In short, two circuits have concluded that reformation may be available under § 502(a)(3) where a plan beneficiary reasonably relied upon misrepresentations of plan terms and was

18

mistaken as to the actual contents.  That may be true, at least in some circumstances, even where the plan terms are unambiguous.

Here, whether such relief should be granted turns, at a minimum, on a fact-based inquiry focusing on the precise nature of the alleged misrepresentations.  Plaintiff alleges that he was misled by Liberty Mutual representatives as to whether he would receive credit for cost-sharing purposes for his time with Safeco, and that he reasonably relied on those misrepresentations. Discovery has so far been limited to the question of what SPD was in effect.  Under the circumstances, the Court concludes that discovery as to the actual representations made by defendants to plaintiff and other employees, and the context in which they were made, is appropriate before the issue can be properly resolved.

Summary judgment as to the reformation component of Count 2 will therefore be denied.

### c.    Surcharge

The third equitable remedy identified in *Amara*, surcharge, "provide[s] relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Amara*, 563 U.S. at 441.  "[A] fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm—proved (under the default rule for civil cases) by a preponderance of the evidence." *Id.* at 444.  "That actual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents." *Id.*

Again, the First Circuit has not addressed the scope of the surcharge remedy, but other circuits have held that monetary compensation in the form of "make-whole relief" is recoverable under a theory of surcharge.  *See Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 451 (5th Cir. 2013) (plan beneficiary could pursue claim for surcharge where he relied on employer's misrepresentations that he was eligible for plan benefits for life in deciding to retire early);

*McCravy v. Metropolitan Life Insurance Co.*, 690 F.3d 176, 181-82 (surcharge available for breach of fiduciary duty where insurer accepted life insurance premiums for coverage that the insured was ineligible for under the terms of the plan, leading them not to seek alternative coverage); *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 882 (7th Cir. 2013) (plaintiff could seek make-whole money damages if she could prove that defendant breached its fiduciary duty by representing that her surgery was covered, and that the breach caused her damages).

Plaintiff seeks surcharge "in the amount equal to the unpaid benefits (or equal to the increased costs incurred or that will be incurred by Plaintiff)" for his time with Safeco.  Again, because discovery has not yet been conducted on the issue of harm or defendants' alleged breach of fiduciary duty, summary judgment as to the surcharge component of Count 2 will be denied.

**B.**   **Count 3:  Violation of 29 C.F.R. § 2560.503-1(h)(2)**

Count 3 alleges a violation of 29 C.F.R. § 2560.503-1(h)(2) for failure to provide a complete copy of the administrative record, and failure to provide "a reasonable opportunity for a full and fair review of a claim and adverse benefit determination."

Section 503 of ERISA establishes procedural requirements governing how an ERISA plan must process benefits claims.  It provides that "any participant whose claim for benefits has been denied" shall be afforded a reasonable opportunity "for a full and fair review . . . of the decision denying the claim."  29 U.S.C. § 1133(2).  In turn, the implementing regulations require that every employee benefit plan establish and maintain a procedure by which a claimant may appeal an adverse benefit determination, "under which there will be a full and fair review of the claim."  29 C.F.R. § 2560.503-1(h)(1).  To provide a full and fair review, those claims procedures must provide a claimant "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."  *Id.* § 2560.503-1(h)(2)(iii).  A document, record, or other information is considered

20

"relevant" to a claim if it "(i) [w]as relied upon in making the benefit determination; [or] (ii) [w]as submitted, considered, or generated in the course of making the benefit determination, without regard to whether [it] was relied upon in making the benefit determination . . . ." *Id.* § 2560.503-1(m)(8).

Plaintiff submitted a claim for benefits under the Plan, which defendants denied. Plaintiff then appealed that denial. The complaint alleges that defendants failed to provide certain documents in the administrative record upon request, particularly documents related to whether individuals previously employed by Safeco would receive credit for their years of employment. The alleged relevant documents include those reflecting the investigation into plaintiff's claims, the interpretation of the Plan under the facts of plaintiff's case by defendants' legal counsel, and documents referring to the need to update the SPDs in 2019. (Compl. ¶ 79).

Defendants have moved for summary judgment on Count 3 on the basis that neither § 503 nor 29 C.F.R. § 2560.503-1 give rise to a private cause of action. Courts in other circuits have held that to be the case. *See, e.g.*, *Shah v. Horizon Blue Cross Blue Shield*, 2016 WL 4499551, at *12 (D.N.J. Aug. 25, 2016); *Greer v. Operating Engineers Local 324 Pension Fund*, 2017 WL 3891785, at *3 (E.D. Mich. Sept. 6, 2017); *Medicomp, Inc. v. UnitedHealthcare Ins. Co.*, 2012 WL 12899022, at *3 (M.D. Fla. Nov. 16, 2012); *see also Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan*, 854 F.2d 1516, 1532 (3d Cir. 1988) (noting "the general principle that an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy"). Others have indicated that "while complying with § 503 may be 'probative of whether the decision to deny benefits was arbitrary and capricious,' § 503 itself does not provide an independent cause of action." *Cohen v. Horizon Blue Cross Blue*

*Shield of New Jersey*, 2013 WL 5780815, at *9 (D.N.J. Oct. 25, 2013) (quoting *Miller v.*

*American Airlines, Inc.*, 632 F.3d 837, 851 (3d Cir. 2011)).

Plaintiff responds that § 502(c)(2) provides a cause of action for participants or

beneficiaries to bring suit to remedy a plan administrator's "refusal to supply requested

information."  29 U.S.C. §§ 1132(a)(1)(A), 1132(c).  That section refers to the failure "to comply

with a request for any information which such administrator is required by this subchapter to

furnish to a participant or beneficiary."  *Id.* § 1132(c)(1)(B).  However, "[i]t is well established

that a violation of [§ 503] and its implementing regulations does not trigger monetary sanctions

under [§ 502(c)]."  *Medina v. Metropolitan Life Ins. Co.*, 588 F.3d 41, 48 (1st Cir. 2009).  *See*

*also Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406 (7th Cir. 1996) (concluding that

is so because § 502(c)(2) imposes sanctions on the "plan administrator," while § 503 imposes

requirements on the "plan," and because the language in § 502(c)(2) authorizing sanctions for

breach of duties under "this subchapter" does not include regulations promulgated pursuant to

§ 503).[7]

The First Circuit has not directly addressed the issue of whether a private cause of action

exists to pursue a claim under § 503.[8]  In any case, it is not necessary for the Court to resolve

that issue here, because the "typical remedy" for a violation of the full and fair review provision

is remand to the plan administrator.  *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d

---

[7] While plaintiff in its opposition memorandum refers to other provisions of ERISA that impose disclosure obligations as forming the basis of its suit under § 502(c)(2), including 29 U.S.C. § 1024(b)(4) and 29 U.S.C. § 1022(b), those provisions were not mentioned in the complaint.

[8] In *Jette v. United of Omaha Life Ins. Co.*, 18 F.4th 18 (1st Cir. 2021), the First Circuit did address whether the administrator of a long-term disability plan failed to provide the plaintiff with a "full and fair review" of the denial of her claim for benefits by withholding a copy of a medical report.  *Id.* at 20.  However, that claim appears to have been brought as a ground for relief under § 502(a)(1)(B), rather than as an independent cause of action.  *Id.* at 20.

Cir. 2008); *see also Jette v. United of Omaha Life Ins. Co.*, 18 F.4th 18 (1st Cir. 2021) (declining

to review an administrator's substantive benefits determination after finding it had violated

§ 503, and instead remanding the case to the administrative stage so that the participant could

submit a written response to a withheld document).  And "[w]here the resolution of a claimant's

underlying claim is clear, [] remand is unnecessary."  *Hamilton v. Mecca, Inc.*, 930 F. Supp.

1540, 1552 (S.D. Ga. 1996) (concluding that plan participant did not receive proper notice under

§ 503, but declining to remand because there was "no question that [he] should have received

coverage" under the policy); *Krauss*, 517 F.3d at 630 (concluding that remand was futile, and

therefore unnecessary, where the initial benefits determination appropriately implemented the

plan).  *Cf. Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 159 (4th Cir. 1993)

(concluding remand was unnecessary where evidence clearly showed that plan administrator

abused its discretion).

Here, the Court has already determined that defendants interpreted the Plan reasonably in

concluding that plaintiff's time with Safeco would not count towards his cost-share obligations

under Liberty Mutual's retirement plan.  Were the Court to remand the case to the administrative

stage, defendants would have no choice but to come to the same conclusion.  Similarly, given the

Court's conclusion that the Plan was unambiguous, the extrinsic evidence that plaintiff seeks

would not have changed the outcome of his benefits determination.  Therefore, even if the Court

found that § 503's procedural requirements were violated, remand would be futile.

Accordingly, defendants' motion for summary judgment on Count 3 will be granted.

C.    **Count 4:  Violations of 29 C.F.R. § 2520.102-3(l) and**
      **29 C.F.R. § 2520.102-2(a)**

Count 4 alleges that the SPDs failed to adequately disclose plan limitations—including how prior service with Safeco would be used to calculate benefits—as required by C.F.R. §§ 2520.102-3(l) and 2520.102-2(a).

ERISA § 102 requires, in relevant part, that the SPD "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  29 U.S.C. § 1022(a).  The implementing regulations require that SPDs include "a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits."  29 C.F.R. § 2520.102-3(l).  The SPD must be written "in a manner calculated to be understood by the average plan participant," and "[a]ny description of exception, limitations, reductions, and other restrictions of plan benefits" must be described no less prominently than the description of plan benefits.  *Id.* § 2520.102-2(a)-(b).

The Court's conclusion that the SPD unambiguously bars Safeco employees from receiving cost-sharing credit for all years of prior service forecloses plaintiff's argument that an average plan participant would not understand its meaning.  *See Martinez v. Sun Life Assurance Co. of Canada*, 948 F.3d 62, 73 (1st Cir. 2020) (stating that the court's determination that the plan was unambiguous was based on the judgment that an average plan participant would interpret the plan the same way).  *But see Moyle*, 823 F.3d at 963 (concluding that SPD was not written in a comprehensible manner because it omitted statements on how service credit would be calculated).  And to the extent that plaintiff formed expectations to the contrary, those

expectations were apparently based upon representations by Liberty Mutual or other extra-

contractual information, not "on the basis of the description of benefits." 29 C.F.R. § 2520.102-

3(l). "[R]elief [under § 102(a)] is only appropriate if the participant demonstrates significant or

reasonable reliance on the Plan Summary." *Mauser v. Raytheon Co. Pension Plan for Salaried

Emps.*, 239 F.3d 51, 55 (1st Cir. 2001) (declining to address the adequacy of plan documents

because plaintiff did not significantly or reasonably rely on the plan summary);[9] *Moyle*, 823 F.3d

at 964 (concluding that claimants could not prove reliance on the plan documents because their

decision to remain with Liberty Mutual was based upon oral statements by plan representatives,

and not the SPDs themselves).  Therefore, plaintiff cannot prevail on a claim that the SPDs did

not adequately disclose the limitations upon benefits.

Accordingly, defendants' motion for summary judgment on Count 4 will be granted.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the motion for summary judgment of defendants Liberty

Mutual Retirement Benefit Plan, Liberty Mutual Medical Plan, Liberty Mutual Retirement

Benefit Plan Retirement Board, Liberty Mutual Group Inc., and Liberty Mutual Insurance

Company is DENIED as to Count 2 and GRANTED as to Counts 3 and 4.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: August 11, 2023                                    Chief Judge, United States District Court

---

[9] First Circuit precedent is somewhat unclear as to whether a claimant must show prejudice in order to recover for a faulty plan description.  In *Govoni v. Bricklayers, Masons & Plasterers Int'l Union of Am., Loc. No. 5 Pension Fund*, 732 F.2d 250, 252 (1st Cir. 1984), the court stated that the plaintiff "must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description" in order to secure relief.  *Id.* at 252. *Mauser* referred to both "significant or reasonable reliance" and "measurable prejudice to [the claimant]."  *Mauser*, 238 F.3d at 56.  Regardless of the standard employed, the outcome is the same here because there is no dispute—after the Court's ruling on Count 1—that plaintiff could have reasonably expected to receive cost sharing credit for his years with Safeco based upon the plan documents.