# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS TURNER, an individual, on behalf of himself and others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL MEDICAL PLAN; LIBERTY MUTUAL RETIREMENT BENEFIT PLAN RETIREMENT BOARD; LIBERTY MUTUAL GROUP, INC., a Massachusetts company; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company; and DOES 1 through 50, inclusive,<br><br>              Defendants. | Case No. 1:20-cv-11530-FDS |

## PLAINTIFF THOMAS TURNER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL

Gordon E. Meyer (MA BBO 561791)
Gordon E. Meyer & Associates
8 Winchester Street
Boston, Massachusetts 02116
Email: gordon@gmeyerlaw.com
Tel: (617) 482-2377

SINGLETON SCHREIBER, LLP
MICHELLE M. MEYERS,
SB236387
mmeyers@singletonschreiber.com
1414 K Street, Suite 470
Sacramento, California 95814
Tel (916) 248-8478
Fax (619) 255-1515

NICHOLAS & TOMASEVIC, LLP
Craig M. Nicholas, *Pro Hac Vice*
Alex Tomasevic, *Pro Hac Vice*
225 Broadway, 19th Floor
San Diego, California 92101
Tel (619) 325-0492
Fax (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

WINTERS & ASSOCIATES
Jack B. Winters, Jr., *Pro Hac Vice*
Sarah Ball, *Pro Hac Vice*
8489 La Mesa Blvd.
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
jwinters@singletonschreiber.com
sball@einsurelaw.com

Counsel for Plaintiff THOMAS TURNER

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. 2

I.       FACTUAL SUMMARY ........................................................................... 5

II.      PROCEDURAL HISTORY ..................................................................... 7

III.     REMAINING DISCOVERY DISPUTES ............................................... 9

       A.    Limitations of Discovery Regarding Oral Discovery ............................ 11

       B.    Relevancy ................................................................................................. 13

       C.    Documents Withheld on the Basis of Attorney Client Privilege ........... 15

IV.     CONCLUSION...................................................................................... 16

CERTIFICATE OF SERVICE ................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Hill v. State St. Corp.*, 2013 U.S. Dist. LEXIS 181168, at *13-14

    (D. Mass. Dec. 30, 2013)..................................................................................16

*Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 47-48 (D.

    Mass. 2007) ........................................................................................................16

*Tebo v. Sedgwick Claims Mgmt. Servs.* Civil Action No. 09-

    40068-FDS, 2010 U.S. Dist. LEXIS 50834, at *5-6 (D.

    Mass. May 20, 2010) .........................................................................................16

**Statutes**

29 C.F.R. § 2520.102-2(a)......................................................................................7

29 C.F.R. § 2520.10-3(I).........................................................................................7

29 C.F.R. § 2560.503-1(h)(2)(i) .............................................................................7

29 U.S.C. § 1132(a)(1)(B) ......................................................................................7

29 U.S.C. § 1132(a)(3) ...........................................................................................7

Plaintiff Thomas Turner, an individual, on behalf of himself and others similarly situated, by and through his attorneys, moves this Court, pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), for full and complete responses to Plaintiff's Request for Production of Documents as outlined below, and for production of all communications from Defendant's in-house counsel relative to the provision of Safeco Retirees benefits between 2008 and 2019 subject to the fiduciary exception or for an in-camera inspection of documents Defendants contend have been properly withheld or redacted under claims of privilege. Consistent with the Magistrate's Order making such communications discoverable for the 2019 changes in benefits, Plaintiff submits that similar communications for previous manifestations of such issues should be equally available for review and consideration, as they are to Defendants. See ECF Nos. 150, 153.

On April 5, 2024, the parties filed a Joint Statement regarding a proposal to deal with remaining discovery issues, as ordered by the Court. See ECF No. 156. In that document, the parties outlined a proposed schedule for briefing remaining discovery issues. To date, the Court has not yet granted the proposed schedule, but Plaintiff files this motion pursuant to that schedule. Following a prior motion to compel and order on same (see ECF Nos. 150, 153), the issues discussed below remain in dispute.

## I. FACTUAL SUMMARY

Plaintiff Thomas Turner is a former employee of Liberty Mutual Life Insurance ("Liberty Mutual"). In 2009, Liberty Mutual acquired Safeco Insurance, and former employees of Safeco—like Plaintiff—became employees of Liberty Mutual. At that time, he and others became potential recipients of retiree benefits upon retirement and in the case of cost sharing after ten years of service with Liberty Mutal. In 2017, Mr. Turner began seeking information regarding his right to employer contributions towards payment of his retirement health benefits, both for himself and his wife, following his expected retirement in either 2018 or 2019. Mr. Turner had extensive conversations with Liberty Mutual throughout 2017 and 2018 and into 2019. During this time, after receiving responses he did not believe were consistent with the terms of the retirement plans, Mr. Turner requested mediation or some form of appeal of the calculations he was being provided. Defendants informed him he could not appeal the decision until he was retired and sought benefits officially.

Prior to this time, from 2008 and 2009, Mr. Turner, and other Safeco employees, were advised of their potential retirement benefits from annual SPD [Summary Plan Descriptions] as well as other communications. During this time and based then on his discussions with Liberty personnel, he understood that as a special grandfathered employee, based on his years of service under a previous Safeco Plan,

he would be given full credit from his years of service in addition to the ten years or more that he would earn if he stayed ten years. As repeatedly expressed in different ways, as a grandfathered Safeco employee, his years of service at Safeco, up to 2004 when the Plan was ended, would "count towards" his accumulated Liberty years of service. The manner and fashion that these benefits would be calculated varied from year to year from 2009 through 2018.

Mr. Turner's retirement finally occurred in May of 2019. When he presented his official request for contribution, as a result of some alleged amendment to the Plan, suddenly a new and different version of the SPD was presented and used as a basis to calculate his benefits. This version of the SPD, while still providing contributions above what Defendants contend, included a radical change in the SPD language upon which Liberty now relies. The previous version of the SPD clearly supports Mr. Turner's view and, at the very least, is ambiguous in Mr. Turner's favor. Plaintiff's claims are based on a number of different theories and Plaintiff contends that a proper evaluation of which SPD was in effect at the time of his retirement requires an evaluation of the entire history of the parties' relationship. More specifically, discovery regarding the entire Retirement Plan, consisting generally of a Pension Plan and a supporting and related Welfare Benefit Plan (Health Plan), is necessary to determine which SPD controls. Plaintiff contends that amendments made to the 2019 Plan were (1) made in response to inquiries made by Mr. Turner; and (2) were not

made in accordance with the amendment provisions set out in the Plan. As such, information related to the prior versions of the Plan is relevant to which Plan was in effect at the time Mr. Turner retired and is, as such, within the scope of discovery, as discussed in more detail below.

It is undisputed that communications from ERISA counsel exist regarding these changes, and it is undisputed that Defendants has always had full access to this information and been able to cherry pick from it to support its various defenses. But with the establishment that attorney review and comments of these changes are not privileged and the obvious fact that substantial written documents evidence the full nature and extent of communications not only to Mr. Turner but other Safeco employees, this motion seeks the same access.

## II. PROCEDURAL HISTORY

Plaintiff filed this putative class action on August 14, 2020. ECF No. 1. The Complaint involves an ERISA welfare benefit plan and a retirement plan and alleges claims for Determination of Terms of Plain Clarification of Rights under 29 U.S.C. § 1132(a)(1)(B); to Obtain Equitable Relief Under 29 U.S.C. § 1132(a)(3); Violation of 29 C.F.R. § 2560.503-1(h)(2)(i); and Violation of 29 C.F.R. § 2520.10-3(I) and 29 C.F.R. § 2520.102-2(a). In short, Mr. Turner alleges that Defendants, his previous employer, the benefit plans under which he was a participant, and their administrator

promised him and his colleagues certain retirement medical benefits that they have now been denied. Mr. Turner further alleges that Defendants improperly amended the Plans in place after Mr. Turner raised questions regarding the calculation of benefits and interpretation of certain Plan provisions.

On July 9, 2021, the parties filed a Joint Statement and Proposed Schedule. Today, following extensive motions, Plaintiff's (a)(3) claim remains. See ECF Nos. 91, 122. In attempts to gain the necessary discovery to resolve the remaining (a)(3) claim, Plaintiff propounded Requests for Production of documents on October 13, 2023, requesting that Defendants produce any communications between themselves and their lawyers regarding any amendments to the SPD between 2008 and 2019. See Exs. A and B to the Affidavit of Jack B. Winters Jr. filed herewith (Winters Affidavit). Defendants have refused to produce or disclose this information.

Following the filing of a Motion to Compel related to other issues, dating back to 2021 and predating the filing of Defendant's Motion for Summary Judgment, Plaintiff's counsel sent a meet-and-confer letter to counsel for Defendant on March 26, 2024, related to the documents that are the subject of this Motion. Ex. C to Winters Affidavit. The timing of the letter was related to a Federal Rule of Civil Procedure 30(b)(6) deposition that took place on March 15, 2024. Winters Affidavit ¶ 2. During this deposition, it became clear that additional documents responsive to the Requests for the Production of Documents existed and had not been produced

or logged on a privilege log. See Ex. 1 to the Affidavit of Jack B. Winters Jr. filed in support of Plaintiff's Motion to Seal. p. 179:11-181:22 (discussing the practice of Defendant of having amendments reviewed).

Following the meet and confer, discovery disputes, as outlined below, remain.

### III.  REMAINING DISCOVERY DISPUTES

Regarding the SPDs between 2008 and 2019, Plaintiff is requesting that Defendants be required to produce to Plaintiff:

1) Merger documents related to the acquisition of Safeco by Liberty Mutual;

2) All pre-litigation attorney-client communications as they relate to Safeco retirees; and

3) Production of documents that reflect on the "grandfathered" benefits offered to former Safeco employees.

In refusing to turn over the requested documents to Plaintiff, Defendants have misread and mischaracterized the situation before this Court. The Court's prior orders on Defendant's Motions for Summary Judgment, particularly those related to Plaintiff's (a)(1)(B) claim, did not reach a final or conclusive determination of whether any SPD's issued prior to 2019 were unambiguous and could not form the basis for an (a)(3) claim as a form of communication intended to mislead and provide an equitable basis for alternative relief. The Court, in finding that the Plan in place at the time of Mr.

Turner's retirement was not ambiguous, did not actually review the ambiguities in previous SPDs throughout the years, nor did the Court close the door on any such discovery into this issue. Rather, to the extent the Court had reviewed prior SPDs, such review was to determine if there was any actual "vesting" of such rights in the SPDs. The Court did not reach any decision in its previous Order regarding the various forms of fiduciary duty violations that occurred against Mr. Turner in the ten years prior to his retirement. Regardless, even unambiguous SPDs and the changes related to them does not preclude the use of the SPD or evidence relative to the fiduciary claims being made here. While the Court's Order did dismiss the (a)(1)(B) portion of this case based on its conclusion that the February 2019 SPD foreclosed the benefits Plaintiff sought, the Court did not in any way, shape, or form limit the potential (a)(3) Claims still outstanding. What Plaintiff is requesting, and what he is entitled to, is information and discovery that pertains to his (a)(3) Claims against Defendants. Information regarding the SPDs between the years of 2008 and 2019 is highly relevant and vital to his allegations that there were fiduciary violations that occurred between 2008 and 2019. Furthermore, there is nothing in this Court's orders that limits Plaintiff's (a)(3) Claim to only oral statements or proof of other communications. Defendants are making this claim to limit discovery due to Plaintiff.

There has been no suggestion that a production of such materials, obviously in the hands of Liberty's counsel for years, could not easily be produced in this case. No

mention of any burden has been raised. Essentially, Plaintiff wants what opposing counsel has, which clearly is not limited to information from 2019.

> A. **Limitations of Discovery Regarding Oral Discovery**

Defendants have argued for a limitation of discovery regarding oral discovery. However, the Court's prior orders do not limit the potential (a)(3) Claims in this case, nor is there any possibility of reading the Plaintiff's Complaint in such a fashion. Plaintiff's Complaint explains in broad terms that Mr. Turner's fiduciary claims are based upon misrepresentations that were both oral and in writing. Paragraphs 40, 68, 79-81, and 86-87 of the Complaint all include specific allegations made by Mr. Turner. See ECF No. 1. Plaintiff's allegations are not limited to oral representations.

Nothing in the Court's Order limits discovery to only oral communications and claims and nothing in the Order allows Defendants to unilaterally decide on what will ultimately be relevant to the issues to be presented to the Court on the (a)(3) Claim. The Court did not place limitations on the kind of discovery that could be conducted, so long as it was directed at misrepresentations made to Plaintiff. The Court, in fact, stated, "Here, because discovery has not taken place as to the alleged misrepresentations and the context in which they were made, those specific facts are not yet before the Court." ECF No. 122 at 3. The Court mentions nothing about limiting the misrepresentations or discovery to only oral communications. Defendants appear to be assuming that misrepresentation can only be oral in nature, which is, of

11

course, not the case. Plaintiff is entitled to conduct discovery to ascertain written misrepresentations that were made to him, as well. This is, after all, a discovery motion, not a motion on the merits.

Defendants, in refusing to turn over this discovery, consistently seek to put words in the Court's mouth, reiterating time and time again that Plaintiff is only allowed to seek discovery as to oral misrepresentations, but that is not stated anywhere in the Court's Order. Defendants cite to the Court's Order several times in the letter provided to counsel outlining the reasons that they will not produce discovery, but in not a single one of their citations does the Court's Order mention the word "oral," nor does it mention limiting discovery to anything of an oral nature. See Ex. D to Winters Decl. (Defendants' April 3, 2024 meet-and-confer letter).

Furthermore, nothing in any of the orders issued by this Court allows a party to unilaterally limit discovery to what that party believes is necessary, especially when the discovery requested is entirely in the possession of that party. The discovery requested is appropriate and contains important information concerning the precise issues before this Court: how the credit used for senior Safeco retirees was presented and treated over the ten years prior to the changes in the Safeco retiree plan. Defendants are selectively producing documents and are trying to incorrectly use this Court's prior orders to back their untenable position.

### B. Relevancy

Defendants have also objected on the grounds that Plaintiff's request for discovery is somehow irrelevant to the remaining (a)(3) Claim. This is completely incorrect. Plaintiff is entitled to reasonable discovery on issues related to potential fiduciary violations that occurrent from any time between 2008 and 2019.

During the deposition of Verlinda DiMarino, Defendant Liberty Mutual admitted that dealing with the grandfathered-in Safeco retirees who had then hit ten years of service with Liberty Mutual required an evaluation. See Ex. 1to the Affidavit of Jack B. Winters Jr. filed in support of Plaintiff's Motion to Seal (excerpts from the deposition of Verlinda DiMarino, p.130: 12-21). Plaintiff believes that full production of the requested documents (rather than simply the documents Defendant cherry-picks to produce) would show that Liberty Mutual made a decision to radically redraft the cost contribution for prospective Safeco Retirees for the first time as these Retirees were approaching the ten-year mark with Liberty Mutual. The redraft of the SPD removed the previous right to cost contribution, which provided a combination of the credit earned from the date of hire to 2004 plus the ten years of credit for service between the acquisition of Safeco and 2019. The newly drafted SPD required Retirees - including Mr. Turner - to choose between keeping the ten years earned as a Liberty Mutual employee and the grandfathered benefit earned for time at Safeco between the original date of hire and 2004. There was no longer any offer of cost share that

provided consideration for both periods of time. This newly imposed condition allowed Defendants to substantially reduce its potential contribution obligations and forced Safeco Employees to make a choice between two evils. Essentially, after ten years of service necessary to get any cost sharing, Mr. Turner and others had to give up the credit for those years or take the credit for the Safeco years.

While an employer is permitted under ERISA to eliminate non-vested welfare benefits through amendment of a Plan, it cannot occur in a discriminatory fashion, nor can it be a part of a course of conduct involving violations of fiduciary duty. The evidence from discovery already received is quite clear that Defendants' 2008 acquisition of Safeco required Defendants to honor Safeco's promises to its future retirees and that those promises be made part of the existing and any future Plans. Regarding service credit, as laid out in the pamphlet sent in 2008, the general rule was that Safeco employees would not have credit for their years at Safeco unless in actual Plan documents there were special rules set forth. Those special rules were laid out for "grandfathered" employees.

In 2009, in the first of more than ten SPD's, Liberty acknowledged these Safeco employees by grandfathering extra years of credit which could be counted towards those years of service that were being earned at Liberty Mutual, but which would not be available unless and until an employee spent at least ten years at Liberty Mutual. It is important to appreciate that Mr. Turner could not have obtained access to any retiree

benefits of any kind until he first spent ten years working for Liberty Mutual after the acquisition. This was never an either/or situation.

This dispute involves Defendants radically reducing the benefits of retirees without providing proper notice to its employees that such action was being taken. Given those facts, this discovery sought is obviously incredibly relevant to the (a)(3) Claim and Plaintiff asks that Defendants be required to produce it.

### C. Documents Withheld on the Basis of Attorney Client Privilege

To the extent that Defendants argue that discussions regarding the SPDs between Defendants and their attorneys are protected by attorney-client privilege, that is also incorrect. Plaintiff has now learned – and could not have learned from due diligence done prior to commencing this case – that every SPD and Plan change from 2009 through 2019 was reviewed and considered by ERISA counsel, and thus was not subject to the confidences associated with the attorney-client privilege.

Additionally, as Plaintiff has already laid out and argued before this Court, when a fiduciary is obtaining legal advice for the benefit of the beneficiary, there is no privilege that attaches, so Plaintiff is entitled to see all of the communications that might exist between Defendants and their attorneys as they relation to the SPDs between 2008 and 2019.

In ERISA cases, the fiduciary exception to the attorney-client privilege provides that communications between an attorney and a plan administrator are not protected

from disclosure to beneficiaries. *Tebo v. Sedgwick Claims Mgmt. Servs.* Civil Action No. 09-40068-FDS, 2010 U.S. Dist. LEXIS 50834, at *5-6 (D. Mass. May 20, 2010)., *supra*, at *9 n.5. This exception is based on an ERISA trustee's duty to disclose to plan beneficiaries all information regarding plan administration. *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 47-48 (D. Mass. 2007). Advice from an attorney given for the benefit of the plan, its beneficiaries, or as a matter of plan administration "involving the defendant's role as the beneficiaries' fiduciary" is not privileged. *Hill v. State St. Corp.*, 2013 U.S. Dist. LEXIS 181168, at *13-14 (D. Mass. Dec. 30, 2013) (internal citations omitted).

When the SPDs were created and dispersed between 2008 and 2019, there was no pending litigation against Defendants. As such, no work product or attorney-client privilege exists. To the extent this Court or Defendants have a concern about such documents, Plaintiff requests this Court review the documents either fully withheld or redacted in camera to determine whether they are subject to the fiduciary exception to the attorney-client privilege.

## IV. CONCLUSION

Plaintiff requests the Court order Defendants to produce the above-discussed documents relating to the SPDs between 2008 and 2019: merger documents, attorney-client communications relating to the Safeco Retirees and production of documents that reflect on the "grandfathered" benefits the Safeco employees retained during the

merger. Defendants have access to all of these documents and production of them will be no burden on Defendants. The documents requested by Plaintiff are all highly relevant and discoverable for Plaintiff's remaining (a)(3) Claim.

DATED: May 1, 2024

**WINTERS & ASSOCIATES**

By: /s/Jack B. Winters, Jr.
Jack B. Winters, Jr., *Pro Hac Vice*
Sarah Ball, *Pro Hac Vice*
8489 La Mesa Blvd.
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
jwinters@singletonschreiber.com
sball@einsurelaw.com

**GORDON E. MEYER & ASSOCIATES**
Gordon E. Meyer (MA BBO 561791)
8 Winchester Street
Boston, Massachusetts 02116
Tel: (617) 482-2377
gordon@gmeyerlaw.com

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (CA SBN 178444)
Alex Tomasevic (CA SBN 245598)
225 Broadway, 19th Fl.
San Diego, CA 92101
Tel (619) 325-0492
Fax (619) 325-0496
cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org

**SINGLETON SCHREIBER, LLP**
Michelle M. Meyers, SB#236387
1414 K Street, Suite 470

Sacramento, California 95814
Telephone: (916) 248-8478
Fax: (619) 255-1515
mmeyers@singletonschreiber.com

Attorneys for Plaintiff
THOMAS TURNER, an individual, on behalf of himself and others similarly situated

# CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system, will be sent electronically to the registered participants in this matter as identified on the Notice of Electronic Filing.

DATED: May 1, 2024

**WINTERS & ASSOCIATES**

/s/Jack B. Winters, Jr.
Jack B. Winters, Jr., *Pro Hac Vice*
Sarah Ball, *Pro Hac Vice*
8489 La Mesa Blvd.
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
jwinters@singletonschreiber.com
sball@einsurelaw.com

**GORDON E. MEYER & ASSOCIATES**
Gordon E. Meyer (MA BBO 561791)
8 Winchester Street
Boston, Massachusetts 02116
Tel: (617) 482-2377
gordon@gmeyerlaw.com

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (CA SBN 178444)
Alex Tomasevic (CA SBN 245598)
225 Broadway, 19th Fl.
San Diego, CA 92101
Tel (619) 325-0492
Fax (619) 325-0496
cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org

**SINGLETON SCHREIBER, LLP**

Michelle M. Meyers, SB#236387
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Fax: (619) 255-1515
mmeyers@singletonschreiber.com

Attorneys for Plaintiff
THOMAS TURNER, an individual, on behalf of himself and others similarly