UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS TURNER, an individual, on behalf of himself and others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL MEDICAL PLAN; LIBERTY MUTUAL RETIREMENT BENEFIT PLAN RETIREMENT BOARD; LIBERTY MUTUAL GROUP INC.; LIBERTY MUTUAL INSURANCE COMPANY; and DOES 1-50, inclusive,<br><br>      Defendants. | Civil Action No.<br>20-11530-FDS |

**MEMORANDUM AND ORDER ON PLAINTIFF'S
<u>MOTION FOR CLASS CERTIFICATION</u>**

**SAYLOR, C.J.**

This is an action arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff Thomas Turner contends that defendants Liberty Mutual Retirement Benefit Plan, Liberty Mutual Medical Plan, Liberty Mutual Retirement Benefit Plan Retirement Board, Liberty Mutual Group Inc., and Liberty Mutual Insurance Company (together, "Liberty Mutual") incorrectly calculated his cost-share obligations for his post-retirement medical benefits. Turner now seeks to certify a class of employees of similarly situated employees under Rule 23. Because the proposed class is based in part on a claim that was not pleaded in the complaint, the motion will be denied.

I. **Background**

The facts are set forth in greater detail in several prior memoranda and orders on defendants' motions for summary judgment. (ECF Nos. 45, 91, 122). Facts relevant to the present motion are reiterated here.

A. **Factual Background**

Thomas Turner is a former employee of Safeco Insurance Company and Liberty Mutual Insurance Company. He was hired by Safeco in 1980 and continued to work for Safeco following its acquisition by Liberty Mutual in 2008. (ECF No. 115 ("Turner Aff.") ¶¶ 2-3).

In 2008, Liberty Mutual acquired Safeco. As a result of that acquisition, Liberty Mutual sought to amend its benefit plans to include Safeco employees who were transferring to Liberty Mutual. (ECF No. 84, Ex. Q at 1). Liberty Mutual informed transitioning employees that they would participate in Liberty Mutual benefit programs "[e]ffective January 1, 2009," and that the years they were employed at Safeco would be counted for purposes of benefit eligibility, but not for cost-sharing. (ECF No. 79, Ex. 14).

Turner alleges that after the acquisition of Safeco by Liberty Mutual, he was advised repeatedly that he would receive cost-sharing credit for his post-retirement health benefits based on a calculation of his years of service that included both his pre-merger years of employment with Safeco and his later years with Liberty Mutual. (Turner Aff. ¶ 4). Those conversations apparently took place in telephone calls with the Liberty Mutual Benefits Center. (*Id.* ¶ 5).

At some point in 2017, in anticipation of his retirement, Turner began to inquire about his post-retirement benefits. (*Id.* ¶ 11). He apparently was told by a Liberty Mutual benefits

representative that he would receive 12 years of cost-sharing credit. (ECF No. 84, Ex. L).[1] In a letter to Liberty Mutual, he contended that based on his own interpretation of plan documents, he was entitled to cost-sharing credit for 37 years of service—that is, credit for 28 years of employment at Safeco and 9 years of employment at Liberty Mutual. (*Id.* at 3-4).

Turner alleges that he was told by Liberty Mutual in 2018 that he would need 10 years of post-acquisition employment at Liberty Mutual "to qualify for cost sharing in the Liberty Medical Plan into retirement." (*Id.* ¶ 15). Based on those representations, he delayed his retirement until 2019, despite having wanted to retire in 2018. (*Id.* ¶¶ 16, 19).

On January 4, 2019, Turner announced his plan to retire from Liberty Mutual and requested information outlining his retirement benefits. (*Id.* ¶ 19). His request sparked internal discussions at Liberty Mutual concerning the retirement benefits to which former Safeco employees should be entitled—specifically whether, after accruing 10 years of service with Liberty Mutual, employees were entitled to choose between their grandfathered Safeco benefit and their newly earned Liberty Mutual retirement benefit, or whether they were entitled to the Liberty Mutual benefit only. (*See generally* ECF No. 84, Ex. M). Liberty Mutual employees acknowledged internally that that question was a "grey area," and that the SPD "is not that explicit." (*Id.* at 11, 5). However, they ultimately concluded that once an employee reached 10 years of post-merger service with Liberty Mutual, the Safeco benefit was extinguished. (*Id.* at 2). Nevertheless, Liberty Mutual acknowledged that Turner had been misinformed on that point and recommended granting him an exception by allowing him to choose between his Safeco and Liberty Mutual benefits after 10 years of service. (*Id.* at 19).

---

[1] It is not clear how the Liberty Mutual representative might have calculated the 12-year figure, presumably tied to an unknown date in 2005. That apparent inconsistency is not relevant to the present motion.

Turner retired from Liberty Mutual on May 1, 2019—slightly more than 10 years after the published effective date of the Liberty Mutual plan. (ECF No. 79, Ex. 15 at 1). On May 14, 2019, he wrote a letter to Liberty Mutual appealing the determination of his post-retirement medical benefits. (*Id.* at 3-6). He again requested cost-sharing credit for the entirety of his years of service to both Safeco and Liberty Mutual. (*Id.*). On June 10, Thomas Oksanen, Liberty Mutual's Vice President for Corporate Human Resources and Administration, denied the appeal. (*Id.* at 10-12). Turner then filed a second appeal, which was also denied. (*Id.* at 13-19).

B.      **Procedural Background**

On August 14, 2020, Turner brought this action against Liberty Mutual on behalf of himself and others similarly situated. The complaint asserted four claims. Count 1 sought a determination of plan terms and a clarification of plaintiff's rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Count 2 sought equitable relief under § 1132(a)(3). Count 3 alleged a violation of 29 C.F.R. § 256.503-1(h)(2)(i) for failure to provide plan documents and a "reasonable opportunity for full and fair review." Count 4 alleged a violation of 29 C.F.R. § 2520.102-3(l) and § 2520.102-2(a) for failure to disclose plan limitations.

On August 30, 2022, the Court granted summary judgment in favor of defendants on Count 1. In that decision, the Court concluded that Turner's post-retirement medical benefit was not a vested benefit, and that the unambiguous terms of the January 2019 SPD did not provide cost-sharing credit for his years with Safeco.

On August 11, 2023, the Court granted summary judgment in favor of defendants on Counts 3 and 4, but denied it as to Count 2, finding that there was a triable issue of fact as to precisely what representations Liberty Mutual had made to plaintiff concerning whether his years of employment at Safeco would be credited to him for the purposes of calculating his cost-

sharing obligations under the Liberty Mutual plan.[2]

Plaintiff now seeks to certify a class of former Safeco employees defined as:

> Former grandfathered employees of Safeco corporation and subsidiaries transitioning to Liberty Mutual on January 1, 2009 who were not or will not be given both:  (A) credit for purposes of eligibility and cost sharing for their grandfathered age and service points as of 12/31/2004 (their "Safeco Grandfathered Credit"), and (B) credited service for employment with Liberty Mutual (their "Liberty Mutual Credit").

(Pl. Mem. at 3).

## II.   Legal Standard

Under Rule 23, class certification is appropriate only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

In addition, plaintiff must establish the elements for one of the types of class actions set out in Fed. R. Civ. P. 23(b).  For both Rules 23(a) and 23(b), plaintiff must establish each of the elements; failure to establish any of them will defeat class certification.  *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003).

## III.   Analysis

Plaintiff seeks to certify a class based on a definition that subtly, but critically, broadens the nature of the remaining claim at issue.  In essence, plaintiff proposes to certify a class of former Safeco employees that includes—because of the breadth of the definition—both (1) those

---

[2] In that decision, the Court characterized Count 2 as alleging "that defendants knowingly misrepresented to plaintiff that he would receive credit for his years of employment at Safeco, that plaintiff relied upon those representations in accepting employment with Liberty Mutual, and that as a result, plaintiff suffered an injury in the form of reduced benefits."  (ECF No. 122 at 15).

5

whose Liberty Mutual benefits were incorrectly calculated (because their years of service at Safeco were not credited) and (2) those who were denied benefits they earned under the Safeco plan, prior to the acquisition by Liberty Mutual, in addition to their benefits earned under the Liberty Mutual plan. Defendants, however, contend that the latter "combined-benefits" proposed definition is not (and has never been) plaintiff's claim. In their view, plaintiff's theory has consistently been that he was denied the benefits he was owed under *the Liberty Mutual plan* based on his total years of employment at both Safeco and Liberty Mutual, rather than that he was denied benefits earned under *both the Safeco and the Liberty Mutual plans*. They further assert that because the complaint does not allege any "combined-benefits" claim, class certification on such a claim is impermissible.

The crux of the parties' dispute appears to center on the allegations in the complaint concerning the earning of retirement "credit." Plaintiff suggests that the term "credit" should be construed broadly to include retirement benefits earned in exchange for years of employment. Defendants, however, assert that "credit" in this context refers to crediting plaintiff's years of employment with Safeco as years of service under the Liberty Mutual plan.

To illustrate the distinction, consider four possible scenarios for calculating cost-share obligations, based on a hypothetical employee who worked for 15 years at Safeco before its acquisition and then 10 years at Liberty Mutual. In Scenario *A*, her years of employment at Safeco are not credited under the Liberty Mutual plan, and thus she only receives credit for 10 years under the Liberty Mutual plan. In Scenario *B*, she receives credit for a combined 25 years of employment at both companies under the Liberty Mutual plan. In Scenario *C*, she receives credit for either 15 years at Safeco (under the Safeco plan) or 10 years at Liberty Mutual (under the Liberty Mutual plan), but not both. In Scenario *D*, she receives separate credit both for 15

years under the Safeco plan and 10 years under the Liberty Mutual plan, allowing her to collect benefits separately under both plans.

Here, plaintiff's claim has consistently been that he is in Scenario *A*—in other words, that he is receiving credit under the Liberty Mutual plan only for his years of service at Liberty Mutual—but that he should be in Scenario *B*, and receive credit under the Liberty Mutual for his combined years of service (at both Safeco and Liberty Mutual).

The language of the complaint clearly alleges that plaintiff was denied "credit" for his years of employment at Safeco under the Liberty Mutual plan, rather than that he was denied benefits under both the Liberty Mutual and Safeco plans. It alleges that "Liberty Mutual promised a group of important employees, including Mr. Turner, a valuable set of retirement medical benefits in exchange for their years of service," and that the employees' "prior years of service . . . would all be counted toward the "years of service" component when calculating Liberty Mutual retirement benefits." (Compl. ¶¶ 4-5). It states

> Mr. Turner and hundreds of his colleagues were part of Safeco when Liberty acquired Safeco in about 2008. And by the time Mr. Turner retired in 2019, he had worked 38+years for Safeco/Liberty Mutual. *Thus, Liberty Mutual had originally promised, in short, to credit Mr. Turner with his 38+ years of total service* for purposes of calculating his retirement medical benefits. Liberty Mutual made the same promise to everyone who came over from Safeco in the acquisition.

(*Id.* ¶ 5) (emphasis added).

The complaint similarly characterizes the questions of law or fact common to the alleged class as including "Whether the Defendants represented to the Class that they would be entitled to credit for all years of employment with Safeco under the [Liberty Mutual] Plan if they remained employed by Liberty Mutual." (*Id.* ¶ 26).

7

As to Count 2, the complaint asserts that

"Defendants made clear and unambiguous representations to Plaintiff and the Class that in exchange for their work with Liberty Mutual, *their time of employment* at Safeco would be *credited* for the purposes of calculating retirement medical benefits;" and

"Defendants failed to previously provide any SPDs that indicated their intent to interpret the plan in a way so as to deny Plaintiff and The Class *credit for their time of employment* at Safeco;" and

"Plaintiff and the Class relied upon Defendants' representations *regarding crediting time employed* at Safeco for the purposes of [t]he Plan . . . ."; and

"As a result of Defendants' refusal to grant *credit for all time served*, Plaintiff and the Class suffered an injury or injuries in the form of reduced benefits *under the [Liberty Mutual] Plan*."

(Compl. ¶¶ 68, 69, 71, 72) (emphases added). Moreover, the requested relief for Count 2 asks the Court "to reform the plan in accordance with the representations Defendants made to Plaintiff and the Class and to provide *complete credit for years they were employed by Safeco* for purposes of benefits *under the [Liberty Mutual] Plan*." (*Id.* ¶ 73).

The proposed class, however, is framed more broadly than the claims alleged in the complaint. It includes employees in Scenario *A* (those who did not receive credit for their Safeco years under the Liberty Mutual plan), but also employees in Scenario *C* (those who could either receive credit for their Safeco years under the Safeco plan, or credit for their Liberty Mutual years under the Liberty Mutual plan, but not both). And it appears to seek relief so that the members of the class receive either credit for their Safeco years under the Liberty Mutual plan (that is, be treated like employees in Scenario *B*) or receive credit both for their Safeco years under the Safeco plan and for their Liberty Mutual years under the Liberty Mutual plan (that is, be treated like employees in Scenario *D*, and collect benefits under both plans).

It is true that plaintiff could plausibly be a member of the group of employees in Scenario *C*, because it appears that Liberty Mutual asked that he choose between his

8

"grandfathered" Safeco benefits and his newly earned Liberty Mutual benefits. (*See* ECF No. 84, Ex. M). If he prevailed on a claim arising out of that choice, he could potentially be treated as a Scenario *D* employee—that is, he could receive benefits under both plans.

But that claim is not pleaded in the complaint  The claims of the complaint clearly arise out of the alleged failure of Liberty Mutual to give plaintiff credit for his years of service to Safeco when calculating his benefits under the Liberty Mutual plan (scenarios *A* and *B*). They do not arise out of an alleged failure to provide benefits under both the Safeco plan and the Liberty Mutual plan (scenarios *C* and *D*). Plaintiff's proposed class definition thereby encompasses, at least in part, an unpleaded claim.

Courts generally may not certify a class based on a claim that was not pleaded in the complaint, and indeed it may be an abuse of discretion to do so. *See Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528-29 (5th Cir. 2008) (district court abused discretion in certifying a class where plaintiffs' claims were "based on a totally different course of conduct" than those pleaded in the complaint because the "district court's authority to certify a class under Rule 23 does not permit it to structure a class around claims not [pleaded]"); *Nqadolo v. Care at Home, LLC*, 2024 WL 1330761, at *5 (D. Conn. Mar. 28, 2024) (collecting cases); *see also Simington v. Lease Fin. Grp.*, 2012 WL 6681735, at *1 (S.D.N.Y. Dec. 14, 2012) ("[T]he Court is unable to certify a class as to claims not [pleaded] in the operative complaint.").

Nonetheless, even if a proposed class definition differs slightly from the precise claim at issue, certification may still be appropriate if the complaint "provides adequate notice of the legal theory" behind the proposed class. *Carlson v. Northrop Grumman Severance Plan*, 2020 WL 6870785 (N.D. Ill. Nov. 23, 2020) (citing *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023-24 (7th Cir. 2018)).

Here, because the pleaded claim is founded on a broader range of allegedly unlawful conduct than that raised in plaintiff's motion, the complaint did not provide adequate notice of the legal theory animating the proposed class definition.

There remains the question of whether a narrower class could be certified based on plaintiff's actual claim. But plaintiff has not proposed a class based on that claim, and thus that question is not presently before the Court. Accordingly, the motion will be denied without prejudice.

### IV.   Conclusion

For the foregoing reasons, plaintiff's motion for class certification is DENIED without prejudice.

**So Ordered.**

Dated: July 15, 2024

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court