UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS TURNER, an individual, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL MEDICAL PLAN; LIBERTY MUTUAL RETIREMENT BENEFIT PLAN RETIREMENT BOARD; LIBERTY MUTUAL GROUP INC.; LIBERTY MUTUAL INSURANCE COMPANY; and DOES 1-50, inclusive, <br><br> Defendants. | Civil Action No. 20-11530-FDS |

**MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR LEAVE TO AMEND COMPLAINT**

**SAYLOR, J.**

This is an action arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff Thomas Turner contends that defendants Liberty Mutual Retirement Benefit Plan, Liberty Mutual Medical Plan, Liberty Mutual Retirement Benefit Plan Retirement Board, Liberty Mutual Group Inc., and Liberty Mutual Insurance Company (together, "Liberty Mutual") incorrectly calculated his cost-share obligations for his post-retirement medical benefits. Turner now seeks leave to amend the complaint to add a new legal theory concerning his entitlement to retirement benefits under both Liberty Mutual's plan and his former employer's plan.

For the following reasons, the motion will be denied.

**I.    Background**

The facts are set forth in several prior memoranda and orders on defendants' motions for summary judgment and are again summarized in the Court's memorandum and order on plaintiff's motion for class certification. (ECF Nos. 45, 91, 122, 183). Facts relevant to the present motion are repeated here.

**A.    Factual Background**

Thomas Turner is a former employee of Safeco Insurance Company and Liberty Mutual Insurance Company. He was hired by Safeco in 1980 and continued to work for Safeco following its acquisition by Liberty Mutual in 2008. (ECF No. 115 ("Turner Aff.") ¶¶ 2-3).

In 2008, Liberty Mutual acquired Safeco. As a result of that acquisition, Liberty Mutual sought to amend its benefit plans to include Safeco employees who were transferring to Liberty Mutual. (ECF No. 84, Ex. Q at 1). Liberty Mutual informed transitioning employees that they would participate in Liberty Mutual benefit programs "[e]ffective January 1, 2009," and that the years they were employed at Safeco would be counted for purposes of benefit eligibility, but not for cost-sharing. (ECF No. 79, Ex. 14).

Turner maintains that after the acquisition of Safeco by Liberty Mutual, he was advised repeatedly that he would receive cost-sharing credit for his post-retirement health benefits based on a calculation of his years of service that included both his pre-merger years of employment with Safeco and his later years with Liberty Mutual. (Turner Aff. ¶ 4). Those conversations apparently took place over telephone calls with the Liberty Mutual Benefits Center. (*Id.* ¶ 5).

At some point in 2017, in anticipation of his retirement, Turner began to inquire about his post-retirement benefits. (*Id.* ¶ 11). He was apparently told by a Liberty Mutual benefits

representative that he would receive 12 years of cost-sharing credit. (ECF No. 84, Ex. L).[1] In a letter to Liberty Mutual, he contended that based on his own interpretation of plan documents, he was entitled to cost-sharing credit for 37 years of service—that is, credit for 28 years of employment at Safeco and 9 years of employment at Liberty Mutual. (*Id.* at 3-4).

Turner asserts that he was told by Liberty Mutual in 2018 that he would need 10 years of post-acquisition employment at Liberty Mutual "to qualify for cost sharing in the Liberty Medical Plan into retirement." (*Id.* ¶ 15). Based on those representations, he delayed his retirement until 2019, despite having wanted to retire in 2018. (*Id.* ¶¶ 16, 19).

On January 4, 2019, Turner announced his plan to retire from Liberty Mutual and requested information outlining his retirement benefits. (*Id.* ¶ 19). His request sparked internal discussions at Liberty Mutual concerning the retirement benefits to which former Safeco employees should be entitled—specifically whether, after accruing 10 years of service with Liberty Mutual, employees were entitled to choose between their grandfathered Safeco benefit and their newly earned Liberty Mutual retirement benefit, or whether they were entitled to the Liberty Mutual benefit only. (*See generally* ECF No. 84, Ex. M). Liberty Mutual employees acknowledged internally that that question was a "grey area," and that the Summary Plan Description "is not that explicit." (*Id.* at 11, 5). However, they ultimately concluded that once an employee reached 10 years of post-merger service with Liberty Mutual, the Safeco benefit option was extinguished. (*Id.* at 2). Nevertheless, Liberty Mutual acknowledged that Turner had been misinformed on that point and recommended granting him an exception by allowing him to *choose* between his Safeco and Liberty Mutual benefits after 10 years of service. (*Id.* at 19).

---

[1] It is not clear how the Liberty Mutual representative might have calculated the 12-year figure, presumably tied to an unknown date in 2005. That apparent inconsistency is not relevant to the present motion.

3

Turner retired from Liberty Mutual on May 1, 2019—slightly more than 10 years after the published effective date of the Liberty Mutual plan. (ECF No. 79, Ex. 15 at 1). On May 14, 2019, he wrote a letter to Liberty Mutual appealing the determination of his post-retirement medical benefits. (*Id.* at 3-6). He again requested cost-sharing credit under the Liberty Mutual plan for the entirety of his years of service to both Safeco and Liberty Mutual. (*Id.*). On June 10, Thomas Oksanen, Liberty Mutual's Vice President for Corporate Human Resources and Administration, denied the appeal. (*Id.* at 10-12). Turner then filed a second appeal, which was also denied. (*Id.* at 13-19).

### B.     Procedural Background

On August 14, 2020, Turner brought this action against Liberty Mutual on behalf of himself and others similarly situated. The initial complaint asserted four claims. Count 1 sought a determination of plan terms and a clarification of plaintiff's rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Count 2 sought equitable relief under § 1132(a)(3). Count 3 alleged a violation of 29 C.F.R. § 256.503-1(h)(2)(i) for failure to provide plan documents and a "reasonable opportunity for full and fair review." Count 4 alleged a violation of 29 C.F.R. § 2520.102-3(l) and § 2520.102-2(a) for failure to disclose plan limitations.

On August 30, 2022, the Court granted summary judgment in favor of defendants on Count 1. In that decision, the Court concluded that Turner's post-retirement medical benefit under the Liberty Mutual plan was not a vested benefit, and that the unambiguous terms of the January 2019 SPD did not provide cost-sharing credit for his years with Safeco.

On August 11, 2023, the Court granted summary judgment in favor of defendants on Counts 3 and 4, but denied it as to Count 2, finding that there was a triable issue of fact as to precisely what representations Liberty Mutual had made to plaintiff concerning whether his years of employment at Safeco would be credited to him for the purposes of calculating his cost-

4

sharing obligations under the Liberty Mutual plan.[2]

On July 15, 2024, the Court denied a motion for class certification on the ground that the proposed class was based in part on a newly asserted claim that plaintiff was denied benefits under *both* the Safeco and the Liberty Mutual plans. The initial complaint had alleged that plaintiff was denied benefits under *only* the Liberty Mutual plan; according to the initial complaint, plaintiff's benefits under the Liberty Mutual plan were to be calculated based on the credit that he accrued—that is, his total years of employment—at both Safeco and Liberty Mutual. However, it did not allege that plaintiff was entitled to and denied benefits under both plans. As the Court held in its July 15, 2024 memorandum and order, "[t]he claims of the [initial] complaint clearly arise out of the alleged failure of Liberty Mutual to give plaintiff credit for his years of service to Safeco when calculating his benefits under the Liberty Mutual plan . . . . They do not arise out of an alleged failure to provide benefits under both the Safeco plan and the Liberty Mutual plan[.]" (ECF No. 183). Because plaintiff sought to certify a class based in part on a so-called combined-benefits theory that had not been pleaded in the initial complaint, the Court denied the motion for class certification for failing to provide adequate notice of the legal theory animating the proposed class definition.

Plaintiff now seeks leave to amend the initial complaint to address the pleadings concerning the combined-benefits theory, based on his assertion that he is entitled to (and was improperly denied) both his grandfathered Safeco benefits and his earned Liberty Mutual benefits. The proposed amended complaint includes new allegations that Liberty Mutual

---

[2] In that decision, the Court characterized Count 2 as alleging "that defendants knowingly misrepresented to plaintiff that he would receive credit for his years of employment at Safeco, that plaintiff relied upon those representations in accepting employment with Liberty Mutual, and that as a result, plaintiff suffered an injury in the form of reduced benefits." (ECF No. 122 at 15).

5

represented to plaintiff that he "would lose nothing through the [Liberty Mutual] acquisition (that [he] [was] 'grandfathered' in)"; that defendants never informed him of "their intent to eliminate the previously 'grandfathered' credits or benefits"; that defendants "refused to grant credit and past promised, earned, and vested benefits to [p]laintiff . . . for time worked at Safeco"; that plaintiff relied upon defendants' representations concerning his "'grandfathered' credits or benefits"; and that plaintiff suffered economic harm as a result of defendants' refusal to "pay or provide all earned credits or benefits (such as the 'grandfathered' benefits)." (Am. Compl. ¶¶ 33-37).

Defendants oppose the motion on the grounds that it is unduly delayed, unfairly prejudicial, and not supported by substantial and convincing evidence.

## II. Legal Standard

In general, courts "freely give leave [to amend a complaint] when justice so requires," unless there is "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, [or] futility of amendment." *U.S. ex rel. 2 Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); Fed. R. Civ. P. 15(a)(2).

However, as a case progresses, "the burden on a plaintiff seeking to amend a complaint becomes more exacting." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). Specifically, "[w]here the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show 'substantial and convincing evidence' to justify a belated attempt to amend a complaint." *Id.* (citing *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994)). "[T]he longer a plaintiff delays, the more likely the motion to amend will be denied," with the likelihood of denial increasing for motions "whose timing prejudices the opposing party by requiring a re-opening of discovery with additional costs, a

6

significant postponement of the trial, and a likely major alteration in trial tactics and strategy[.]" *Id.* (citing *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52-53 (1st Cir. 1998)).

### III. Analysis

Plaintiff first asserts that amendment should be permitted because there has been no "undue delay, bad faith[,] or dilatory motive" on his part. (Mot. at 10). There is no basis to believe that plaintiff is acting in bad faith or with improper motive. However, the motion is unduly and unjustifiably delayed. *See In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (stating that "when considerable time"—recognized by other courts as "fourteen months," "fifteen months," and "seventeen months"—"has elapsed between the filing of the complaint and the motion to amend, the movant has at the very least the burden of showing some valid reason for his neglect and delay") (internal quotations omitted).

Here, the initial complaint was filed in August 2020, nearly five years before plaintiff moved to amend it. In that time, the parties have briefed, and the Court has resolved, three summary-judgment motions and a motion for class certification. Discovery closed more than a year before the motion to amend was filed. (ECF No. 145). Such a significant delay is alone sufficient to deny the motion. *See Steir*, 383 F.3d at 12 ("Regardless of the context, . . . protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."); *see also Frappier v. Countrywide Home Loans, Inc.*, 750 F.3d 91, 95 (1st Cir. 2014) (affirming denial of a motion to amend where "the proposed amendment came over two years after the initial complaint was filed and a year after the district court ruled on the summary[-]judgment motions").

Plaintiff contends that, until the Court's July 15, 2024 memorandum and order denying his motion for class certification, he had been unaware of any deficiency in the complaint concerning the combined-benefits theory. (Mot. at 11). He further asserts that he had previously

7

understood the initial complaint to plead, "perhaps inartfully," the combined-benefits theory. (Mot. Hr'g at 11).

However, plaintiff was on notice of the deficient pleadings at least as early as August 30, 2022, when the Court issued its second summary-judgment memorandum and order. In that opinion, the Court explicitly noted that plaintiff had not "claimed that he had been denied his grandfathered Safeco benefit" and that the combined-benefits theory "is not plaintiff's claim." (ECF No. 91 at 33). Those statements—issued nearly two years before the Court's class-certification memorandum and order—placed plaintiff on notice that the complaint failed to assert the combined-benefits theory; at minimum, he should have moved to amend the complaint soon thereafter. His failure to recognize the deficiency in the pleadings in August 2022 does not justify the approximately three-year delay before seeking leave to amend. *See In re Lombardo*, 755 F.3d at 3-4 ("[I]n assessing whether delay is undue, a court will take account of what the movant knew or should have known and what he did or should have done.") (internal quotations omitted).

Moreover, plaintiff has had the full opportunity to plead the combined-benefits theory from essentially the beginning of the litigation, as the record demonstrates that he has been on notice of the grandfathered Safeco benefits for years. For example, in 2018, he received a letter from a Liberty Mutual representative stating that, at that time, he was entitled to a retirement benefit based on his "grandfathered Safeco post-retirement health benefit." (ECF No. 79, Ex. 15 at 7-8). In addition, plaintiff has himself previously contended that "the promise of 'grandfathered' [benefits] . . . comes from [d]efendants' own SPD[s]"—documents to which he has had access since at least since 2020. (Mot. at 8). And in October 2021, defendants' corporate representative testified at a deposition that "[p]rior to the [2019] SPD, we had

8

participants who had . . . a grandfathered benefit," further putting plaintiff on notice of those benefits. (ECF No. 202 ("Frausto Aff."), Ex. 2 at 3).

Although plaintiff asserts that litigation over the equitable-relief claim at issue did not begin until 2023, that does not refute the fact that he has for years been aware of the grandfathered Safeco benefits and could have asserted a corresponding claim long before the present motion to amend. (Mot. at 10). Indeed, "[n]othing prevented [him] from pursuing [] amendment earlier," supporting denial of the motion. *See Frappier*, 750 F.3d at 95; *see also Noonan v. Wonderland Greyhound Park Realty LLC*, 2011 WL 386834, at *2 (D. Mass. Feb. 3, 2011) (denying a motion to amend because, among other things, "the claims rel[ied] in part on facts dating back to the original complaint and otherwise on facts well prior to the . . . filing of the motion").

Plaintiff asserts that certain documents produced in March 2024 contain information concerning the grandfathered benefits that had not previously been made available to him. (ECF No. 199 ("Tomasevic Aff.") ¶ 5). He has not submitted copies of any of those documents, but nonetheless contends that an email between Liberty Mutual employees contains an admission that plaintiff "had already earned 'grandfathered' credit that 'never reduces.'" (*Id.*). However, as defendants highlight in their attached exhibit, the email exchange that plaintiff references concerns his *life insurance* Safeco benefit, *not* the medical benefits at issue in this case. (Frausto Aff., Ex. 1 at 2). That email does not constitute relevant evidence—let alone "substantial and convincing evidence"—as required to excuse a significantly delayed attempt to amend a complaint. *See Steir*, 383 F.3d at 12; *see also CardioNet, LLC v. InfoBionic, Inc.*, 2017 WL 8222366, at *2 (D. Mass. Mar. 3, 2017) (denying a motion for leave to amend under Rule 16(b) because the motion failed to explain any new information that plaintiffs gathered and "how [that]

9

new information differed from evidence already in their possession").³ And even if those newly discovered documents did contain relevant information to the combined-benefits theory, the theory itself is not newly discovered; again, plaintiff has been aware of the possibility of claiming the grandfathered Safeco benefits since the beginning of the litigation. The motion to amend is therefore unduly delayed, which is sufficient to justify its denial. *See Acosta-Mestre*, 156 F.3d 49, 52 (1st Cir. 1998) (stating that "undue delay in seeking [] amendment may be a sufficient basis for denying leave to amend").

Beyond the motion's lack of timeliness, the proposed amended complaint would, at this stage, impose substantial and unfair prejudice on defendants. Again, discovery has been closed since March 2024. Plaintiff asserts that amendment would not require any additional discovery, but because the proposed amended complaint adds a new, unpleaded legal theory, discovery would likely have to be re-opened to permit defendants to re-depose plaintiff and other witnesses on the combined-benefits theory and the grandfathered Safeco benefits specifically. *See Moore v. Nstar Elec. & Gas Co.*, 264 F. Supp. 3d 292, 295 (D. Mass. 2017) (denying a motion to amend filed three months after the close of discovery because the amendment "would mean not only reopening discovery, but also likely redoing at least some of what has already been done," which "would be unjustifiably detrimental to [the] defendant").

Although, as plaintiff notes, no trial date has yet been set, re-opening discovery will undoubtedly lead to further delays in the case—at the very least, requiring an extension of the timeline for additional rounds of dispositive and class-certification motion practice. *See Nat'l*

---

³ Plaintiff contends that defendants' slow responsiveness to discovery orders—resulting in the production of certain compelled documents in February 2025—justifies the delayed filing of the motion to amend. (Tomasevic Aff. ¶ 7). However, plaintiff has neither submitted copies of those documents nor explained their relevance to the combined-benefits theory. Defendants must, of course, comply with court orders in a timely manner. But the protracted production of documents does not refute the fact that plaintiff has been on notice of the claimed grandfathered Safeco benefits and the inadequate pleadings for years.

*Fed'n of the Blind v. Container Store*, 2020 WL 533022, at *4 (D. Mass. Feb. 3, 2020) (denying a post-discovery motion to amend that would have "require[d] the parties to re-open discovery, increasing costs and delaying th[e] litigation"). The proposed amended complaint here would entail a significant expenditure of time and resources by defendants and the Court, further compelling denial of the motion. *See Steir*, 383 F.3d at 12 ("Particularly disfavored are motions to amend whose timing prejudices the opposing party by requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy[.]").[4]

Even if plaintiff is correct that the incremental discovery would not be extensive, amendment would nevertheless be unfairly prejudicial, as it would likely meaningfully affect defendants' litigation strategy. *See Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4-5 (1st Cir. 1983) (affirming denial of amendment where newly added claim "may well have affected defendants' planned trial strategy and tactics" even without additional discovery). Rather than litigating and defending against the claims related solely to the Liberty Mutual plan, defendants would be required to re-orient their defense case around a new combined-benefits theory. As the Court noted in its July 15, 2024 memorandum and order denying class certification, "the complaint did not provide adequate notice of the [combined-benefits] theory," and defendants have not had the opportunity to structure their litigation strategy around that theory. The proposed amended complaint would therefore unfairly prejudice defendants by forcing them to substantially alter their litigation tactics and strategy five years into the case. *See Town of*

---

[4] At the motion hearing, plaintiff offered to respond to "five, ten interrogatories" from defendants within ten days and to "submit [plaintiff] for a deposition for two [], three hours, whatever [defendants] want." (Mot. Hr'g at 30). However, the parties would still have to expend significant resources to prepare and engage in additional discovery, and it ignores the possibility raised by defendants that they may need to depose additional witnesses with specific knowledge about the claimed grandfathered Safeco benefits.

*Lexington v. Pharmacia Corp.*, 2015 WL 1321448, at *4 (D. Mass. Mar. 24, 2015) (denying a motion to amend filed "[m]ore than two years after commencement of the case," where the plaintiff sought to "redefine an uncertified class in a manner that revises the theory on which it has proceeded since the suit's inception").

Thus, because of the significant and unjustified delay and the substantial potential to unfairly prejudice defendants, the motion for leave to amend the complaint will be denied.

**IV.     Conclusion**

For the foregoing reasons, plaintiff's motion for leave to amend the complaint is DENIED.

**So Ordered.**

Dated: July 28, 2025

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
United States District Judge