# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

THOMAS TURNER, an individual, on
behalf of himself and others similarly
situated,

        Plaintiff,

        v.

LIBERTY MUTUAL RETIREMENT
BENEFIT PLAN; LIBERTY MUTUAL
MEDICAL PLAN; LIBERTY MUTUAL
RETIREMENT BENEFIT PLAN
RETIREMENT BOARD; LIBERTY
MUTUAL GROUP INC.; LIBERTY
MUTUAL INSURANCE COMPANY;
and DOES 1-50, inclusive,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.
20-11530-FDS

## MEMORANDUM AND ORDER ON PLAINTIFF'S
## RENEWED MOTION FOR CLASS CERTIFICATION

**SAYLOR, J.**

This is an action arising under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff Thomas Turner contends that defendants Liberty

Mutual Retirement Benefit Plan, Liberty Mutual Medical Plan, Liberty Mutual Retirement

Benefit Plan Retirement Board, Liberty Mutual Group Inc., and Liberty Mutual Insurance

Company (together, "Liberty Mutual") incorrectly calculated his cost-sharing obligations for his

post-retirement medical benefits. Turner previously sought to certify a class of similarly situated

employees under Rule 23; the Court denied that motion without prejudice because the proposed

class definition was based in part on a claim that was not pleaded in the complaint. Turner has

now renewed his motion to certify a class of employees based on a different class definition. For the reasons that follow, the motion will be denied.

## I.     Background

The facts are set forth in greater detail in several prior memoranda and orders on defendants' motions for summary judgment. (Dkt. Nos. 45, 91, 122). Facts relevant to the present motion are reiterated here.

### A.     Factual Background

Thomas Turner is a former employee of Safeco Insurance Company and Liberty Mutual Insurance Company. He was hired by Safeco in 1980. (Dkt. No. 115 ("Turner Aff.") ¶¶ 2-3).

In 2008, Liberty Mutual acquired Safeco. Following the acquisition, Liberty Mutual sought to amend its benefit plans to include Safeco employees who were transferring to Liberty Mutual. (Dkt. No. 84, Ex. Q at 1). Liberty Mutual informed transitioning employees that they would participate in Liberty Mutual benefit programs "[e]ffective January 1, 2009," and that the years they were employed at Safeco would be counted for purposes of benefit eligibility, but not for cost-sharing. (Dkt. No. 79, Ex. 14).

Turner asserts that after the acquisition of Safeco by Liberty Mutual, he was advised repeatedly that he would receive cost-sharing credit for his post-retirement health benefits based on a calculation of his years of service that included both his pre-merger years of employment with Safeco and his later years with Liberty Mutual. (Turner Aff. ¶ 4).

At some point in 2017, in anticipation of his retirement, Turner began to inquire about his post-retirement benefits. (*Id.* ¶ 11). He apparently was told by a Liberty Mutual benefits representative that he would receive 12 years of cost-sharing credit. (Dkt. No. 84, Ex. L). In a letter to Liberty Mutual, he contended that based on his own interpretation of plan documents, he was entitled to cost-sharing credit for 37 years of service—that is, credit for 28 years of

employment at Safeco and 9 years of employment at Liberty Mutual.  (*Id.* at 3-4).

Turner asserts that he was told by Liberty Mutual in 2018 that he would need 10 years of post-acquisition employment at Liberty Mutual "to qualify for cost sharing in the Liberty Medical Plan into retirement." (Turner Aff. ¶ 15).  Based on those representations, he delayed his retirement until 2019, despite having wanted to retire in 2018.  (*Id.* ¶¶ 16, 19).

On January 4, 2019, Turner announced his plan to retire from Liberty Mutual and requested information outlining his retirement benefits.  (*Id.* ¶ 19).  His request sparked internal discussions at Liberty Mutual concerning the retirement benefits to which former Safeco employees should be entitled—specifically whether, after accruing 10 years of service with Liberty Mutual, employees were entitled to choose between their grandfathered Safeco benefit and their newly earned Liberty Mutual retirement benefit, or whether they were entitled to the Liberty Mutual benefit only.  (*See generally* Dkt. No. 84, Ex. M).  Liberty Mutual employees acknowledged internally that that question was a "grey area," and that the SPD "is not that explicit." (*Id.* at 11, 5).  However, they ultimately concluded that once an employee reached 10 years of post-merger service with Liberty Mutual, the Safeco benefit was extinguished.  (*Id.* at 2).  Nevertheless, Liberty Mutual acknowledged that Turner had been misinformed on that point and recommended granting him an exception by allowing him to choose between his Safeco and Liberty Mutual benefits after 10 years of service.  (*Id.* at 19).

Turner retired from Liberty Mutual on May 1, 2019—slightly more than 10 years after the published effective date of the Liberty Mutual plan.  (Dkt. No. 79, Ex. 15 at 1).  On May 14, 2019, he wrote a letter to Liberty Mutual appealing the determination of his post-retirement medical benefits.  (*Id.* at 3-6).  He again requested cost-sharing credit for the entirety of his years of service to both Safeco and Liberty Mutual.  (*Id.*).  On June 10, Thomas Oksanen, Liberty

Mutual's Vice President for Corporate Human Resources and Administration, denied the appeal. (*Id.* at 10-12). Turner then filed a second appeal, which was also denied. (*Id.* at 13-19).

### B. Procedural Background

On August 14, 2020, Turner brought this action against Liberty Mutual on behalf of himself and others similarly situated. The complaint asserted four claims. Count 1 sought a determination of plan terms and a clarification of plaintiff's rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Count 2 sought equitable relief under § 1132(a)(3). Count 3 alleged a violation of 29 C.F.R. § 256.503-1(h)(2)(i) for failure to provide plan documents and a "reasonable opportunity for full and fair review." Count 4 alleged a violation of 29 C.F.R. § 2520.102-3(l) and § 2520.102-2(a) for failure to disclose plan limitations.

On August 30, 2022, the Court granted summary judgment for defendants on Count 1. *See Turner v. Liberty Mut. Ret. Benefit Plan* ("*Turner I*"), 2022 WL 3841119 (D. Mass. Aug. 30, 2022). In that decision, the Court concluded that Turner's post-retirement medical benefit was not a vested benefit, and that the unambiguous terms of the January 2019 SPD did not provide cost-sharing credit for his years with Safeco.

On August 11, 2023, the Court granted summary judgment in favor of defendants on Counts 3 and 4, but denied it as to Count 2, finding that there was a triable issue of fact as to precisely what representations Liberty Mutual had made to plaintiff concerning whether his years of employment at Safeco would be credited to him for the purposes of calculating his cost-sharing obligations under the Liberty Mutual plan. *See Turner v. Liberty Mut. Ret. Benefit Plan* ("*Turner II*"), 2023 WL 5179194 (D. Mass. Aug. 11, 2023).[1]

---

[1] In that decision, the Court characterized Count 2 as alleging "that defendants knowingly misrepresented to plaintiff that he would receive credit for his years of employment at Safeco, that plaintiff relied upon those representations in accepting employment with Liberty Mutual, and that as a result, plaintiff suffered an injury in the form of reduced benefits." *Turner II*, 2023 WL 5179194, at *7.

Plaintiff moved for class certification in 2024, which the Court denied. *See Turner v. Liberty Mutual Ret. Benefit Plan* ("*Turner III*"), 2024 WL 3416070, at *1 (D. Mass. July 15, 2024). In that motion, he sought to certify a class of former Safeco employees who did not receive both the "Safeco grandfathered benefit" and the regular benefit based on their time working at Liberty Mutual. *Id.* at *2. The Court denied class certification because plaintiff's proposed class definition would have "subtly, but critically, broaden[ed] the nature of the remaining claim at issue," because the complaint did not plead this "combined-benefits theory." *Id.* at *3. After class certification was denied, plaintiff sought to amend his complaint to add the "combined-benefits" claim, but the Court denied leave to amend on the ground that the motion was "unduly and unjustifiably delayed." *See Turner v. Liberty Mutual Ret. Benefit Plan* ("*Turner IV*"), 350 F.R.D. 1, 6 (D. Mass. 2025).

Plaintiff now seeks to certify a class of former Safeco employees defined as:

> Former grandfathered employees of Safeco Corporation and subsidiaries who transitioned to Liberty Mutual on January 1, 2009, who did not or will not receive full credit for their Safeco years for purposes of medical cost sharing under Liberty Mutual's plan.

(Pl.'s Mot. 3, Dkt. No. 215).

## II.    <u>Legal Standard</u>

Under Rule 23, class certification is appropriate only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In addition, plaintiff must establish the elements for one of the types of class actions set out in Fed. R. Civ. P. 23(b). For both Rules 23(a) and 23(b), plaintiff must establish each of the

5

elements; failure to establish any of them will defeat class certification. *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003).

### III.    <u>Analysis</u>

When the Court denied summary judgment as to Count 2 of the complaint, the decision was based, in part, on the fact that only limited discovery had been taken to that point.  At the time, discovery "ha[d] . . . been limited to the question of what SPD was in effect" at the time plaintiff retired. *See Turner II*, 2023 WL 5179194, at *9.  Before determining whether equitable relief under § 502(a)(3) was appropriate, the Court recognized that "discovery as to the actual representations made by defendants to plaintiff and other employees, and the context in which they were made, [was] appropriate." *Id.*

After conducting that discovery, plaintiff has not provided evidence that identical, or even substantially similar, misrepresentations concerning credit under the Liberty Mutual plan for years at Safeco were made to all class members.  As a result, this case is not appropriate for class treatment, and both Rules 23(a) and 23(b) pose insurmountable obstacles to class certification.

### A.    <u>Rule 23(a)</u>

Defendants first contend that the putative class fails to meet the commonality requirement of Rule 23(a)(2), because the only proof tending to support class members' § 502(a)(3) misrepresentation claim would be the statements made to them individually.  (Defs.' Opp. 13-15, Dkt. No. 219).  In response, plaintiff argues that the claims of class members would be proved by common evidence, such as "the finite set of plan documents (including SPDs themselves) and benefits statements and testimony from a few key Liberty employees."  (Pl.'s Mot. 2).  The Court agrees with defendants.

Rule 23(a)(2) requires that, for a suit to proceed as a class action, there must be

"questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The standard, however, is more demanding than it may appear at first glance. As the Supreme Court has noted, to satisfy the commonality requirement, class members' claims "must depend upon a common contention," and that contention "must be of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification," the Court recognized, "is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (citation modified).

Accordingly, cases raising fraud claims arising from separate misrepresentations individually made to a group of people are generally not fit for class treatment. *See Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*, 407 F. Supp. 3d 59, 74 (D. Mass. 2019) (no commonality where "there [was] a threshold question as to what representations [defendant] made to each [plaintiff]"); *cf. In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("[F]raud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentations create no need for a series of mini-trials." (citation modified)). And a leading class-action treatise notes that the commonality requirement "may present difficulties in cases alleging one-on-one misrepresentations." 1 WILLIAM B. RUBENSTEIN, NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 3:24 (6th ed. 2026).

Judged against that standard, plaintiff's proposed class does not satisfy the commonality requirement, because it will not yield common answers to the question of whether defendants breached their fiduciary duties to each of the class members by making certain

misrepresentations. Broadly, plaintiff contends that the class will rely on three categories of common evidence to prove its claims: earlier SPDs that were no longer in effect as of plaintiff's retirement; other plan documents; and benefit statements listing the "hire dates" of class members as the date they were hired by Safeco. (Pl.'s Mot. 2). None of these categories of evidence, however, would yield the necessary common answers.

The earlier SPDs cannot be evidence of misrepresentations because, as the Court held concerning the January 2019 SPD, they are unambiguous as to whether class members were entitled to cost-sharing credit for all their years of service at Safeco. *Turner I*, 2022 WL 3841119, at *18 ("At no time was the Plan language unclear as to whether Safeco employees were entitled to cost-sharing credit for *all* their years of prior service. They were not so entitled.").[2] Every one of the SPDs the parties provided at summary judgment contains substantially the same terms: they all include a disclaimer that "[g]enerally only service with your employer during the period your employer is a Participating Employer counts for determining eligibility and cost-sharing for post-retirement Medical Plan coverage," subject to the grandfathered Safeco benefit described elsewhere. (Dkt. No. 84, Ex. B at 4, 10, 14, 19, 24, 30, 37, 45, 52, 58).[3] Plaintiff does not identify what in the earlier, non-operative SPDs

---

[2] In his briefing and argument, plaintiff attempts to recast the Court's holding as simply that a certain span of years—the time period from December 31, 2004, when Safeco froze its benefit plan, through January 1, 2009—could not be credited under the Liberty Mutual plan. (*See* Pl.'s Reply 3-4, Dkt. No. 221). That, however, is not what the earlier opinion held. In that opinion, the Court recognized that the SPD's "exception" to the general rule that service with companies other than Liberty Mutual would not count for cost-sharing—that is, the grandfathered Safeco benefit it recognized—"did not entitle those employees to cost-sharing credit for all their years of service at both companies." *Turner I*, 2022 WL 3841119, at *17. Indeed, "[n]othing in the SPD section concerning former Safeco employees suggests that plaintiff was provided a vested cost-sharing credit for his years of Safeco service." *Id.* Instead, the plan provided the frozen Safeco grandfathered benefit and also, separately, provided that employees could earn the regular Liberty Mutual benefit after 10 years with that company. Thus, plaintiff's characterization that "Mr. Turner and his fellow class members basically lose 4 years due to the Court's [summary-judgment] ruling" is incorrect. (Pl.'s Reply 4 n.2).

[3] There were some very minor changes to this wording over time: the January 2011 SPD changed "eligibility and cost-sharing" to "eligibility and/or cost-sharing"; the January 2012 SPD changed "only service with" to "only continuous service with"; and the January 2013 SPD changed "post-retirement Medical Plan coverage" to

constituted a misrepresentation beyond their reference to an employee's "hire date"—which, again, the Court previously found was not ambiguous in light of the more specific language concerning benefits for former Safeco employees. *Turner I*, 2022 WL 3841119, at *18.

Plaintiff's reliance on other plan documents as the source of the alleged misrepresentations is similarly misplaced, because the plan itself provides that benefits were to be as set forth in the operative SPD. (Dkt. No. 79, Ex. 1 at 4 ("Benefits will be paid solely under the terms of, and in the form and amount specified in, the SPD as may be amended from time to time . . . .")).[4] Based on the way the plan is written, then, the SPDs cannot have misrepresented anything. The SPDs themselves defined the benefits to which plan beneficiaries were entitled at the time they were operative; they thus necessarily stated those benefits accurately.

Therefore, the only evidence that would truly be common to the class members would be the benefit statements and other documents listing the "hire dates" of class members as the date they were initially hired by Safeco. (*See* Dkt. No. 84, Ex. N). In that context, individualized evidence—such as the representations made in phone calls and emails to individual class members—would be significantly more relevant than evidence of the benefit statements. And the answer to whether defendants breached their fiduciary duties to the class members would turn on those individualized representations—not on the content of the statements made to the class as a whole.

---

"post-retirement Plan coverage." (Dkt. No. 84, Ex. B at 14, 19, 24). Otherwise, this section remained the same across all relevant SPDs.

[4] For that reason, plaintiff's reliance on *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), for the proposition that "§ 502(a)(3) authorizes equitable relief . . . where fiduciaries have misled participants through summary documents," while legally correct, is somewhat misplaced. (Pl.'s Reply 3). In *Amara*, the Court found that the summary documents were misleading because they did not accurately disclose the nature of certain changes the employer made to the plan. *See Amara*, 563 U.S. at 439-440. But, at least with respect to benefits, the terms of the SPDs in this case *were* the terms of the Liberty Mutual plan. They therefore could not have been misleading in the manner contemplated in *Amara*.

Because the evidence tending to support plaintiff's claim under § 502(a)(3) would be representations made to him individually, rather than to the class as a whole, the proposed class definition fails to meet the commonality requirement of Rule 23(a)(2), as class litigation would not yield "common answers" to class members' claims. *See Wal-Mart*, 564 U.S. at 350.

**B.    Rule 23(b)**

Even if the proposed class definition satisfied the commonality requirement, as well as the other requirements of Rule 23(a), it would still fail because it does not satisfy any of the subsections of Rule 23(b).

**1.    23(b)(1)**

Rule 23(b)(1) allows a class action to proceed where "prosecuting separate actions by or against individual class members would create a risk of" either "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" or "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1).

In some circumstances, ERISA suits—particularly those involving determinations of plan benefits—are well-suited to certification under Rule 23(b)(1). This is because ERISA plans generally are obliged to treat all participants alike in administering the plan. *See Bowers v. Russell*, 766 F. Supp. 3d 136, 152 (D. Mass. 2025); *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 136 (3d Cir. 2022) ("[W]e have held that ERISA 'breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class.'" (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d

Cir. 2009))); *see also* 2 RUBENSTEIN, *supra*, at § 4:12 ("[C]ourts regularly certify ERISA cases under Rule 23(b)(1)(A).")

Those considerations, however, do not apply to the remaining § 502(a)(3) claim, which turns on the specific misrepresentations that were allegedly made to individual class members, not on defendants' administration of the plan more broadly. Some class members, like plaintiff, may have had misrepresentations made to them concerning their entitlement to both the Safeco grandfathered benefit and the Liberty Mutual benefit. But plaintiff has provided no evidence that identical, or even similar, misrepresentations were made to all class members. Therefore, requiring putative class members to proceed separately would neither risk defendants being subject to conflicting orders with respect to an individual plaintiff nor impair the ability of an individual plaintiff to recover for her injuries. As a result, the class cannot be certified under Rule 23(b)(1).[5]

### 2. <u>23(b)(2)</u>

Rule 23(b)(2) allows a class action to proceed where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff argues in his briefing that certification under Rule 23(b)(2) is appropriate because he "seeks declaratory relief in the form of an interpretation of the plan and an affirmative injunction requiring [d]efendants to administer the plan according to the interpretation." (Pl.'s Mot. 19). But the Court granted summary judgment nearly four years ago

---

[5] In addition, some courts have suggested that a consideration as to whether certification is proper under Rule 23(b)(1) is whether any other plaintiff is in fact likely to sue, because if no other plaintiff is likely to do so, there is no risk of inconsistent adjudications. *See Pimentel v. City of Methuen*, 2019 WL 6699667, at *7 (D. Mass. Dec. 9, 2019). Plaintiff testified at his deposition that he was not aware of any other former Safeco employees that have raised these disputes concerning cost-sharing benefits with defendants. (Dkt. No. 220, Ex. 2 at 179-180). If that principle applies here, it further weighs against certification under Rule 23(b)(1).

on plaintiff's claim under § 502(a)(1)(B) seeking interpretation of the plan's terms; his only remaining claim is based on representations made outside of the plan documents by defendants' representatives.  On that basis alone, certification under Rule 23(b)(2) should be denied.

Furthermore, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360-61.

Here, the remedies potentially available to plaintiff and other class members—such as surcharge—would necessarily be different.[6]  They would vary based on the particular misrepresentations made to each plaintiff by defendants' representatives; the Safeco grandfathered benefits to which the class members were entitled; their years of service at Liberty Mutual, and so on.  Under the circumstances, the class could not be certified under Rule 23(b)(2).

### 3.      23(b)(3)

Finally, certification under Rule 23(b)(3) would not be appropriate for the reasons set out in the discussion concerning Rule 23(a)(2).  Among other requirements, Rule 23(b)(3) requires

---

[6] In its order denying summary judgment as to Count 2, the Court, following the Supreme Court's decision in *Amara*, also identified reformation as a remedy potentially available under § 502(a)(3). *Turner II*, 2023 WL 5179194, at *8-9.  Conceivably, reformation would have to apply to all class members, because the Court could not reform the plan as to some participants and not others.  But cases where other courts have suggested that reformation is available under § 502(a)(3) have involved common representations made to all participants. *See, e.g.*, *Amara v. CIGNA Corp.* ("*Amara IV*"), 775 F.3d 510, 530-31 (2d Cir. 2014); *Pearce v. Chrysler Group LLC Pension Plan*, 893 F.3d 339, 345, 349 (6th Cir. 2018) (reversing dismissal of reformation claim where SPD conflicted with terms of plan).  The Court is skeptical that it would be equitable to order the plan reformed as to all participants based only on evidence of misrepresentations made to one individual.

that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Even if the class met the commonality requirement—which, for the reasons set forth above, the Court finds it does not— any common questions clearly do not predominate over individual ones. Again, plaintiff has presented no evidence of common representations made to the class as a whole beyond the SPDs, which are irrelevant for the reasons discussed above, and the benefit statements, which have little, if any, probative value. Plaintiff's claim will rise or fall based on the representations that were made to him directly. Accordingly, the common questions do not predominate over individual ones, and the class could not be certified under Rule 23(b)(3).

## IV.    Conclusion

For the foregoing reasons, plaintiff's motion for class certification is DENIED.

**So Ordered.**


/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: June 16, 2026                           United States District Judge

13